IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER GRAHAM, on behalf      :
of himself and all others
similarly situated                 :

    v.                             :   Civil Action No. DKC 19-0486

                         :

FAMOUS DAVE'S OF AMERICA, INC.,
and Doe Defendants 1-10            :

**MEMORANDUM OPINION**

Plaintiff Christopher Graham, on his own behalf and on behalf of those similarly situated, filed this suit on February 19, 2019, against his former employer, Famous Dave's of America, Inc. ("Famous Dave's"). He alleges violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §201 *et seq.*, the Maryland Wage and Hour Law, Md.Code, Lab. & Empl. §3-401 *et seq.*, the Maryland Wage Payment and Collection Law ("MWPCL"), Md.Code, Lab & Empl. §3-501 *et seq.*, and Maryland common law. He has filed a motion to certify conditionally a collective action pursuant to the FLSA and a class action for a state law claim pursuant to Fed.R.Civ.P. 23. (ECF No. 26). Specifically, he seeks to "conditionally certify a collective [action] of all Tipped Employees employed by Defendant from February 19, 2016 to the present." (ECF No. 27, at 26). As to the proposed class, Plaintiff seeks certification of "[a]ll current and former Tipped Employees who have worked for Defendants in the State of Maryland during the statutory period covered by

this Complaint and who do not opt-out of this action (the 'MD State Class')."  (ECF No. 27, at 33).

In addition to the conditional certification motion, other pending motions are: a motion for partial summary judgment (ECF No. 34); a motion to strike a declaration (ECF No. 54); a motion for discovery sanctions (ECF No. 59), filed by Plaintiff; and seven motions to seal (ECF Nos. 31, 36, 40, 47, 51, 53, 57).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to certify conditionally a collective action will be granted in part and denied in part, the motion to certify a class will be granted in part and denied in part, the motion to strike will be denied, the motion for discovery sanctions will be denied, and the motions to seal will be denied in part and granted in part, with instructions.

## I.  Background

Defendant Famous Dave's is a national restaurant chain offering barbeque style food with a principal place of business in Minnetonka, Minnesota.  At the start of 2017, Famous Dave's owned and operated forty-four restaurants in various states.  *See* United States Securities and Exchange Commission ("SEC"), Form 10-K For the Fiscal Year Ended December 31, 2017: Famous Dave's of America, Inc., http://ir.famousdaves.com/static-files/204acf3c-52a9-4757-9b6b-6e1c29625e61.  By November 2017, however, Famous Dave's did

not own any stores in Maryland, having refranchised eight Company-owned restaurants, including four Maryland locations in Columbia, Frederick, Laurel and Waldorf as well as four Virginia locations. *Id.*[1]   It currently owns 30 locations in Minnesota, Wisconsin, Indiana, New York, New Jersey, Iowa, Michigan and Ohio, with multiple franchisees nationwide.

Mr. Graham is a resident of the state of Maryland and was employed by Famous Dave's as a server in the Waldorf location from January 27, 2016 to July 1, 2017.  (ECF No. 37-3).  Although he occasionally worked at large catering jobs for Famous Dave's at an over minimum wage rate, Mr. Graham typically worked and was paid at a server's cash wage[2] plus tips from customers. This wage remained stagnant regardless of how many tips were received.   He alleges that when he worked smaller catering jobs (typically half an hour or an hour long), he was also paid this cash wage.  His typical shift started at 3:00 p.m. and ended around 12:30 a.m. Occasionally he would work the "early shift" on Saturday or Sunday mornings.

---

[1] Plaintiff refers to the same SEC filing in the complaint but recites slightly different numbers.  (ECF No. 1, at 1).

[2] While Plaintiff believes his cash wage to have been the minimum allowed by law, $3.63 per hour, he attaches a "Work History" sheet from Famous Dave's that reports a $5.00 hourly rate. (ECF No. 1, ¶ 42 and ECF No 17-3); *see also* (ECF No. 37-3)(a more legible copy).

On the late shift, Mr. Graham was required to perform "break down" work at the restaurant's closing.  This work included tasks like wiping down the tables, refilling salt and pepper shakers, wiping down serving stations, washing dishes, etc.  At times he worked in excess of forty hours a week and alleges that he was "repeatedly" told to clock out and *then* finish his side or closing work.  When working morning shifts, he was required to perform "prep" work that included making coffee, filing sauce bottles, filling ice buckets, etc.  Mr. Graham asserts that, while performing these tasks, he was also clocked in under the "server" job code that paid a cash wage otherwise below minimum wage before tips.

Since January of 2016, Famous Dave's opted to utilize a "tip credit" for Plaintiff and other servers, hosts and bartenders employed by Famous Dave's ("Tipped Employees"), that would allow Famous Dave's to claim a percentage of the employees' tips as payment under Federal and State minimum wage laws in order to pay them a cash wage of less than the applicable minimum wage.  Mr. Graham argues that Famous Dave's failed adequately to inform him and other Tipped Employees of the tip credit provisions as required by law, pointing to the "Tip Credit Notice" Famous Dave's used in Maryland (ECF No. 29).  Particularly, he alleges there "was no difference in the Tip Credit Notice based on the state that a

restaurant was located in," (ECF No. 27, at 14), although the uniformity of such forms by state is now in dispute.

Mr. Graham also alleges that Famous Dave's did not provide managers with any specific "instructions or training" on how to provide the tip credit notification, (ECF No. 26-3, at 14), but Famous Dave's asserts that such instructions were left to local managers. (ECF No. 37, at 8-10) (citing 37-1, at 6). For example, Demetrius Weeden ("Mr. Weeden"), a manager at Famous Dave's Waldorf location for the entirety of Mr. Graham's employment there, states that a manager or training server would explain Famous Dave's tip policy and tip credit to all newly hired Tipped Employees as standard practice at that location. (ECF No. 44-7, at 2). Although Plaintiff disputes that such training occurred as a practice, he argues that the notification was deficient for Tipped Employees even with such localized practices. Further, such deficiencies, Mr. Graham asserts, bar Famous Dave's from utilizing a tip credit at all, under state or federal law, making the cash wages paid to all Tipped Employees effectively below the minimum wage and thus illegal.

Further, Mr. Graham argues that Famous Dave's utilized, and forced him to take part in, an illegal tip pool when it included "expeditors" within the pool, despite being normally untipped employees. Similarly, he alleges that Famous Dave's illegally required Tipped Employees to use their own tips to pay out employer

expenses like "dine and dash" ("walkout") customers who leave without paying and other cash shortages.  Mr. Graham points to two instances in which he was required to reimburse Famous Dave's out of his own tips for walk outs.  Lastly, Plaintiff implies that the "side work" (untipped) work which Mr. Graham and others were required to do may have exceeded the maximum amount of untipped work that Tipped Employees are allowed to perform by law when being paid a cash wage based on a tip credit.

## II.  Motion to Strike Declaration of Demetrius Weeden

The declaration for Demetrius Weeden is relevant to the disposition of several motions and the motion to strike it will be considered first.  Mr. Graham argues that he suffered "surprise and prejudice" at Famous Dave's submission of the declaration along with its opposition to the motion to certify.  (ECF No. 37-2). Plaintiff seeks discovery sanctions as a result. Fed.R.Civ.P. 37(c)(1) aims to prevent such surprise or potential prejudice to a party by barring the use of evidence where a party "without substantial justification fails to disclose information required by [Fed.R.Civ.P.] 26(a) or 26(e)(1), or to amend a prior response to discovery as required by [Fed.R.Civ.P.] 26(e)(2)." *S. Sts. Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003).  Fed.R.Civ.P. 26(a) requires a general duty to disclose during discovery, while 26(e)(1) provides a duty to supplement discovery responses and disclosures that are incorrect

or incomplete. Fed.R.Civ.P. 26(a),(e)(1).  Only if a party fails one of these requirements does it have to show that the error was "harmless or substantially justified" according to the *Southern States* factors set out by Plaintiff. *Wiseman v. Wal-Mart Stores, Inc.*, No. 1:16-cv-04030-SAG, 2017 WL 4162238 at * 4 (D.Md. 2017) (citing *S. Sts.*, 318 F.3d at 596-97).

