```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

CHRISTOPHER GRAHAM, on behalf   :
of himself and all others
similarly situated              :

     v.                         :    Civil Action No. DKC 19-0486

                                :
FAMOUS DAVE'S OF AMERICA, INC.,
and Doe Defendants 1-10         :
```

**MEMORANDUM OPINION**

Presently pending in this Fair-Labor-Standards-Act-("FLSA")-collective and state-wage-law-class action is an unopposed motion for preliminary approval of a settlement agreement between Plaintiff Christopher Graham and Defendant Famous Dave's of America, Inc. ("Famous Dave's"). (ECF No. 128). Mr. Graham also seeks, preliminarily, certification of a settlement class, his appointment as class representative, appointment of his counsel as class counsel, approval of the timeline for and substance of the class notice, and the setting of a final approval hearing. The issues have been briefed, and the court now rules, no hearing being necessary. Local Rule 105.6. For the following reasons, the motion for preliminary approval of the settlement, and its accompanying requests, will be denied without prejudice.

I.  **Background**

The relevant factual background in this case is set out in a prior opinion. (ECF No. 62, at 2-6); *Graham v. Famous Dave's of*

*Am., Inc.*, No. 19-0486-DKC, 2020 WL 5653231, at *1-2 (D.Md. 2020). In short, Mr. Graham alleges that his former employer, Famous Dave's, did not provide the notice required for it to pay its tipped employees an hourly wage less than the minimum wage and claim a "tip credit" on the difference. (ECF No. 62, at 4, 15-20); *Graham*, 2020 WL 5653231 at *2, *6-7. On his own behalf and on behalf of those similarly situated, Mr. Graham filed this suit on February 19, 2019. (ECF No. 1). He alleges violations of the FLSA, 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, the Maryland Wage Payment and Collection Law ("MWPCL"), *id.* § 3-501 *et seq.*, and Maryland common law. (*Id.*, at 19-28).

In September 2020, the court conditionally certified a collective as to the FLSA claims and certified a class as to the state-wage-law claims for all Famous Dave's tipped employees in Maryland between February 19, 2016 and October 31, 2017. (ECF No. 62, at 27, 36; *see* ECF Nos. 80, at 1; 80-1). Notice was issued in January 2021 and potential FLSA collective members had sixty days to opt-in. (*See* ECF Nos. 80; 80-1). Between January 21 and March 12, twenty-five individuals opted-in and four opted-out. (ECF Nos. 81 through 96; 99). After the notices were sent, Defendant informed Plaintiff that the mailing list was incomplete. (ECF No. 128-2, ¶ 23). This disclosure evolved into preliminary settlement negotiations and the case was stayed on March 19, 2021

2

to facilitate full negotiations. (ECF Nos. 100; 101; 128-2, ¶ 23). With the assistance of a mediator, the parties reached the settlement agreement ("the Agreement") at issue. (ECF Nos. 102; 106; 108; 110; 113; 128-2, ¶¶ 24-26, 29). Mr. Graham moved unopposed on February 25, 2022 for preliminary approval of the Agreement. (ECF No. 128).

**II. The Settlement Agreement**

    **A. The Settlement Class**

The Agreement proposes a Settlement Class with two sub-classes, the FLSA Class and the Maryland Class. (ECF No. 128-3, ¶ 2.43).[1] Both are specific to "Tipped Employees," which include:

> Any individual employed by [Famous Dave's] [from February 19, 2016 through October 31, 2017] at any one or more of the [Famous Dave's] Restaurants [in Maryland] where [Famous Dave's] allegedly did not pay that individual the full minimum wage as they claimed or attempted to claim a "tip credit" for that employee pursuant to Section 203(m) of the FLSA and Maryland state wage and hour laws. Such employees include bartenders, servers, or hosts.

(*Id.*, ¶¶ 2.7; 2.23; 2.36; 2.46).