To start, as Famous Dave's points out, this motion is improperly framed as a discovery issue as it did not fail adequately to address the discovery requests made of it by Mr. Graham.  (ECF No. 55, at 4).  In the Requests for Admissions made to Famous Dave's, both Request 6 and Request 8 specifically ask whether Tipped Employees were "verbally" apprised of the specific amount of tip credit to be claimed by Defendant and of the fact that the tip credit could not exceed the amount of tips actually received by that employee.  (ECF No. 26-5, at 5-6).  In response to both questions, Famous Dave's explained that while it had no such policy verbally to inform employees of these things, "individual Famous Dave's managers may have verbally informed certain [] tipped employees regarding the policy."  (ECF No. 26-5, at 6).  In fact, Plaintiff's Interrogatory 18 asks for the identity of all managers or individuals "holding a management-level position" in Defendant's Maryland stores.  (ECF No. 54-3, at 11).  In response, Famous Dave's identified a list of such managers and their locations that clearly identified Mr. Weeden as a past

7

General Manager of the Waldorf store. (ECF No. 56). This information was not news to Plaintiff as Mr. Graham himself identified Mr. Weeden as one of his managers while he was working at the Waldorf location. (ECF 44-4, at 5).

Presumably knowing all this, Plaintiff opts not to claim surprise over the *identity* of Mr. Weeden as a party with relevant information but instead argues that Famous Dave's should have disclosed the "facts" contained in the Weeden Declaration during discovery. (ECF No. 54-1). However, Plaintiff fails to show a single instance in which such "facts" were sought by a request for discovery to Defendant and it failed to disclose those facts. In fact, Famous Dave's had absolutely no notice before the discovery deadline that Plaintiff would be filing a motion for partial summary judgment at this juncture (and prior to a ruling on class certification). (ECF No. 55, at 4). As it states, if Plaintiff's argument were to carry the day, it would mean that no party could produce a declaration with newly discovered evidence in opposition to summary judgment unless it simply parroted facts already in the record (in which case a declaration would serve no function). (*Id.*). Ultimately, as Defendant highlights, Plaintiff simply failed to depose Mr. Weeden despite knowing he had potentially relevant information as Mr. Graham's manager and one who may have provided him and other prospective plaintiffs with verbal notice of the tip credit policy. (*Id.* at 6). Famous Dave's further

8

asserts it had no need to depose Mr. Weeden itself "because it was aware what he would say." (ECF No. 55, at 7).  The factors set out by *Southern States* are inapplicable here, as no discovery violation is apparent.[3]

Plaintiff's fallback argument as to this declaration is equally unavailing.  Mr. Graham points to paragraphs 7 and 8 of the declaration in arguing that those portions are not based on his personal knowledge.  (ECF No. 54-1, at 12).  In these paragraphs, Mr. Weeden asserts:

> 7. When a new tipped employee was hired at the Waldorf location, either a manager or a training server would explain Famous Dave's tip policy, including the tip credit policy, to the new tipped employee.
>
> 8. All employees were advised that labor law posters were posted in a specific designated area in the Waldorf restaurant.

(ECF No. 44-7, ¶¶ 7-8).  Mr. Graham argues that Mr. Weeden's statements are unsubstantiated as there is no evidence that he "personally observed" such statements or that such "actions" were done "pursuant to corporate policy."  (ECF No. 54-1, at 12). However, as general manager of the Waldorf location, Mr. Weeden

---

[3] Even if the factors were to be considered, Famous Dave's offers a convincing argument that these factors would strongly favor allowing this declaration in.  (ECF No. 55, at 5-8).  After all, declarations are stricken only when they "flatly contradict" earlier pieces of offered evidence.  *Mt. Hawley Ins. Co. v. Adell Plastics, Inc.*, 458, 465 (D.Md. 2018).  This is not the case here, despite Plaintiff's insistence to the contrary.

would have the requisite personal knowledge to make such comments and observations as he would have had an intimate awareness and participation in the new hire process.  Famous Dave's correctly argues tht such arguments go to the weight such statements should be afforded and *not* their admissibility. (ECF No. 55, at 8).  The Motion to Strike Declaration of Demetrius Weeden is denied.

## III. Collective Action and Class Certification

### A. Standard of Review

"Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C § 216(b)." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 771 (D.Md. 2008).  As this court has previously said, "[w]hen deciding whether to certify a collective action pursuant to the FLSA, courts [in this district] generally follow a two-stage process." *See Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 566 (D.Md. 2012) (citing *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682, 686 (D.Md. 2010)). The first stage is commonly referred to as the "notice stage" wherein the court must make a "threshold determination of 'whether the plaintiffs have demonstrated that potential class members are *similarly situated*' such that court-facilitated notice to putative class members would be appropriate." *Id.* (quoting *Camper v. Home Quality Mgmt.*, 200 F.R.D. 516, 519 (D.Md. 2000)) (emphasis added). The second stage, on the other hand, takes place after the close of discovery and

10

makes a "more stringent inquiry" as to whether the plaintiffs are, in fact, "similarly situated." *Id.* (citing *Rawl v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D.Md. 2007); 29 U.S.C. §216(b)). This later stage is known as the "decertification stage" and involves a final decision as to "the propriety of proceeding as a collective action." *Id.* (citing *Syrja,* 756 F.Supp.2d at 686).

A class action certification under Fed.R.Civ.P. 23, although similar, has its own criteria.[4] "District courts possess 'wide discretion' in deciding whether to certify a class." *Todd v. XOOM Energy Md., LLC.*, No.: GJH-15-154, 2020 WL 4784767 at *3 (D.Md. August 18, 2020) (quoting *Ward v. Dixie Nat'l Life Inc. Co*, 595 F.3d 164, 179 (4th Cir. 2010)). "In addition to satisfying [Fed.R.Civ.P.] 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under [Fed.R.Civ.P.] 23(b)(1),(2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). "[Fed.R.Civ.P] 23(a) requires that the prospective class comply with four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of

---

[4] Many district courts have found that, under the Rules Enabling Act, the opt-in mechanism of collective action in the FSLA is not fundamentally at odds with the opt-out mechanism of class action under Fed.R.Civ.P. 23(b). *Butler v. DirectSat USA, LLC.*, 800 F.Supp.2d 662 (D.Md. 2011); *see also e.g. Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870, 909 (N.D.Iowa 2008).

representation." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). The Fourth Circuit has explained that:

> In addition to the four Rule 23(a) requirements, Rule 23(b)(3) actions such as this one must meet two requirements: predominance and superiority. Predominance requires that "[common] questions of law or fact . . . predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Superiority requires that a class action be "superior to other methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

*Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001).

## B. Analysis

Plaintiff puts forward multiple basis for identifying prospective plaintiffs as a collective or class, all based on alleged "common duties" and the "same company policies and procedures" to which the employees were subject and for which they seek relief. (ECF No. 27, at 11-12).

Most of the motion is spent addressing the alleged "failure to meet the tip credit notification requirements." (ECF No. 27, at 11). However, it also alleges "separate, additional basis": (1) Defendant's alleged used of "an illegal tip pool" in having Plaintiff and other Tipped Employees share their tips with individuals who worked in the back of house ("BOH") and who do not customarily receive tips from customers; (2) Defendant's alleged

"practice of requiring Plaintiff and other Tipped Employees to forfeit a portion of their tips to cover walk outs/cash shortages." (ECF No. 27, at 11). However, there is a third claim buried within the "uniform policies" Plaintiff asserts are common among the purported collective: "Defendant required its Tipped Employees to spend a significant percentage of their time performing non-tip generating work." (ECF No. 27, at 15).