The FLSA Class includes:

> All Tipped Employees who affirmatively opt-into this Action pursuant to Section 216(b) of the FLSA by submitting a [timely] Claim Form

---

[1] Although the Agreement uses the term "FLSA Class," Plaintiff treats this group as a FLSA collective. (*See* ECF No. 128-1, at 16). This opinion uses "FLSA Class" for consistency. It also uses "Class Members" to refer to all Settlement Class Members. Members of the two sub-classes are referred to specifically.

3

> to the Claims Administrator . . . . Included in the FLSA Class is all individuals who have filed a consent form with the Court indicating they wish to be part of this Action.

(ECF No. 128-3, ¶ 2.20).  Other provisions make clear that this definition includes those employees "who previously submitted a Consent to Sue Form and have already opted-in to the Litigation." (ECF Nos. 128-1, at 9 n.2; 128-3, ¶ 4.6(B)(7), (E)).

The Maryland Class includes:

> All former and current Tipped Employees of [Famous Dave's] who worked in the State of Maryland at any time [from February 19, 2016 through October 31, 2017] at any one or more of the [Famous Dave's] restaurants operating under the brand "Famous Dave's" who has not filed a [timely] Request for Exclusion . . . . All members of the FLSA Class are members of the MD Class.

(ECF No. 128-3, ¶¶ 2.7; 2.23; 2.26).

Once notice is mailed, potential Settlement Class Members will have forty-five days to opt-in to the FLSA Class or to opt-out of the Settlement Class entirely.  (ECF No. 128-3, ¶ 2.2). Class Members who do nothing will be treated as members of the Maryland Class but not the FLSA Class.  (*See* ECF Nos. 128-3, ¶ 2.36; 128-4, at 7).  As discussed below, members of the two sub-groups are entitled to different recoveries.

    **B.   Consideration**

The Agreement creates a settlement fund of $995,000. (ECF No. 128-3, ¶¶ 2.41; 4.1).  It will be used to cover attorney's

fees and costs, settlement administration costs, a service payment to Plaintiff, and a settlement payment to Class Members. (*Id.*). In return, all Class Members release Famous Dave's from "all Maryland wage-related claims . . ., including but not limited to any claims pursuant to the MWHL and MWPCL" that are related to the facts or claims alleged in this lawsuit. (ECF No. 128-3, ¶ 5.1(A)(1)). In addition, members of the FLSA Class release Famous Dave's from "all federal wage-related claims." (*Id.*, ¶¶ 2.28; 5.1(A)(2)).

The method for distributing the settlement fund to Class Members is complicated. First, the claims administrator will deduct any service payment, attorney's fees, and costs awarded by the court. (ECF No. 128-3, ¶ 4.6(B)(1)).[2] The parties will not seek a service payment greater than $5,000. (*Id.*, ¶ 4.15(A)). They expect to request attorney's fees up to $331,667, or one-third of the Fund. (*Id.*, ¶¶ 4.6(A)(1); 4.14(A); ECF No. 128-4, at 4-5). Plaintiff has not provided an estimate of the proposed class counsel's costs and expenses, or those of the claims administrator. The remaining amount in the settlement fund ("the Net Fund") will be distributed to Class Members based on an individualized calculation. (ECF No. 128-3, ¶ 4.6(B)(2)).

---

[2] Although unmentioned in the pending motion or the Agreement, the parties apparently intend for RG2 Claims Administration LLC to serve as claims administrator. (ECF No. 128-2, ¶ 81).

5

To determine each Member's payment, the claims administrator will first calculate an "Individual Damage Amount" equal to the total tip credit taken by Famous Dave's for an employee over the relevant period. (ECF No. 128-3, ¶ 4.6(B)(2)).[3] It appears that the parties intend for the amount of tip credit to be calculated against the Maryland minimum wage, rather than the federal minimum wage. (*See id.* (using hypothetical hourly wage and tip credit amounts that sum to $8.25)). The "Individual Damage Amount" for all Class Members will then be added together to calculate a "Total Damages Amount." (*Id.*, ¶ 4.6(B)(3)). The Net Fund will be divided by the Total Damages Amount to get a fraction. (*Id.*, ¶ 4.6(B)(4)). That fraction will then be multiplied by each Individual Damage Amount to determine Class Members' "Individual Settlement Payment." (*Id.*, ¶ 4.6(B)(5)).