Defendant responds with numerous possible defenses. First, it argues that all Famous Dave's employees had a tip credit notice that was provided to them. (ECF No. 37, at 3). Further, Plaintiff himself received a tip notice as acknowledged by his electronic signature in receipt. (*Id.*) (citing ECF No. 39). It argues that instead of acknowledging this fact, Plaintiff "attempt[s] to poke holes" in the credit notice itself with meritless allegations of its deficiencies. (*Id.*). In noting that oral *or* written notice can suffice under the U.S. Labor Department guidelines, it includes another form entitled "Notice to Tipped Employees and Tip Declaration Acknowledgement - Maryland " that informs employees that they "will be told of your hourly pay rate when you begin work" and which Mr. Graham signed in acknowledgement. (ECF No. 39, at 3-4). It also argues that Mr. Graham and the prospective plaintiffs are not "similarly situated" as to any of the alleged common injuries. (ECF No. 37, at 13). Despite alleging common injury from the failed tip credit policy notification, an illegal

13

tip pool, an excessive amount of non-tip work, and an alleged policy requiring employees to cover cash walkouts with tips, Defendant points out that Mr. Graham was the *only* prospective plaintiff to come forward despite advertisement and solicitation of Famous Dave's employees by counsel. (*Id.*, at 7). Famous Dave's argues that Plaintiff simply asserts that what he experienced is common among all Tipped Employees nationwide despite having no firsthand knowledge of how things operated at other locations. (*Id.*, at 7-8). As to the illegal tip pool, it argues that Mr. Graham cannot rely on a "blanket accusation" that a tip pool was illegal whenever an expeditor was included as the evidence shows that whether expeditors were paid tips "differed from location to location." *(Id.*, at 10) (citing (ECF No. 37-7)). Mr. Graham, it argues, negates his own claim as to a common injury suffered by Tipped Employees in being forced to do excessive "non-tip generating work" in himself highlighting the fact that Famous Dave's has "no policy or procedure in place" to ensure employees did not violate the "80/20" rule.[5] (*Id.*, at 10-11). Lastly, it

---

[5] The Department of Labor interprets the FLSA as recognizing that a tip credit is improperly utilized where someone with a "dual job" (requiring non-tipped and tipped work) is forced to spend more than 20% of his or her time on non-tipped labor at a sub-minimum cash wage. *Barnhart v. Chesapeake Bay Seafood House Associates, LLC.*, No. JFM-16-01277, 2017 WL 1196580 at *6 (D.Md. 2017).

contends there is no company-wide policy to have employees to pay
for walkouts out of their tips. (*Id*.).

### 1.  Claims Other Than Improper Tip Credit Notification

Plaintiff fails to show that any of the "additional" claims
allege a common plan or policy as to other potential plaintiffs.
As to the "illegal" tip pool, Plaintiff alleges that when the
restaurant was busy, he had to tip out expeditors, and not just
the bartenders and hosts. (ECF No. 26-6, at 7-8). He points to
the deposition of Mr. Hank, as a corporate designee, who explains
that expeditors, like line cooks and dishwashers, are considered
BOH employees in not interacting with customers directly. (ECF
No. 27, at 14-15) (citing ECF No. 26-3, at 19-20). Further, Mr.
Hank explained in his initial deposition that expeditors share in
the tip pool. (ECF No. 26-3, at 29). The inference Mr. Graham
draws is clear: that expeditors are not Tipped Employees in working
BOH. But an errata correction made by Mr. Hank in June of 2019
(months before Mr. Graham submitted his motion to certify), makes
clear that "[i]n some instances, expeditors are paid tipped wages."
(ECF No. 37-7, at 2).

Thus, the mere fact that expeditors, at times, have shared in
the tip pool does not mean that Tipped Employees and non-tipped
employees alike were required to pool tips. In fact, the Tip Pool
and Reporting Policy notification ("Tip Pool Notice") produced by
Famous Dave's demonstrates that the policy called for the opposite

in defining a "Tip Pool" as the "intermingling and reallocation of tips received from . . . Employees who are customarily and regularly tipped." (ECF No. 45, at 1). Whereas this form calls for only 100% *reporting* of tips, the Tip Credit Notice itself states that employees are required to *contribute* 100% of their tips to the tip pool. (ECF No. 29, at 2). Mr. Graham highlights Mr. Hank's deposition in showing this is inaccurate as servers would only be required to "contribute three percent of their net sales to a tip pool" and only "100 percent of *those* tips" end up in the pool. (ECF no. 26-3, at 12-13) (emphasis added). However, nowhere does Mr. Graham explain why a minor misstatement as to tip pool operations renders it illegal. Plaintiff fails to allege facts to show an "illegal tip pool" common to other Famous Dave's employees.

As to Tipped Employees allegedly having to cover walkouts with their tips, Plaintiff points to Mr. Graham's testimony that on two separate occasions he was required by his manager Mr. Weeden to use his tips to pay for the unpaid bill left behind by customers. (ECF No. 26-6, at 3-4). Further, the bald assertion that "Defendant had a practice of requiring Plaintiff and other Tipped Employees to forfeit a portion of their tips to cover walk outs/cash shortages" is stated in the motion in support of class certification, (ECF No. 27, at 11), as it was in the complaint (ECF No. 1, ¶ 11). However, there is no factual support for this

16

conclusion.  In fact, the only affirmative showing of a policy is
Mr. Weeden's statement that "Famous Dave's policy is that servers
are not required to pay Famous Dave's for a customer's bill if the
customer leaves without paying."  (ECF No. 44-7, at 3).  While a
material dispute remains as to whether Mr. Graham himself was
required to do so, there is no factual support for the allegation
that other Maryland employees were required to forfeit tips in
this scenario.  This additional claim fails to have factual support
to show it is common among the prospective plaintiffs.

Mr. Graham draws numerous inferences that are, first, not
supported by affirmative allegations, but also still fail to show
that Famous Dave's also violated the 80/20 rule.  He alleges that,
because he and other plaintiffs were required to do non-tipped
work before and after their shifts (prior to a recent policy change
that post-dates Famous Dave's ownership of Maryland locations) and
because they had no policy to ensure this work met the 80/20 rule,
it can be inferred that this regulation was, in fact, broken.  He
also points to the fact that Famous Dave's was sued in New York
regarding similar allegations and settled as somehow affirmative
proof that Famous Dave's has failed to comply with the FLSA
elsewhere.  (ECF No. 27, at 16 & n.9).  First, settlement is not
a decision on the merits of an allegation.  Second, Mr. Graham's
argument can be boiled down to the adage "where there's smoke
there's fire."  Yet he only alleges the absence of a policy to

17

ensure this regulation is met and the fact that Famous Dave's presented Plaintiff with a list of non-tipped closing and opening duties to be performed. (ECF No. 17-2, at 2-3).

Nowhere does Plaintiff affirmatively allege that Mr. Graham or any other plaintiffs had to perform non-tipped work in excess of 20% of their duties. The fact that Famous Dave's has subsequently instituted a policy of paying employees the full minimum wage in performing their opening duties, (ECF No. 27, at 15), is not proof that the former policy was illegal. Defendant's subsequent precautions cannot be held against them. Mr. Graham has failed sufficiently to allege a common policy or plan to violate the 80/20 rule. The only allegation that tends to show a common plan injuring the prospective plaintiffs is that Famous Dave's failed properly to notify employees of its intended use of a tip credit.

### 2. Tip Credit Notification

Other district courts have explained that "the tip credit provision of the FLSA permits employers to pay tipped employees at an hourly rate below the minimum wage if the employee's wages and tips, added together, meet or exceed the minimum wage." *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725(DC), 2010 WL 4159391 at *2 (S.D.N.Y. Sept. 30, 2010) (citing 29 U.S.C. § 203(m)); *see also Rong Chen v. Century Buffet & Rest.*, No. 09-1687 (SRC), 2012 WL 113539 at *5 (D.N.J. Jan. 12, 2012). "Specifically,

§ 203(m) requires that the employee be informed of this provision and that the employee retain all tips received." *Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, No. GJH-13-01888, 2015 WL 4459387 at * 3 (D.Md. July 17, 2015). However, "[e]mployers may allow their employees 'to share tips through a tip pooling or tip splitting arrangement'. . . as long as the lip [sic] pool only includes tipped employees." *Id.* at *5 (citing *Gionfriddo v. Jason Zink, LLC*, 768 F.Supp.2d 880, 893 (D.Md. 2011)).