The Individual Settlement Payment is not the end of the road. It is divided into three equal parts: (1) a FLSA Settlement Payment, (2) a Maryland Settlement Payment, and (3) liquidated

---

[3] The Agreement in sub-section 4.6(B) refers to "Participating Settlement Class Members." (ECF No. 128-3, ¶ 4.6(B)(2)-(5), (9)). This term is not defined. Elsewhere, the word "Participating" is used to identify FLSA Class members because they must opt-in. (*See id.*, ¶¶ 2.28; 2.29; 2.45; 4.1). But the phrase must in some places refer to all Class Members because those portions of sub-section 4.6(B) provide the only description of how payments are calculated. (*Id.*, ¶ 4.6(B)(2)-(5)). In at least one place, however, it may refer to FLSA Class members because it discusses a risk of windfall payments that could not apply to members only of the Maryland Class. (*Id.*, ¶ 4.6(B)(9)).

damages and interest. (ECF No. 128-3, ¶ 4.6(B)(6)).[4] The FLSA Settlement Payment will be deducted from any Class Members not part of the FLSA Class – members only of the Maryland Class in other words. (*Id.*, ¶ 4.6(B)(8)). Those deducted FLSA Settlement Payments "will be added together and redistributed to the FLSA Class on a proportionate basis." (*Id.*).[5] Last, the Agreement caps FLSA Class members' payments to five times the estimated payment amount quoted in their individual notices. (*Id.*, ¶ 4.6(B)(9)). Any amount above the cap is "subject redistribution [sic] to other" FLSA Class members. (*Id.*). It is not clear how those amounts will be redistributed.

The checks disbursed to Class Members will identify the amounts for FLSA unpaid wages, Maryland unpaid wages, and liquidated damages, as applicable. (ECF No. 128-3, ¶ 4.11(C), (D)). The unpaid wage amounts will be reduced by "all required

---

[4] Sub-section 4.6(B)(6) appears to refer erroneously to "estimated" payments despite describing the final calculation. It is not clear whether this same error is repeated in 4.6(B)(9).

[5] It is not clear what "proportionate basis" means. Proportionate, a synonym for proportional, can mean "corresponding in size[ or] degree" or "having the same or a constant ratio." Proportional, *Merriam-Webster's Collegiate Dictionary* (11th Ed. 2003). The term could refer to an equal distribution or one that varies according to the size or degree of another variable. If the parties intended the latter, they have not identified how the redistributed amounts should vary. Whatever the amount, it appears it will be divided equally across the three different parts of the individual settlement payment because the Agreement states that final checks will be divided into equal parts, (ECF No. 128-3, ¶ 4.11(C)).

employee-paid payroll taxes and deductions . . . and other required deductions set forth within [Famous Dave's] records [such as] garnishments, tax liens, [and] child support[.]" (*Id.*, ¶¶ 4.6(B)(6); 4.11(C)(1), (D)(1)). Much remains unclear about these deductions. Presumably they will be taken after the final payment amount is determined for each Class Member and will be sent by the claims administrator to the party owed. That said, the Agreement absolves the parties, their counsel, and the claims administrator from any responsibility for wage garnishment, tax lien, or child support payments. (*Id.*, ¶ 4.11(J)).

Any unclaimed money in the Fund will be distributed to a *cy pres* recipient. (ECF No. 128-3, ¶¶ 2.11; 4.11(E)(1), (G)(2); 4.12). The parties have not identified one yet. The Agreement states, however, that they will "use their best efforts to agree upon organizations that provide, among other things, legal aide to low-income citizens of the State of Maryland." (*Id.*). They will jointly propose three potential recipients from which they expect the court to select one. (*See id.*).