Plaintiff is correct to look to the Department of Labor for guidance on the information to be conveyed to an employee:

> For an employer . . . to utilize the tip credit, it must provide tipped employees with the following information:
>
> 1) the amount of cash wage the employer is paying a tipped employee, which must be at least $2.13 per hour;
>
> 2) the additional amount claimed by the employer as a tip credit, which cannot exceed $5.12 (the difference between the minimum required cash wage of $2.13 and the current minimum wage of $7.25);
>
> 3) that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee;
>
> 4) that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and

19

> 5) that the tip credit will not
> apply to any tipped employee unless
> the employee has been informed of
> these tip credit provisions."

*Stebbins v. S&P Oyster Co.*, No. 3:16-cv-992(AWT), 2017 WL 69489525 at *1 (D.Conn. Sept. 1, 2017) (citing Department of Labor Fact Sheet #15: Tipped Employees Under the FLSA, https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs15.pdf (last visited Sept. 10, 2010)).  Mr. Graham correctly highlights the stringency of this requirement in that Congress allowed for restaurant employers to use up to a "50 percent credit from the receipt towards [the] obligation to pay the minimum wage," but only if they "precisely follow the language of 3(m) and fully inform [their] employees of it." *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977).  If they fail, the remedy is payment to the employee of applicable and full minimum wage.  *Id.*

**C.   Conditional Certification of Collective Action**

Plaintiff seeks to "conditionally certify a collective [action] of all Tipped Employees employed by Defendant from February 19, 2016 to the present." (ECF No. 27, at 26).  For reasons discussed above, this potential collective will be analyzed solely in relation to Famous Dave's alleged failure to provide proper tip credit notification.

### 1.   Similarly Situated Plaintiffs

The FLSA limits conditional certification to "'other employees similarly situated' for specified violations of the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, at 69 (2013) (citing 29 U.S.C. § 216(b) and *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989)).  In this "notice stage," plaintiffs must make "only a relatively modest factual showing." *Pooner v. Mariner Finance, LLC*, No. ELH-18-1736, 2019 WL 2549430 at *4 (quoting *Butler*, 876 F.Supp.2d at 566).  Mere allegations are not enough, as some factual showings must be made. *Id.* (citing *Camper*, 200 F.R.D. at 520).  Plaintiff has pointed to ample caselaw that certification of a class can be predicated on the claims of a single plaintiff, particularly when paired with further discovery, despite Famous Dave's assertions to the contrary.  (ECF No. 49, at 11)

Plaintiff makes the modest showing that would be required to obtain conditional certification of a class as it relates to other Tipped Employees in their formerly owned Maryland locations, but not as it relates to the nationwide locations.  It is undisputed that the Tip Credit Notice went to all Famous Dave's Maryland Tipped Employees during the relevant period.  Although there is a clear dispute whether the Tip Credit Notice (ECF No. 29) was actually inaccurate, Mr. Hank, as a corporate designee, has established that this form was developed and has been in place

since around "May of 2011," has not been subsequently revised, and would have been used as part of Maryland's employees training.[6] (ECF No. 26-3, at 6-8).  Further, Plaintiff argues that the precise figures as to the "minimum cash wage for tipped employees" and "maximum permissible tip credit amount" included on the form do not use the proper figures as set out by various states, including Maryland.  (ECF No. 27, at 16) (comparing the Tip Credit Notice's figure to those publicly posted by the government by state, "Minimum Wages for Tipped Employees," U.S. Dep't. of Labor (July 1, 2020), https://www.dol.gov/agencies/whd/state/minimum-wage/tipped).[7]  Plaintiff has sufficiently alleged that the Tip Notice Form, along with any attendant training, was an inadequate

---

[6] The form itself is designated for "MD-OK" (Maryland and Oklahoma) employees.

[7] The Tip Credit Notice states generally that "Federal law limits the tip credit to no more than the difference between your cash wage and the applicable minimum wage" which it correctly identifies as $7.25 under federal law.  (ECF No. 29, at 2). However, nowhere does it list the maximum allowable tip credit under Maryland law as per this website: $7.37.  The notice does add, however, a caveat that the applicable minimum wage "may be higher in your state."  (ECF no 29, at 2).  It also lists $2.13 as the minimum cash wage under federal law, but again adds a caveat that "State law may require a higher cash wage."  Moreover, here it *correctly* lists the cash wage received by a Maryland employee as $3.63, which matches the "Minimum Cash Wage" set out for Marylanders by the Department of Labor.  Such details go to the merits of Plaintiff's claim and not whether Plaintiff has alleged a "similarly situated" class as a threshold matter.  After all, as Plaintiff correctly points out, the employer ultimately bears the burden of demonstrating compliance with the FLSA's notice provisions.  (ECF No. 27, at 20) (citing *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994)).

form of notice for utilizing a "tip credit" under the FLSA.  As such, Plaintiff estimates that all Tipped Employees that Famous Dave's employed in its four restaurants in the state of Maryland, (ECF No. 27, at 35), were equally harmed in receiving this form or in being verbally informed of its contents.

On the other hand, Plaintiff fails to make this showing as it relates to purported "similarly situated" Tipped Employees in other states.  Plaintiff acknowledges that not only do the states with "company-owned restaurant[s]" have different minimum cash wages and maximum permissible tip credit amounts for tipped employees, but the form's stated minimum wage only matches Indiana's.  (ECF No. 27, at 16).  These figures, as Plaintiff himself has provided, show that each of these state's respective minimum wage laws vary widely, even as compared to one another.  But Plaintiff only points to the *absence* of a policy directing local managers verbally to inform employees of its "Tip Credit Policy."  (ECF No. 49, at 6) (citing ECF No. 26-5, at 5).  In fact, this admission expressly states that "managers may have verbally informed certain Famous Dave's tipped employees regarding the policy."  (ECF No. 26-5).  Therefore, adjudicating the Maryland and non-Maryland claims alike would involve "multiple restaurants . . . operating under different localized management practices," and under the minimum wage laws of "multiple different states"

that involve entirely different standards and applicable figures. (ECF No. 37, at 13).

Moreover, the crux of this purported similarity is Plaintiff's assertion that the Tip Credit Notice was the same in all states, which is not substantiated.   Plaintiff based this assertion on Mr. Hank's original deposition. (ECF No. 27, at 14) (citing ECF No. 26-3, at 56).   However, Famous Dave's has subsequently identified state specific forms for other states in which it operates, (ECF No. 46), and filed an errata sheet correcting Mr. Hank's original deposition to state, "There are state specific forms where the law requires it." (ECF No. 59-4). Such evidence shows that there are simply too many distinct variables that affect the purported plaintiffs' rights concerning their disparate state minimum wage laws.

### 2.   Statute of Limitations for Collective Action Claims

Although the collective action claims as they relate to purported Maryland plaintiffs otherwise demonstrate they are similarly situated, there is a significant question about whether most would be time-barred.   Famous Dave's challenges the time period for eligible claims in its opposition to certification. (ECF No. 37, at 16).   Plaintiff seeks certification for all employees who worked at Famous Dave's within three years of the filing of the complaint, although he recognizes that the statute of limitations only tolls at the time of a prospective plaintiff's

opt-in.  The motion has been pending now for a year, due in part to the myriad other motions that have been filed, and because of delays caused by the COVID-19 public health crisis.  Plaintiff has not filed a motion for equitable tolling, but one might have merit. See, e.g., *Hansen v. Waste Pro of South Carolina, Inc.,* 2020 WL 1892243 (D.S.C. April 16, 2020); *Baxter v. Burns & McDonnell Eng'g. Co., Inc.*, No. JKB-19-3241, 2020 WL 4286828 at *3 (D.Md. July 27, 2020) (collecting cases in applying equitable tolling to FLSA collective action claims in light of COVID-19 and delays to litigation beyond the Plaintiffs' control).