C.  **Notice**

A settlement notice will be sent to Class Members within twenty-four days of the Agreement's preliminary approval. The proposed claims administrator will receive employment records from Famous Dave's within ten days and will then mail the notices within fourteen days. (ECF Nos. 128-3, ¶¶ 4.5; 4.7(A)). Attached to the

8

notice will be a claim form to opt-in to the FLSA Class and an exclusion form for opting-out of the Settlement Class altogether. (ECF Nos. 128-5; 128-6). Although Plaintiff, the Agreement, and the proposed Notice represent that individual estimated settlement amounts will be included with the Notice, there is no placeholder for those amounts in the proposed Notice and Plaintiff has not submitted an attachment including them either. (*E.g.*, ECF No. 128-3, ¶ 4.6(A)). The claim form attached to the proposed Notice only includes the number of hours reflected in the records, not any possible payment amount. (ECF No. 128-5, at 2).[6]

## III. Analysis

Plaintiff has not provided enough information to assess whether the Agreement can be approved preliminarily. In addition, the court serious has concerns about the differing recoveries between those Class Members who opt-in to the FLSA Sub-Class and those who don't and about the proposed Notice's ability accurately to inform potential members about the Agreement. As a result, it is not necessary at this time to address in detail certification or the appointment of a class representative, class counsel, or *cy*

---

[6] As elsewhere, Plaintiff's motion and the Agreement contain confusing errors regarding the estimates apparently intended to be included in the Notice. Both refer to an "Estimated Individual Settlement Amount" when clearly intending to refer to the "Individual Damages Amount." (ECF Nos. 128-1, at 12; 128-3 ¶ 4.6(A)(2)-(3), (5)). The parties would be well-advised to correct this and similar errors throughout the Agreement and proposed Notice before renewing their motion.

*pres* recipients. Some instruction nevertheless is provided on these topics in a list at the end of the opinion detailing information the Plaintiff should include in any renewed motion for preliminary approval.

### A. Settlement Approval

As noted above, this is a hybrid wage-and-hour case because it seeks to resolve both collective-action claims under the FLSA and class-action claims under Maryland state law. As a result, different standards for settlement approval are implicated. Ultimately, the two tests look to similar factors.

For FLSA collective actions, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores v. United States*." *Butler v. DirectSAT USA, LLC*, No. 10-cv-2747-DKC, 2015 WL 5177757, at *2 (D.Md. Sept. 3, 2015) (citations omitted). Pursuant to that decision, an FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). Determining the fairness and reasonableness of a proposed settlement agreement requires weighing several factors, which include "the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Id.* (quoting *Lomascolo v. Parsons*

*Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D.Va. Sept. 28, 2009)).

For class actions, a settlement agreement can only be approved upon a "finding that it is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e). Courts have condensed this into an analysis of whether the settlement is fair and adequate and identified various factors for both. *See McDaniels v. Westlake Servs.*, LLC, No. 11-cv-1837-ELH, 2014 WL 556288, at *8 (D.Md. Feb. 7, 2014) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991)). "By far the most important factor is a comparison of the terms of the proposed settlement with the likely recovery that plaintiffs would realize if they were successful at trial." *Id.* (quotation omitted). When performing this analysis, a district court must "act[] as a fiduciary of the class." *See 1988 Trust for Allen Children v. Banner Life Ins. Co.*, No. 20-1630, 2022 WL 774731, at *4 (4th Cir. Mar. 15, 2022) (quotation omitted).

1. **Missing Information**

Plaintiff has not provided enough information to assess the reasonableness and adequacy of the Agreement. Most importantly, the Plaintiff has not specified how much he estimates that Settlement Class Members are owed in total unpaid wages. The parties have provided the total hours potentially worked by Class Members and have hinted at the tip credit amount Defendant claimed, but this is not enough for the court to reach the total unpaid

11

wages. Without this information, the court cannot weigh the amount of the settlement against the potential recovery. *See Hall v. Higher One Machs., Inc.*, No. 15-cv-0670, 2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016) (denying motion for preliminary approval where the parties did not provide "any meaningful discussion of . . . how the relief secured by the proposed settlement compares to the putative class members' likely recovery if the case goes to trial"). This omission is even more problematic here because the fraction calculated by dividing the Net Fund by the Total Damages Amount is used to determine awards for individual Class Members. (ECF No. 128-3, ¶ 4.6(B)(4)-(5)).