Courts have deferred adjudicating the statute of limitations as an affirmative defense at the certification stage only where "[t]he ultimate success of the statute of limitations cannot be easily ascertained." *Gessele v. Jack in the Box, Inc.*, No. 3:10-cv-960-ST, 2013 WL 12318551 at *3 (D.Or. 2013).  Ultimately, whether to grant conditional certification is a discretionary decision that must, *inter alia*, include considerations of judicial economy as Plaintiff highlights.  (ECF No. 27, at 29) (citing *Hoffman-La Roche*, 493 U.S. at 170); *see also Jeong Woo Kim v. 511 E. 5ᵗʰ Street, LLC*, 985 F.Supp.2d 439, 451 (S.D.N.Y. 2013) (noting that court-facilitated notice is appropriate to "promote judicial economy," while limiting certification to prospective plaintiffs whose claims are not time-barred).  It makes sense to consider the date the motion for conditional certification was filed as the

trigger for the backward look, rather than the filing of the complaint.

There is a dispute on whether the regular two-year statute of limitations under the FLSA, or its three-year period for "willful" violations, is applicable.  The case Mr. Graham cites in support of a three-year statute of limitations provides that claims can only be treated as willful where the plaintiff has "adequately pled the existence of willful violation." *Viscomi v. Diner*, No. 13-4720, 2016 WL 1255713 at *6 n.2 (E.D.Penn. 2016).  The Supreme Court has defined willful in this context as meaning, "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Various district courts have put forth rationales as to why a lenient standard should be applied here.  *See Hamm v. S. Ohio Med. Cent.*, 275 F.Supp.3d 863, 878 (S.D.Ohio 2017) (arguing for a "lenient standard" and to avoid "weighing" evidence in applying the three-year period to the conditional certification stage); *Saleh v. Valbin Corp.*, 297 F.Supp.3d 1025, 1035 (N.D.Ca. 2017) (collecting cases in putting forth the same rationale and offering a second: that a defendant maintains the ability to decertify the class at stage two).

Here, as explained, the only claim common to the purported class is Famous Dave's alleged failure to meet the requirements of

§ 203(m) and it therefore improperly claimed a tip credit and failed to meet its obligations under Maryland and federal wage laws. (ECF No. 27, at 16.) Given the wide berth afforded claims of willfulness at this stage, the three-year statute of limitations will apply as it relates to potential class certification. *See Stephens v. Farmers Restaurant Group*, 291 F.Supp.3d 95, 120 & n. 21 (D.D.C. 2018) (applying the three-year period in the conditional certification stage as Defendants failed to argue Plaintiff's allegations were "implausible."). Accordingly, a collective action will be conditionally certified as to tipped employees at Famous Dave's company owned restaurants during the three year period prior to the date the certification motion was filed.

### D.   Class Action

Under Fed.R.Civ.P. 23, Plaintiffs seek class certification for all Maryland Tipped Employees "during the statutory period covered by this Complaint who did not opt-out of this action" under its MWHL claims.[8] (ECF No. 27, at 33).

The MWHL claims, as they relate to a proper tip credit notice, substantively mirror the FLSA requirements.[9]   Therefore, the

---

[8] Plaintiff also alleges claims under the MWPCL, but only insofar as Famous Dave's did not provide "timely payment of wages due to them" and thus the fate of these claims is tied to the MWHL. The two will be treated as synonymous. (ECF No. 1, ¶¶ 119, 157).

[9] This court has explained that:

alleged deficiencies of the Tip Credit Notice and any attendant training of Maryland employees, discussed above as to the FLSA, would equally make out a claim under the MWHL.  However, unlike the FLSA, the statute of limitation for MWHL claims is three years, regardless of willfulness, *Brown v. Rapid Response Delivery, Inc.*, 226 F.Supp.3d 507, 509 n.3 (D.Md. 2016), and is tolled for prospective plaintiffs at the time the named Plaintiff filed suit. *Orellana v. Cienna Props., LLC.*, No. JKB-11-2515, 2012 WL 203421 at *5 (D.Md. Jan. 23, 2012).

Plaintiff argues this purported class satisfies Fed.R.Civ.P. 23(b)(3) in that the alleged and common injury suffered by this class, being underpaid due to improper use of a tip credit, predominates over individualized questions and that class action is the superior method of adjudicating the matter.

---

The MWHL is the state statutory equivalent of the FLSA. *Watkins v. Brown,* 173 F.Supp.2d 409, 416 (D.Md.2001). Both the MWHL and the FLSA have similar purposes . . . and the MWHL contains internal references to the FLSA. *Id.* The requirements under the MWHL are so closely linked to the FLSA that "[p]laintiffs' claim under the MWHL stands or falls on the success of their claim under the FLSA." *Turner v. Human Genome Sci., Inc.,* 292 F.Supp.2d 738, 744 (D.Md.2003).

*McFeeley v. Jackson St. Ent., LLC.*, 47 F.Supp.3d 260, 267 n.6 (2014); *see also See Mould v. NJG Food Serv.*, 37 F.Supp.3d 762, 773-74 (D.Md. 2014) (treating the tip credit requirements between the two laws as synonymous) (citing Md.Code., Lab & Empl. §3-419(a)(1)(ii)).

1.   **Numerosity**

Fed.R.Civ.P. 23(a)(1) requires class members to be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Famous Dave's has opted to cite a grab-bag of cases from disparate and far-flung districts. *See, e.g.*, *Bartelston v. Winnebago Indus. Inc.*, 219 F.R.D. 629, 637 (N.D. Iowa 2003)). The District of Oregon case cited also appears to be a total outlier in denying numerosity to a class of 425, (ECF No. 37, at 19) (citing *Thiebes v. Wal-Mart Stores, Inc.*, No. 98-802-KI, 2002 WL 479840 (D.Or. Jan. 9 2002) at *3).[10] Plaintiff, on the other hand, cites two cases in our own district showing that even a few dozen class members can give rise to a presumption that joinder would be impractical. (ECF No. 27, at 35) (citing *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D.Md. 1998) ("courts find classes of at least 40 members sufficiently large"); *Baehr v. Creig Northrop Team, P.C.*, No. WDQ-13-0933, 2014 WL 346635 at *8 (D.Md. Jan 29, 2014) (quoting *Dameron v. Sinai Hosp. of Balt., Inc.*, 595 F.Supp. 1404, 1408 (D.Md. 1984)) ("[a] class consisting of as few as 25 to 30 members raises a presumption that joinder would be impractical").

---

[10] Moreover, the 425 potential class members were found not to be numerous enough *purely* because these were the plaintiffs who had already "opted-in" under an earlier FLSA opt-in process and only represented "such a small percentage of the [eligible] employees" that it suggested that other absent plaintiffs could go-it alone. *See Thiebes*, No. 98-802-KI at *3.

Here, Mr. Hank has stated that an average Famous Dave's restaurant employees a total of nineteen Tipped Employees: fifteen servers and four bartenders.   (ECF No, 26-3, at 21).   Further, Famous Dave's, as mentioned, owned four restaurants in Maryland until November 2017.   Thus, even if there was *absolutely no* turnover in employees during the period for timely claims[11] (unlikely for an industry with high-turnover), there are around an estimated seventy-six prospective plaintiffs in this class. Therefore, the Maryland State Class is sufficiently numerous.

### 2.   Common Questions of Law and Fact

Fed.R.Civ.P. 23(a)(2) requires there to be "questions of law or fact common to the class."   Fed.R.Civ.P. 23(a)(2).   The commonality "inquiry is not whether common questions of law or fact predominate, but only whether such questions exist." *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 216 (D.Md. 1997); *see also Miller v. Optimum Choice, Inc.*, at *3 & n., No. DKC 2003-3653, 2006 WL 2130640 at *3 n.5 (D.Md. July 28, 2006) (citing *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2011) (finding that the "commonality" requirement of Rule 23(a)(2) is "subsumed under, or superseded by, the more stringent Rule

---

[11] Plaintiff filed his complain on February 19, 2019, which means any claim as to conduct from February 19, 2016 up until November 2017 is timely.