The omissions do not end there. Perhaps most glaring is the failure to identify how many people are potential members of the Settlement Class. Mr. Graham states only that the Class includes "well over 650 individuals." (ECF No. 128-1, at 26). It is not clear what "well over" means. Plaintiff also has not provided information about the range and distribution of individual alleged damages across the Class Members or an estimate of how many Class Members are likely to opt-in to the FLSA Class. Nor has he provided estimates of the proposed class counsel's costs and expenses, or those of the claims administrator. It does not appear that this information would be difficult for Plaintiff to obtain. The parties propose to share all this information in the proposed

Notice, which will be sent less than one month after the Agreement is approved preliminarily.

### 2. Differing Recoveries

The Agreement provides a greater recovery to Class Members who opt-in to the FLSA Sub-Class than to those who do not, as a share of each Member's unpaid wages. The recoveries of those who don't opt-in will be at least one-third lower than those who do, again, as a share of individual unpaid wages. That's just a minimum, however. The degree to which the recoveries differ is highly contingent on two uncertain variables. In short, the gap between the two groups grows if many Members fail to opt-in and if those who don't opt-in are owed more unpaid wages than those who do opt-in. Plaintiff has not provided any estimate of what the ultimate gap is likely to be. Whatever its precise size, the gap will be significant and raises concerns about the settlement's reasonableness and adequacy (and, although not discussed here, Plaintiff and counsel's ability to represent adequately members of the FLSA Sub-Class and members only of the Maryland Sub-Class).

The court could find only one other example of a hybrid case with different recoveries between the FLSA collective and the state-law class apparently ungrounded in differences in the groups' legal entitlement to recover. *Shaver v. Gills Eldersburg, Inc.*, No. 14-cv-3977-JMC, 2016 WL 1625835, at *1 (D.Md. Apr. 25, 2016). While it is possible that the additional recovery afforded

13

to FLSA Class members is meant to incentivize or compensate the release of federal claims, the Plaintiff has not attempted to show why the size of the incentive or compensation is reasonable and adequate.  This is troublesome because Maryland wage-and-hour laws are more generous than the FLSA.  Maryland's minimum wage is higher, 29 U.S.C. ¶ 206 (a)(1); Md. Code Ann., Lab. & Empl. ¶ 3-413(c)(1), and plaintiffs can obtain up to treble damages under the MWPCL, compared to a maximum of double damages under the FLSA, *Orellana v. ACL Cleaning, LLC*, No. 19-cv-2318-DKC, 2022 WL 111167, at *4 (D.Md. Jan. 12, 2022).  As noted above, the Agreement uses the Maryland minimum wage for both sub-classes.

The parties' designation of different parts of Class Members' recoveries as FLSA unpaid wages, Maryland-law unpaid wages, and liquidated damages raises another legal concern.  Ordinarily, plaintiffs cannot recover twice for the same unpaid wages under state and federal law.  *Butler v. DirectSAT USA, LLC*, 55 F.Supp.3d 793, 818 (D.Md. 2014).  To be fair, it's not clear that this rule applies if a party recovers less than his or her total unpaid wages (which the court presumes to be the case here).  In addition, it's not clear that the parties' designations, made for tax purposes, are relevant to this doctrine.  Either way, Plaintiff says nothing about it.  Without more, the court cannot find that the Settlement Agreement is reasonable and adequate.

**B. Notice**

For FLSA collective actions, district courts have broad discretion regarding the "details" of the notice sent to potential opt-in plaintiffs. *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp.2d 445, 450 (S.D.N.Y. 2011) (cleaned up).

For class action settlements, a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed.R.Civ.P. 23(e)(1)(B). The notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). "Put another way, Rule 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Id.* (quotation omitted).