23(b)(3) requirement that questions common to the class predominate")).

Here, as discussed above, the Tip Credit Notice used by Famous Dave's in Maryland, and any attendant training, is alleged inaccurately and inadequately to have informed Maryland employees of how Famous Dave's utilizes a tip credit, just as it did Plaintiff. While there may be variations in how much verbal explanation a given manager may provide as to the tip credit policy, the adequacy of this form under Maryland wage laws remains a common question as to the entire class. The commonality requirement is met.

### 3. Typicality

As this court has pointed out, typicality has been criticized as being redundant, with many courts treating it as synonymous with commonality, *Hewlett*, 185 F.R.D. at 217 (citing *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D.Kan. 1996)), and others equating it with the adequacy of representation. *Id.* (citing *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 350 (S.D.Ga. 1996)). The Fourth Circuit has said, "the 'final three requirement of Rule 23(a) 'tend to merge,' with commonality and typicality 'serv[ing] as guideposts for determining whether . . . maintenance of a class is economical and whether the named plaintiff's claim and the class claims so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Gunnells v.*

31

*Healthplan Serv., Inc.*, 348 F.3d 417, 459 (4th Cir. 2003) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998)).  As to typicality itself, "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citing Broussard, 155 F.3d at 340).

Here, the resulting sub-minimum wage pay from Famous Dave's alleged, inadequate tip credit notification affected Mr. Graham just as it affected any other Tipped Employee who was given the tip credit notification during training. (ECF No. 29, at 2).  Any subsequent and resulting lost wages (the difference between their cash wage and minimum wage) would presumably be highly similar (if not identical) between Plaintiff and other servers like him.[12] Moreover, his injury is similar enough in nature as that suffered by bartenders and hosts (despite any differential in wages) to ensure his claim adequately mirrors the central conduct in question in the purported class.

---

[12] The inference that Plaintiff's physical disability in anyway makes him not "typical" of absent plaintiffs is rejected outright.  (ECF No. 37, at 21).  This argument *might* be worth considering as it relates to the time necessary to complete side duties as suggested, (*Id.*), but, as discussed, Plaintiff has not alleged a common policy or plan or pointed to any specific factual support for the allegation that Plaintiff, or any other employee, worked more than the twenty percent untipped work allowed by law.

### 4.   Adequacy of Representation

The fourth and final prerequisite under Fed.R.Civ.P. 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "Representation is adequate if (1) the named plaintiffs' interests are not opposed to those of other class members, and (2) the plaintiffs' attorneys are qualified, and experienced and able to conduct the litigation." *Cuthie v. Fleet Rsrv. Ass'n.*, 743 F.Supp.2d 486, 499 (citing *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D.Md. 2006)). Further, as the Supreme Court has said, "[t]he adequacy inquiry under [Fed.R.Civ.P.] 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Anchem Prods. Inc., v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58 (1982)).

Plaintiff asserts that his entire team of attorneys are "seasoned class-action litigators" who understand employment law. (ECF No.27, at 39). Mr. Gerald D. Wells, III ("Mr. Wells"), a lead attorney for Plaintiff, has submitted a declaration which includes substantial litigation, particularly class action, with which he and his firm, Connolly Wells & Gray, LLP, have been involved. (ECF No. 28). He also notes "there is no evidence that [Mr. Wells]'s interests are in conflict with the members of [the] classes he seek [sic] to represent." (ECF No. 28, at 7).

Famous Dave's does not dispute that Plaintiff's counsel will zealously and effectively represent the interests of Mr. Graham and absent class members, but rather treats typicality and adequacy of representation as one and the same.   As mentioned in a footnote above, this argument centers around a physical disability of Mr. Graham as an amputee that has little to no relevance to the typicality question, but decidedly no relevance in this context. (ECF No. 37, at 21).   In no way does any alleged physical limitations of Plaintiff detract from his ability adequately to pursue the interests of absent class members in securing an alleged underpayment of wages due to them under Maryland unemployment law.[13]  Plaintiff and his attorneys adequately represent the absent class members.

### 5.   The Requirements of Fed.R.Civ.P. 23(b)(3)

When deciding whether a claim meets the predominance and superiority requirements of Fed.R.Civ.P. 23(b)(3), there are four factors to consider:

> (i) the strength of the individual class members' interest in controlling the prosecution and defense of a separate action, (ii) the extent and nature of existing litigation already begun by or against class members, (iii) the desirability or

---

[13] As Mr. Wells' Declaration correctly states, effective July 1, 2016, Maryland's minimum wage went from $8.25 per hour to $8.75 per hour.  (ECF No. 28, at 8). Therefore, either way, Plaintiff and other absent class members would be similarly due the difference between Maryland's minimum wage and the sub-minimum cash wage they were paid.

>             undesirability              of concentrating the
>             litigation in the single forum selected by the
>             class    plaintiffs,    and    (iv)    the    likely
>             difficulties in managing the class action.

*Singelton v. Domino's Pizza, LLC.*, 976 F.Supp.2d 665, 677 (D.Md.
2013) (citing *Llyod v. Gen. Morots Corp.*, 275 F.R.D. 224, 228
(D.Md. 2011).    Class Action is a particularly fitting mechanism
when it can solve a collective action problem in "aggregating the
relatively  paltry  potential  recoveries  into  something  worth
someone's (usually an attorney's) labor." *Anchem*, 521 U.S. at 617.

As Mr. Graham properly asserts, if Famous Dave's failed to
meet the requirements of notification required to use a tip credit,
its main failure was the use of an allegedly inaccurate Tip Credit
Notice.    Regardless  of  any  variations  in  the  training  local
managers may provide in presenting this form to new employees,
this claim predominates in Famous Dave's resulting failure to pay
them minimum wage.    Plaintiff correctly argues that if the notice
is deficient as alleged, any "individualized issues" exist only in
calculating  exact  damages  which,  in  being  based  on  payroll
information, is "not especially complex." (ECF No. 27, at 41).

Equally important is the fact that, here as Plaintiff argues,
individual class members have "little incentive" to bring their
claims  individually  as  individual  recoveries  would  be  small
relative to the costs of litigating.    (ECF No. 27, at 41).    In
that sense, there is a clear collective action problem that class

certification would solve.  Both the predominance and superiority requirements are met, and a single forum for such claims is clearly desirable in this instance as a matter of judicial economy.  The purported class is hereby certified as it relates to Plaintiff's claim that the requirements to use a tip credit were not met and thus Maryland Tipped Employees were not paid a wage at or above the state's minimum wage.

The parties will be directed to confer regarding access to identifying information about putative plaintiffs and the form and contents of notice.

**E.   Other Motions**

**1.   Partial Summary Judgment**

**a.   Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In other words, if factual issues exist "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed.R.Civ.P.

56(c); *Pulliam Inv. Co.,* 810 F.2d at 1282 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a claim must factually support each element of that claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984)(quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir. 1967)).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50(citations omitted).

### b.   Analysis

Mr. Graham moves for partial summary judgment on behalf of himself and "all others similarly situated." (ECF No. 35).  The motion for summary judgment seems to extend to the potential claims of Famous Dave's Tipped Employees nationwide. (ECF No. 35, at 6-10).  Plaintiff argues that "the factual record indisputably demonstrates that Defendant failed to (i) properly inform its Tipped Employees of all of the provisions of the statute and (ii) utilized an improper tip pool, as well as retained part of the employees' tips." (*Id.*, at 7).  Famous Dave's shows that the record amply demonstrates that there are material factual questions that remain as to both claims.

As to the first claim, Famous Dave's provided Plaintiff with both the Tip Pool Notice and the Tip Credit Notice that it used at the Maryland locations during the relevant period. (ECF No. 39). Defendant shows Mr. Graham himself acknowledged receipt of both forms by signature, as mentioned. (*Id.*).  Famous Dave's asserts this alone discharged their duty under the FLSA, and if not, local managers verbally informed employees about use of the tip credit. Indeed, Mr. Weeden's declaration asserts that, at least at the Waldorf location, a manger or training server would explain the tip policy with all new employees. (ECF No. 44-7).  While Famous Dave's disputes numerous other sub-claims by Mr. Graham

surrounding the Tip Credit Notice itself, these assertions alone prove there is a material dispute on the first issue.

Plaintiff's claim of an illegal tip pool revolves primarily around the contention that Famous Dave's allowed "expeditors" to take part in his tip pool. Here Mr. Weeden explained that the Waldorf location uses what it calls "food runners" and employs no "expeditors." (*Id.*). Despite such localized differences in nomenclature, Defendant argues in its opposition that, in being the go-between for servers and bartenders and BOH employees, such food runners were what *would* traditionally be labeled an expeditor. (ECF No. 44, at 13). Moreover, these food runners were, in fact, tipped employees. (*Id.*). Such evidence directly gives rise to a material question as to whether Plaintiff having to share tips with "expeditors" complied with the law. Similarly, as to the issue of having to cover walkouts, (ECF No. 26-6, at 3-4), Mr. Weeden's declaration again shows that this issue is in dispute as he states that Famous Dave's policy is decidedly *not* to require employees to pay for such instances with their tips, nor was Mr. Graham ever required to do so. (ECF No. 44-7).

Thus, Mr. Weeden's declaration is fatal to Plaintiff's motion for partial summary judgment, even considered alone. This evidence, along with the other evidence put forth by Famous Dave's, shows, in a multitude of ways, that the factual record *does not*

indisputably show what Mr. Graham purports it to show, on either count.  Plaintiff's motion for partial summary judgment is denied.

### 2.  Discovery Sanctions

Like Plaintiff's motion to strike, his request for discovery sanctions against Defendant is without merit.

Discovery sanctions are reserved for egregious discovery violations.  For example, the Fourth Circuit has affirmed sanctions against a party where a declaration by the plaintiff rendered her deposition testimony "essentially meaningless," thereby wasting a "tremendous amount of time, effort, and expense in the discovery process and motions practice." *Rangarajan v. Johns Hopkins Univ.*, 917 F.3d 218, 227 (4th Cir. 2019).  Generally, courts "impose[] sanctions under this section only when there is a clear showing of bad faith: when the attorney's actions are *so completely without merit* as to require the conclusion that they must have been taken for some improper purpose." *Randall v. Creative Hairdressers, Inc.*, No. DKC 2006-2299, 2008 WL 4738933 at *4 (D.Md. Aug. 8, 2008) (citing *Dobkin v. Johns Hopkins Univ.*, No. CIV HAR 93-2228, 1995 WL 167802 (D.Md. 1995)).

The crux of Plaintiff's grievance with Defendant's discovery responses is Famous Dave's alleged failure adequately to prepare Mr. Hank for his depositions under Fed.R.Civ.P. 30(b)(6).  An organization's designee "must testify as to matters known or reasonably available to the organization," and the organization

itself is bound by a "good faith" effort to collect such information. *Doyle v. Hogan*, No. DKC 19-01900, 2019 WL 3500924 at *5 (D.Md. August 1, 2019) (quoting Fed.R.Civ.P. 30(b)(6) and *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D.Md. 2005)). "*[D]epending on the nature and extent of the obfuscation*, the testimony given by [a] *nonresponsive deponent* (*e.g.*, "I don't know") may be deemed binding on the corporation so as to prohibit it from offering contrary evidence at trial." *Dorsey v. TGI Consulting, LLC.*, 888 F.Supp.2d 670, 685 (D.Md. 2012) (emphasis added) (internal quotations marks omitted).

Plaintiff points out that: "[w]here a corporate deponent fails to provide an adequately prepared designee for deposition, sanctions are proper." *Coryn Group II, LLC. v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 239 (D.Md. 2010). Mr. Graham argues that two penalties spin out from this failure: (1) "a corporation that *wholly fails* to educate a corporate designee without justification is subject to mandatory monetary sanctions under [Fed.R.Civ.P.] 37(d)" and (2) "where unanswered information is significant enough, the 30(b)(6) deposition may have to be reconvened, possibly with a new witness, at the corporation's expense." (ECF No. 59-1, at 12-13) (emphasis added) (internal quotation marks omitted) (citing *Coryn Group II*, 265 F.R.D. at 239-40).

First, Plaintiff objects to the fact that Mr. Hank was initially deposed on June 27, 2019 and stated that expeditors share

in the tip pool "most of the time." (ECF No. 26-3, at 29).
However, it was not until August 20th that an errata sheet was
provided clarifying, as mentioned, that expeditors are sometimes
tipped as well. (ECF No. 37-7).[14] In his second deposition in
October, Mr. Hank says that this correction was made "after review"
of his comments when he realized they were inaccurate. (ECF No.
60-11, at 6). However, when asked who initiated that conversation,
Mr. Hank responded "[m]y counsel," (*Id.*), which Plaintiff alleges
shows that Famous Dave's had "key testimony changed at the behest
of outside counsel." (ECF No. 59-1, at 6).

Plaintiff also expresses dismay that outside defense counsel,
according to Mr. Hank's final November Deposition, (ECF No. 59-5,
at 11), had other state-specific tip forms two days before Mr.
Hank's October deposition. (ECF No. 59-1, at 16). Plaintiff
asserts that Mr. Hank could and should have acknowledged the
existence of these forms had he been adequately prepared, (ECF No.
59-1, at 16-17), instead of stating a vague knowledge that a "New
York form" *might* exist. (ECF No. 60-11, at 9). Plaintiff also
claims that Defendant purposefully withheld these documents that
"directly contradicted prior deposition testimony" from Mr. Hanks'

---

[14] Defendant seemingly confuses its own timeline in citing to
paragraphs 11 and 12 of the Wells Declaration as these paragraphs
deal with the later productions of "several additional tip credit
notice forms" and not the simple correction noted on the errata
sheet provided in August. (ECF No. 50, at 2).

June deposition in which he stated that the original Tip Notice Credit form produced by Famous Dave's, (ECF No. 29), applied "regardless of state." (ECF No. 26-3, at 8). Instead of making these documents known at the October deposition, however, Defendant only produced them to Plaintiff's counsel days later in filing the opposition to Plaintiff's motion for partial summary judgment on October 7, 2019. (ECF No. 59-1, at 15-16).

As a threshold matter, Defendant is wrong that Plaintiff's alleged failure to produce a "certification" as per Fed.R.Civ.P. 37(d)(1)(B) acts as a bar to his request for sanctions. (ECF No. 60, at 9). The rule states that "[a] motion for sanctions *for failing to answer or respond* must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed.R.Civ.P. (d)(1)(B) (emphasis added). However, the claim here does not involve an answer or response that was not produced, rather one that was alleged to have been produced late as an alleged form of gamesmanship. The certification is not a prerequisite for seeking sanctions in this context.

But sanctions are not appropriate here. As Famous Dave's points out, it "consistently complied with its duty to supplement its document production with additional documents as they were discovered." (ECF No. 60, at 17). In fact, Famous Dave's agreed

to the October and November continued depositions of Mr. Hank specifically to address "these issues and supplemental document productions." (ECF No. 60, at 17). It only refused Plaintiff's final request to continue the deposition a third time as the deposition had exceeded its allotted time. (*Id.*). The previous continuations, as Defendant correctly argues, cured any alleged discovery failure "within a reasonable timeframe" to avoid prejudice to Plaintiff. *Harden v. Siegelbaum*, No. AW-09-3166, 2011 WL 132252 at *2 (D.Md. April 1, 2011).

Further, Mr. Hank's extension depositions show an adequately prepared deponent except for the occasional misstatement, misunderstanding or lack of knowledge on isolated topics. This is not the kind of obfuscation or non-responsiveness that demands barring further clarifying or correcting evidence from consideration. The record reveals a good faith effort by Famous Dave's to supply information as it was discovered and to a correct a deponent when errors became known in compliance with Fed.R.Civ.P. 26(e). The fact that a discovery of new documents made by *outside* counsel just two days before Mr. Hank's October deposition did not filter through to him in answering a wide spectrum of questions for multiple hours is hardly clear evidence of bad faith. After all, these sheets were ultimately provided to Plaintiff on October 7, 2019, only five days after their discovery by outside counsel as part of Famous Dave's opposition to a summary

44

judgment motion, (ECF No. 44), a motion that had been filed by Mr. Graham only a month prior.  (ECF No. 34).  Plaintiff argues that such inaccuracies, corrections and additions demonstrate bad faith as opposed to simple oversights in the fast-paced arena of litigation.  Given the extreme and exceptional nature of discovery sanctions, however, the latter inference is more proper.  Parties may shape and supplement their arguments in response to new legal and factual disputes as they arise without running afoul of their discovery obligations.  The discovery sanctions are denied.

   **3.  Motions to Seal.**

   There are seven pending motions to seal, four filed by Plaintiff (ECF Nos. 31, 36, 51, 53) and three by Defendant (ECF Nos. 40, 47, 57).  All are unopposed.

   There is a well-established common law right to inspect and copy judicial records and documents.  *See Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978).  The Fourth Circuit has explained that:

> It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings.  See *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n. 17, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 428 (4th Cir. 2005).  The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open

to public scrutiny. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). "The distinction between the rights of access afforded by the common law and the First Amendment is significant, because the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *In re United States for an Order Pursuant to 18 U.S.C. Section 2703*, 707 F. 3d 283, 290 (4th Cir. 2013)(quoting *Va. Dep't of State Police*, 386 F.3d at 575)(internal quotation marks omitted). The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that "countervailing interests heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253. By contrast, the First Amendment secures a right of access "only to particular judicial records and documents," *Stone*, 855 F.2d at 180, and, when it applies, access may be restricted only if closure is "necessitated by a compelling government interest" and the denial of access is "narrowly tailored to serve that interest," *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (internal quotation marks omitted)).

*Doe v. Public Citizen*, 749 F.3d 246, 265-66 (4th Cir. 2014). Local Rule 105.11 requires the party seeking sealing to include "(a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Before sealing any documents, the court must provide notice of counsel's request to seal and an opportunity to object to the request before the court makes its decision. *See In re Knight Publi'g Co.,* 743 F.2d

231, 235 (4th Cir. 1984).  Either notifying the persons present in
the courtroom or docketing the motion "reasonably in advance of
deciding the issue" will satisfy the notice requirement. *Id.* When
a motion to seal is denied, the party making the filing ordinarily
will be given an opportunity to withdraw the materials.  Local
Rule 105.11.

Nearly all of the motions to seal contain only boilerplate
recitations. Proposed redactions must be limited to information
specifically identified as containing either sensitive private
information or, alternatively, trade secrets. *See Visual Mining,
Inc. v. Ziegler*, No. PWG 12-3227, 2014 WL 690905, at *5 (D.Md. Feb
21, 2014); see *also Butler* 876 F.Supp.2d at  576 n.18 ("In their
motion to seal, Defendants state only that they seek to seal the
exhibits pursuant to the confidentiality order, an explanation
insufficient to satisfy the 'specific factual representations'
that Local Rule 105.11 requires.").

Plaintiff's first motion to seal, (ECF No. 31), sought to
seal the memorandum in support of his certification motion, a
declaration, and two exhibits to the declaration based on
*Defendant's* designation the exhibits as "confidential" under the
stipulated protective order, asserting that the underlying
information "(i) contains sensitive personal information, trade
secrets or other confidential research development or commercial
information which is in fact confidential." (ECF No. 19).   As

47

explained by paperless order, however, such a request is insufficient. (ECF No. 33). The parties were told that the motion to seal would be denied if no one filed a properly supported motion. Accordingly, that motion to seal (ECF No. 31) will be denied and ECF Nos. 27, 28, 29, and 30 will be unsealed.

Plaintiff has also moved to seal his memorandum in support of his motion for partial summary judgment (ECF No. 36), and his reply memorandum on the certification motion with a declaration (ECF No. 51), based on the same so-called "confidential" exhibits. No justification has been supplied. Those motions will be denied and ECF Nos. 35, 49, and 50 will be unsealed.

An even more generalized motion to seal Plaintiff's reply memorandum in support of partial summary judgment was filed by Mr. Graham on October 21, 2019. (ECF No. 53). Without identifying any specific information, it states simply that the memorandum "discussed documents" similarly designed as confidential by Defendant. (*Id.*, at 1). As with the previous motions, this one fails in justifying any sealing. This motion to seal is denied. If Plaintiff wishes to redact sensitive information in his reply memorandum to his motion for partial summary judgment or if Defendant seeks similar relief, they have fourteen (14) days to file an appropriate motion with a memorandum that complies with Rule 105.11. In the meantime, this memorandum will remain

temporarily under seal.  If neither party moves to seal or redact, the paper at ECF No. 52 will be unsealed.

Defendant subsequently filed a motion to seal Exhibits E and F to its motion in opposition to the certification motion.  (ECF No. 40).  It first seeks to file Exhibit E under the same confidentiality order, but specifically identifies it as Plaintiff's paystubs with "wages earned and tax withholdings" listed.  (*Id.*, at 2).  As such, it is "appropriately designed Confidential," but Defendant expresses a willingness to withdraw the confidential designation if Plaintiff has no objection.  It argues that Exhibit F is comprised of "internal company documents" that Defendant wishes to keep out of the public record so that it cannot be used by "Famous Dave's competitors."  (*Id.*).  Further, unlike Mr. Graham's motion, it seeks only the "least restrictive approach" to protecting the confidentiality of these exhibits in moving to file them, but not "any portion of the Opposition," under seal.  This motion to seal is granted.  The actual exhibits may remain under seal.

Famous Dave's similarly moves to seal the Exhibits E and H to its opposition to motion for partial summary judgment.  (ECF No. 47).  Exhibit E is Famous Dave's Tip Pool Notice previously discussed, (ECF No. 45), and Exhibit H is the alternate tip credit notification labeled for use in Famous Dave's Indiana, Kentucky, New Jersey and Virginia locations. (ECF No. 46).  Famous Dave's

identifies these as "internal company documents" that it also does not want to be part of the public record to protect what it claims is proprietary information.  It also similarly includes reference to the confidentiality order.  (ECF No. 47, at 2).  Such blanket references to a confidentiality order and the generic labeling of these documents as "internal company documents," does not entitle them to be filed under seal.  Nowhere does Famous Dave's lend factual support to the assertion that these documents contain any proprietary information at all, or how a competitor would even exploit such information to its advantage.  The public interest in access to these documents outweighs any countervailing force and this motion to seal is denied.  If Defendant wishes to redact what it considers proprietary business information from these documents, it has fourteen (14) days to renew the motion with a memorandum that complies with Rule 105.11.  In the meantime, the exhibits will remain temporarily under seal.  If it does not renew its motion, the ECF Nos. 45 and 46 will be unsealed.

Famous Dave's final motion to seal is made in reference to Exhibit A to its opposition to Plaintiff's motion to strike.  (ECF No. 57) (citing ECF No. 56).  This already partially redacted document, it explains, still contains "employees' job titles, work locations, salaries, dates of hire, eligibility for benefits, job status and termination date (if applicable)."  (*Id.*).  This motion to seal is granted.

**IV.  Conclusion**

For  the  foregoing  reasons,  the  motion  conditionally  to certify a collective action and to certify a class will be granted in part and denied in part; the motion for partial summary judgment will be denied; the motion to strike the declaration of Demetrius Weeden will be denied; the motion for sanctions will be denied; the first and third motions to seal filed by Defendant (ECF Nos. 40, 57) will be granted, and the rest of the motions to seal will be denied.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