As noted above, there is reason to be concerned that the proposed Notice does not accurately or fairly inform potential Class Members about the Agreement. These concerns are heightened by the hybrid nature of the action. *See Curtis v. Genesis Eng'g Sols., Inc.*, No. 21-cv-0722-GJH, 2021 WL 5882341, at *4 (D.Md. Dec. 10, 2021) ("Settling parties must take care that the . . . Notice reflect[s] and carefully explain[s] the hybrid nature of the claims." (citations omitted)). Once again, it is not necessary to discuss these concerns in great detail because the Agreement will not be approved preliminarily for reasons already discussed. A few items are worth mentioning, however. All go to the same issue – whether the proposed Notice properly explains to Class Members the importance of opting-in to the FLSA Class.

Most significantly, the proposed Notice could be easily misunderstood to say that a Class Member must complete a claim form to obtain any recovery. For example, in one location the proposed Notice states in bolded, capitalized text that if a Member has not submitted a claim form, he or she "will not receive any proceeds[.]" (ECF No. 128-4, at 6). Elsewhere, the section titled "How do I participate in the Settlement and what happens if I do participate?" states that, "[t]o receive a distribution from the FLSA Settlement Amount, you must complete, sign and return the enclosed Claim Form[.]" (*Id.*, at 5). As in the Agreement, the use of the term "participate" is inconsistent and confusing. In

16

addition, the phrase "FLSA Settlement Amount" is not introduced earlier in the proposed Notice. It also is not clearly defined in that section, which goes on to say that the Member "will only receive all of the funds [he or she] would be entitled to" by submitting the claim form. (*Id.*). In neither example does the surrounding language explicitly indicate that a Member will still receive some funds if he or she does not submit a claim form (even if that may be implied). That clarification comes later and is divorced entirely from both of these examples.

Similar problems can be found with the discussion of how recoveries are calculated and the individual estimated payments provided to each Member. As for the calculation, the importance of opting-in, and the consequences for failing to do so, may not be sufficiently complete or given enough prominence. There is no discussion of the recovery cap for FLSA Class members. (ECF No. 128-4, at 4). In addition, the fact that amounts categorized as FLSA damages will be redistributed if no claim form is submitted comes after the apparent end of summary of how individual awards are calculated, even if it is in bold text. (*Id.*). As for the estimates, the proposed Notice suggests Members will be provided a single estimated recovery amount that assumes the Member opts-in to the FLSA Class. (ECF No. 128-4, at 4). Although language acknowledges that one-third of the estimated recovery is contingent on opting-in, no estimate is provided of Members'

17

individual recoveries should they not opt-in. (*Id.*). It is likely the Notice will need to be revised to inform Class Members better about the relationship between the collective and the class.

### C. List of Information Necessary to Assess the Agreement

If the Plaintiff renews his motion for preliminary approval of the Agreement, he should include additional information to address the concerns discussed above and other gaps not addressed in detail in this opinion but referenced below. The information should include, but need not be limited to:

- Clarification regarding the meaning of "proportionate basis" in sub-section 4.6(B)(8) and the basis for redistributing funds within the FLSA Class pursuant to the recovery cap provision in sub-section 4.6(B)(9);

- Clarification regarding the protocol should all members of the FLSA Class reach the recovery cap;

- Clarification regarding when taxes, wage garnishments, liens, and child support will be deducted from the individual awards and what will be done with those amounts;

- The precise number of total Settlement Class Members;

- The total unpaid wages alleged for all Members of the Settlement Class;

- Information about the range and distribution of unpaid wages across Class Members;

- An estimate or an estimated range, preferably from the claims administrator, of the percent of Class Members that will opt-in to the FLSA Class and the percent that will opt-out of the Agreement altogether;
  - To the extent the claims administrator has reason to believe the average damages in the FLSA Class will differ from the average damages among members only of the Maryland Class, it should provide relevant details;
- An estimate of the costs and expenses to be paid to proposed class counsel;
- An estimate of the costs and expenses to be paid to the claims administrator;
- Clarification regarding how individual recovery estimates will be communicated to Class Members; and
- The proposed *cy pres* recipients;
  - The parties should provide only a final recipient. The court will not select one for the parties.

## IV. Conclusion

For the foregoing reasons, the unopposed motion for preliminary approval of the Settlement Agreement will be denied without prejudice. A separate order will follow.

                                          /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge