IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER GRAHAM, on behalf    :
of himself and all others
similarly situated               :

    v.                           :    Civil Action No. DKC 19-0486

                                 :

FAMOUS DAVE'S OF AMERICA, INC.,
and Doe Defendants 1-10          :

**MEMORANDUM OPINION**

Presently pending in this Fair Labor Standards Act ("FLSA") collective and state wage law class action is a second unopposed motion for preliminary approval of a settlement agreement between Plaintiff Christopher Graham and Defendant Famous Dave's of America, Inc. ("Famous Dave's"). (ECF No. 136). Mr. Graham also seeks conditional certification of a settlement class, his appointment as class representative, appointment of class counsel, appointment of a settlement administrator, approval of the timeline for and substance of the class notice, and the setting of a final approval hearing.

Mr. Graham's first motion for preliminary approval, filed in February, was denied in April because the court required additional details about the terms of the settlement agreement and the notice to be provided to potential members of the FLSA collective and Maryland state-law class. The court also expressed reservations about the size of the difference in recovery between members who

opt into the FLSA collective and those who do not.  The proposed settlement agreement and notice initially attached to the pending second motion for preliminary approval attempted to address these and other issues but continued to contain various errors and conflicting or misleading information.  At the court's instruction, the parties filed corrected versions of the proposed settlement agreement and its attachments, including the notice and claim form.  (ECF No. 140-1).  The court now reviews those corrected documents.

The issues have been briefed, and the court now rules, no hearing being necessary.  Local Rule 105.6.  For the following reasons, the motion for preliminary approval of the settlement, and its accompanying requests, will be granted.

## I.   Background

The relevant factual background in this case is set out in a prior opinion.  (ECF No. 62, at 2-6); *Graham v. Famous Dave's of Am., Inc.*, No. 19-0486-DKC, 2020 WL 5653231, at *1-2 (D.Md. 2020).  In short, Mr. Graham alleges that his former employer, Famous Dave's, did not provide the notice required for it to pay its tipped employees an hourly wage less than the minimum wage and claim a "tip credit" on the difference.  (ECF No. 62, at 4, 15-20); *Graham*, 2020 WL 5653231 at *2, *6-7.  On his own behalf and on behalf of those similarly situated, Mr. Graham filed this suit on February 19, 2019.  (ECF No. 1).  He alleges violations of the

FLSA, 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, the Maryland Wage Payment and Collection Law ("MWPCL"), *id.* § 3-501 *et seq.*, and Maryland common law.  (*Id.*, at 19-28).

In September 2020, the court conditionally certified a collective as to the FLSA claims and certified a class as to the state wage law claims for all Famous Dave's tipped employees in Maryland between February 19, 2016 and October 31, 2017.  (ECF No. 62, at 27, 36; *see* ECF Nos. 80, at 1; 80-1).  Notice was issued in January 2021 and potential FLSA collective members had sixty days to opt-in.  (*See* ECF Nos. 80; 80-1).  Between January 21 and March 12, twenty-five individuals opted-in and four opted-out.  (ECF Nos. 81 through 96; 99).  After the notices were sent, Defendant informed Plaintiff that the mailing list was incomplete.  (ECF No. 128-2, ¶ 23).  This disclosure evolved into preliminary settlement negotiations and the case was stayed on March 19, 2021 to facilitate full negotiations.  (ECF Nos. 100; 101; 128-2, ¶ 23).  With the assistance of a mediator, the parties reached a settlement agreement.  (ECF Nos. 102; 106; 108; 110; 113; 128-2, ¶¶ 24-26, 29).

Mr. Graham moved unopposed on February 25, 2022, for preliminary approval of the agreement.  (ECF No. 128).  As noted above, that motion was denied without prejudice.  (ECF No. 131).  The court found that Plaintiff had "not provided enough information

to assess whether the [a]greement [could] be approved." (ECF No. 130, at 9). To assess the adequacy of the agreement, the court required an estimate of how much the potential members of the settlement class were owed in unpaid wages. (*Id.*, at 11). Other basic information that was unavailable included a precise estimate of the total number of potential settlement class members and estimates of the proposed class counsel's costs and expenses[, and] those of the claims administrator." (*Id.*).

The court also identified serious concerns "about the differing recoveries between those Class Members who opt-in to the FLSA Sub-Class and those who don't[.]" (ECF No. 130, at 11). Plaintiff had "not attempted to show why the size of the incentive or compensation [to FLSA Collective Members was] reasonable and adequate" nor "provided any estimate of what the ultimate gap is likely to be." (ECF No. 130, at 13-14).[1] The court requested additional information to assess the size of the gap, which, due to the way the agreement was structured, turned at least in part on "the range and distribution of individual alleged damages" and the number of "Class Members . . . likely to opt-in to the FLSA [Collective]." (*Id.*, at 12; *see id.*, at 13). In addition to briefing on the reasonableness of the gap, the court asked for

---

[1] In prior versions of the Agreement, the parties referred to the FLSA collective as the "FLSA Class." They now refer to it as the "FLSA Collective." The court adopts the term "FLSA Collective" throughout this opinion for consistency.

briefing on the appropriateness of allocating different parts of the recoveries to FLSA liability, state-law liability, and liquidated damages. (*Id.*, at 14).

The court also had serious concerns "about the proposed [n]otice's ability accurately to inform potential members about the [a]greement." The court outlined several ways in which it "could be easily misunderstood to say that a Class Member must complete a claim form to obtain any recovery." (ECF No. 130, at 16). The potential for misunderstanding was due in part to various errors and other conflicting or potentially misleading statements in the proposed agreement and notice. The court provided consolidated instructions at the end of its opinion for addressing all three issues. (*Id.*, at 18-19). It also included instructions on smaller issues, such as the parties' failure to identify *cy pres* recipients. (*Id.*).

On July 27, Mr. Graham submitted a second motion for preliminary approval which provided new information and included a revised settlement agreement and notice. The initial changes to the two documents were only somewhat responsive to the requests and concerns identified in the court's preceding memorandum opinion. Various errors and misleading and conflicting statements remained in both. For example, the parties' attempt to correct inconsistent terminology that appeared to refer to both the FLSA Collective and all Settlement Class Members was not carefully

incorporated throughout the two documents.  As a result, the
section of the Agreement which should have stated that FLSA
Collective Members released their federal claims now said that all
Settlement Class Members released their federal claims.  As another
example, the parties simply overlooked the court's instruction to
amend language in the proposed notice that incorrectly stated that
Settlement Class Members who failed to opt into the FLSA Collective
would not recover any funds.  On August 1, the court issued a
letter order requiring correction of these and other issues.  (ECF
No. 137).

Plaintiff has now supplemented his second motion for
preliminary approval with third drafts of the Settlement Agreement
(the "Agreement") and accompanying attachments, including the
Notice.  (ECF Nos. 140-1).  These are the proposed versions that
the court now reviews for potential preliminary approval.  Before
addressing the merits of Mr. Graham's motion, the court summarizes
the new information provided and substantive changes to the
pertinent documents.  Unless mentioned here, all other portions of
the Agreement and Notice remain materially unchanged from
Plaintiff's first motion for preliminary approval and are
accurately described in the court's preceding opinion.  (*See* ECF
No. 130, at 3-9); *Graham v. Famous Dave's of Am., Inc.*, No. 19-
cv-0486-DKC, 2022 WL 1081948, at *1-3 (D.Md. Apr. 11, 2022).

## II.  The Settlement Agreement and Notice

### A.    Agreement Terms

The main elements of the Agreement remain unchanged.  It applies to the same set of employees for the same period of time.  The Settlement Class continues to be structured around two sub-classes, an FLSA collective (the "FLSA Collective") and a state law class (the "Maryland Class").  All potential members of the Settlement Class who do not file a request for exclusion will be members of the Maryland Class.  Only those potential members who file claim forms to opt-in will be members of the FLSA Collective.

As before, the Agreement creates a Settlement Fund of $995,000.  It will still be used first to cover attorney's fees and costs, settlement administration costs, and a service payment to Plaintiff, before the remaining amount (the "Net Settlement Fund") is distributed to Settlement Class Members.  Members of the Maryland Class waive their Maryland state law claims and members of the FLSA Collective waive their federal claims.  (Because they are members of both sub-classes, the FLSA Collective Members waive all state and federal claims.)

The method for distributing the Net Settlement Fund to Settlement Class Members remains complicated.  To determine each Settlement Class Member's payment, the Claims Administrator will first calculate an "Individual Damage Amount" equal to the total tip credits against the applicable Maryland minimum wage taken by

Famous Dave's for a Tipped Employee over the relevant period.  The "Individual Damage Amount" for all Settlement Class Members will then be added together to calculate a "Total Damages Amount."  The Net Settlement Fund will be divided by the Total Damages Amount to get a fraction.  That fraction will then be multiplied by each Individual Damage Amount to determine each Class Members' "Individual Settlement Payment."

The only significant change to the Agreement is in how the Individual Settlement Payment amounts are divided.  Before, each amount was divided into three equal parts: (1) an FLSA Settlement Payment (33%), (2) a Maryland Settlement Payment (33%), and (3) liquidated damages and interest (33%).  Those proportions have changed.  Each Individual Settlement Payment will now be divided as follows: (1) twenty percent (20%) to the FLSA Settlement Payment, (2) forty percent (40%) to the Maryland Settlement Payment, and (3) forty percent (40%) to liquidated damages and interest.  (ECF No. 140-1, at 14).

Any Settlement Class Members who do not opt into the FLSA Collective—in other words members only of the Maryland Class—will not receive their FLSA Settlement Payments.  Those payments "will be redistributed to individuals who are FLSA Collective Members on

a proportional basis." (ECF No. 140-1, at 14 (§ 4.6(B)(8))).[2]  The effect of reducing the size of the FLSA Settlement Payments from 33% of the Individual Settlement Payment to 20% is to reduce the amount of funds withheld as a consequence of failing to opt into the FLSA Collective and reduce the total funds available to be redistributed to members of the FLSA Collective.  This will reduce the size of the difference in recoveries, measured as the share of unpaid wages recovered, between members of the FLSA Collective and members only of the Maryland Class.  Settlement Payments are capped at five (5) times Settlement Class Members' Estimated Settlement Payments.  In the event that the redistributions to FLSA Collective Members cause their Settlement Payments to exceed the cap, the excess will be distributed back to Settlement Class Members who do

---

[2] According to the Agreement, the proportional distribution will operate so that an FLSA Collective Member who "had damages that represented 1/1000 of the total funds claimed [] would be entitled to 1/1000 of the unclaimed FLSA Settlement Payments." (ECF No. 140-1, at 15 (§ 4.6(B)(8)).  Although not altogether clear from that description, the court understands this to mean, as it suggested in its preceding letter order, that the proportion for redistributing FLSA Settlement Payments will be the share represented by an FLSA Collective Member's Individual Damages Amount out of the total individual damages for all FLSA Collective Members.  More precisely, the amounts will be determined by multiplying the total amount of FLSA Settlement Payments available to be distributed by the fraction of each FLSA Collective Member's Individual Damage Amount divided by the total damages attributable to all FLSA Collective Members.

not opt into the FLSA Collective (members only of the Maryland Class) on a proportional basis.[3]

Based on new information provided by the Plaintiff, it is now possible to generate more specific estimates of how the Agreement will operate.  Mr. Graham indicates that he will request no more than a $5,000 service payment and that Class Counsel will request no more than $331,666.67 in attorneys' fees.  He estimates litigation expenses at $13,307.78 and settlement administrator expenses at $16,768.00.  Assuming the court approves those amounts upon a final fairness hearing, the Net Settlement Fund will be $628,257.55.[4]  The total estimated unpaid wages for all potential members of the Settlement Class is $1,363.692.77.  The estimated Net Settlement Fund would therefore provide a 46.1% recovery to the Settlement Class as a whole.

The recovery to individual members of the Settlement Class will vary.  Members who do not opt into the FLSA Collective (i.e., those members only of the Maryland Class) would receive 36.9% of

---

[3] The court understands that these amounts will be determined by multiplying the total amount of excess available to be distributed by the fraction of each member only of the Maryland Class's Individual Damage Amount divided by the total damages attributable to all members only of the Maryland Class.  In Section 4.6(B)(12), the Agreement cites to the wrong sub-section to define this calculation.  It should cite to Section 4.6(B)(11).  The parties will be ordered to update this citation accordingly.

[4] In its affidavit, the Claims Administrator estimates that the Net Settlement Fund will equal $631,565.  It is not clear why there is a discrepancy between its calculation and the court's.

their individual unpaid wages (not accounting for any wage garnishment, child support, or tax deductions). Plaintiff still has not estimated the share of individual unpaid wages that members of the FLSA Collective will recover. As the court noted in its previous memorandum opinion, this figure largely turns on the percent of potential Settlement Class Members who opt into the FLSA Collective and the percent of total unpaid wages attributable to them, as compared to the percent of total unpaid wages attributable to those Settlement Class members who do not opt into the FLSA Collective (i.e., members only of the Maryland Class).

Plaintiff has provided some information about these two variables. The proposed Claims Administrator estimates that ten-to-twenty percent (10-20%) of all potential Settlement Class Members will opt into the FLSA Collective. It also estimates that the final recovered settlement payments (rather than the individual unpaid wages, as requested) will range from a minimum of $1.15 to a maximum of $6,908.27, with a median of $426.75. If nothing else, this suggests that the distribution of individual unpaid wages across the potential Settlement Class Members is fairly skewed. It is likely that a relatively small minority of potential Settlement Class Members account for a disproportionate share of the total unpaid wages. The court assumes that those individuals with higher individual unpaid wage amounts will be more likely to opt into the FLSA Collective. Relying on these

assumptions, the court has concluded, as discussed further below, that it is possible the share of unpaid wages recovered by members of the FLSA Collective will not so exceed that of members who do not opt into the FLSA Collective that the Agreement becomes unfair.

  **B.**  **Notice**

    The schedule for sending the Notice is unchanged.  The methods for obtaining opt-in claim forms have expanded to include the use of an online portal, in addition to submission through the mail. The substance of the Notice includes many changes.  It now includes placeholders for informing the recipients of their Individual Damage Amounts, the estimated amount they will recover if they opt into the FLSA Collective (not accounting for any redistributions), and the estimated amount they will recover if they do not opt into the FLSA Collective.  The parties have also made revisions to address the concerns raised in the court's preceding letter order. For example, the Notice clearly states that the Settlement Class is limited to Maryland employees and more carefully indicates that the consequence for not opting into the FLSA Collective is to participate only partially, rather than fully, in the Settlement. The Notice no longer gives the misimpression that any potential Settlement Class Members who do not opt into the FLSA Collective will not recover at all.

**III. Analysis**

As noted above, Plaintiff moves for preliminary approval of the Agreement.  He also seeks conditional certification of a settlement class, his appointment as class representative, appointment of class counsel, appointment of a settlement administrator, approval of the timeline for and substance of the class notice, and the setting of a final approval hearing. Plaintiff's requests for conditional certification, appointment, approval of the timeline for and substance of the class notice, and setting of a final approval hearing will be granted in a separate order to follow.  The court focuses here only on preliminary approval of the agreement and the concerns it earlier expressed regarding the differing recoveries between members of the FLSA Collective and members only of the Maryland Class.

This is a hybrid wage-and-hour case.  It seeks to resolve both collective-action claims under the FLSA and class-action claims under Maryland state law.  As a result, different standards for settlement approval are implicated.  Ultimately, the two tests look to similar factors.

For FLSA collective actions, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores v. United States.*"  *Butler v. DirectSAT USA, LLC*, No. 10-cv-2747-DKC, 2015 WL 5177757, at *2 (D.Md. Sept. 3, 2015) (citations omitted).  Pursuant to that

decision, an FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).   Determining the fairness and reasonableness of a proposed settlement agreement requires weighing several factors, which include "the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Id.* (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D.Va. Sept. 28, 2009)).

For class actions, a settlement agreement can only be approved upon a "finding that it is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e).   Courts have condensed this into an analysis of whether the settlement is fair and adequate and identified various factors for both.   *See McDaniels v. Westlake Servs.,* LLC, No. 11-cv-1837-ELH, 2014 WL 556288, at *8 (D.Md. Feb. 7, 2014) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991)).   "By far the most important factor is a comparison of the terms of the proposed settlement with the likely recovery that plaintiffs would realize if they were successful at trial."   *Id.* (quotation omitted).   When performing this analysis, a district court must "act[] as a fiduciary of the class."   *See 1988 Trust for Allen Children v. Banner Life Ins. Co.*, No. 20-1630, 2022 WL 774731, at *4 (4th Cir. Mar. 15, 2022) (quotation omitted).

Overall, the size of the recovery to the class is fair, reasonable, and adequate in light of the strength of the case against Defendant, the risks of litigation, and the parties' representation that Defendant, at least at the time the Agreement was initially reached, faced significant financial stresses.  What may not be fair or reasonable is the greater recovery provided to Class Members who opt-in to the FLSA Collective than to those who do not, as a share of each Member's unpaid wages.  As discussed above, the Settlement Class as a whole will recover 46.1% of their unpaid wages, assuming all estimates are accurate.  Members who do not opt-in to the FLSA Collective will lose out on recovery of approximately 9% of their unpaid wages, for a maximum individual recovery of 36.9%.  Members who opt into the FLSA Collective will receive an undetermined share of their individual unpaid wages.  The Agreement caps their recovery at five times the estimated 46.1% amount, or 230%, of their individual unpaid wages (although Plaintiff avers that it is unlikely members of the FLSA Collective will recover this much).

Plaintiff contends that the penalty for failing to opt-in and the reward for doing so are necessary to incentivize Settlement Class Members to participate fully in the Agreement and thereby

achieve "global peace."   (ECF No. 136-9, at 34).[5].   He does not
identify any cases that adopt a similar incentive structure.   The
only relevant case he cites is a Fourth Circuit decision which, in
denying an objection to a Rule 23 settlement's failure to include
an opt-out provision, noted that requiring an opt-out would
discourage settlements because defendants want to be able to "buy
something approaching global peace."   *Berry v. Schulman*, 807 F.3d
600, at 613 (4th Cir. 2015) (citation omitted).

At some point, however, an incentive can become unreasonable
and unfair when it goes far beyond what is required to encourage
participation in the FLSA collective and no longer bears any
meaningful relationship to the value of the FLSA claims released.
Here, it is likely, at a minimum, that any retained FLSA claims
are not worth more than the Maryland claims released.   As the court
previously noted, Maryland's wage-and-hour laws are more generous
than the FLSA.   Maryland's minimum wage is higher, 29 U.S.C. ¶ 206
(a)(1); Md. Code Ann., Lab. & Empl. ¶ 3-413(c)(1), and plaintiffs
can obtain up to treble damages under the MWPCL, compared to a
maximum of double damages under the FLSA, *Orellana v. ACL Cleaning,*

---

[5] Plaintiff separately argues that the difference in recovery
recognizes "the fact that the damages suffered in this case result
from the same underlying behavior" and "the strength of" the
Maryland state law claims.   (ECF No. 136-9, at 34).   If anything,
these arguments undercut Plaintiff's position and support the
court's concerns because they demonstrate what little value any
retained FLSA claims may possess, as discussed below.

*LLC*, No. 19-cv-2318-DKC, 2022 WL 111167, at *4 (D.Md. Jan. 12, 2022).  As a practical matter, it is not clear that any Settlement Class Members who do not opt into the FLSA Collective are likely to assert their unreleased federal claims.

Nevertheless, preliminary approval should be granted when a proposed settlement is "within the range of possible approval," subject to further consideration at the final fairness hearing after interested parties have had an opportunity to object. *Benway v. Resource Real Estate Servs., LLC*, No.05-cv-3250-WMN, 2011 WL 1045597, at *4 (D.Md. Mar. 16, 2011) (internal quotation marks omitted).   After performing its own back-of-the-envelope calculations, the court is satisfied that it is possible that the gap in recovery between members who opt into the FLSA Collective and members who do not will be fair and reasonable.

However, the end result remains uncertain.  At the Final Fairness Hearing, the parties will be required to inform the court what FLSA Collective Members will recover as a share of their individual unpaid wages and what members who do not will recover as a share of their individual unpaid wages.  If, for example, members who opt-in recover 50% and members who do not opt-in recover 37%, the court would grant final approval (assuming no valid objections are raised by Settlement Class Members).   If, however, members who opt-in recover 100% (or 230%) of their individual unpaid wages and members who do not opt-in recover 37%

of their unpaid wages, the court may find the Agreement unfair and unreasonable.[6]

## IV.  Conclusion

For the foregoing reasons, the unopposed motion for preliminary approval of the Settlement Agreement will be granted. A separate order will follow.

/S/
_____
DEBORAH K. CHASANOW
United States District Judge

---

[6] In its preceding memorandum opinion, the court requested briefing on the propriety of the parties' decision to designate different parts of Class Members' recoveries as FLSA unpaid wages, Maryland law unpaid wages, and liquidated damages because it raises another legal concern.  As the court noted, plaintiffs cannot ordinarily recover twice for the same unpaid wages under state and federal law.  *Butler v. DirectSAT USA, LLC*, 55 F.Supp.3d 793, 818 (D.Md. 2014).  Plaintiff has not responded to the court's request. Although this failure is troubling, the applicability of the rule against duplicate recoveries is not clear.  It seems unlikely to apply here because the Settlement Class Members are likely to recover less than their total unpaid wages.  The parties are on notice, however, that they will need to address this issue at the Final Fairness Hearing if FLSA Collective Members recover more than their unpaid wages.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER GRAHAM, on behalf      :
of himself and all others
similarly situated                 :

    v.                                 :   Civil Action No. DKC 19-0486

                                             :

FAMOUS DAVE'S OF AMERICA, INC.,
and Doe Defendants 1-10            :

**ORDER**

Here, upon careful consideration of the Plaintiff's unopposed motion and a thorough review of the proposed Settlement Agreement, and subject to further consideration at the hearing described in Paragraph 14 below ("the Final Fairness Hearing"), it is this 22nd  day of August, 2022, ORDERED as follows:

1.   Plaintiff's unopposed motion for preliminary approval of the Settlement Agreement, (ECF No. 136), BE, and the same hereby IS, GRANTED;

2.   As discussed in the accompanying memorandum opinion, and subject to further consideration at the Final Fairness Hearing, the terms of the Settlement Agreement are preliminarily approved: (a) as fair, reasonable, and adequate within the meaning of Fed.R.Civ.P. 23(e); and (b) as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act ("FLSA"), with the following change:

     a. The parties shall delete from Section 4.6(B)(12) the citation to "4.6(B)(8)" and replace it with the following text: "4.6(B)(11)";

3. For settlement purposes only, and subject to further consideration at the Final Fairness Hearing, the following class of individuals ("the Settlement Class Members") BE, and the same hereby IS, CONDITIONALLY CERTIFIED both: (a) as a class action pursuant to Fed.R.Civ.P. 23(a) & 23(b)(3) ("the Maryland Class"); and (b) as a collective action pursuant to 29 U.S.C. § 216(b) ("the FLSA Collective"):

> All Tipped Employees (server, bartender, or host) who worked for Famous Dave's restaurant in the State of Maryland at any time from February 19, 2016 to October 31, 2017.
>
> Excluded from this Settlement Class are all Tipped Employees who submit a timely and valid Request for Exclusion.

4. Incorporating the reasoning from its earlier memorandum opinion conditionally certifying an identical class for litigation purposes, (ECF No. 62, at 27-36), the court preliminarily finds that the Maryland Class meets the prerequisites for a class action under Fed.R.Civ.P. 23(a) and (b)(3) in that:

     a. The number of Maryland Class Members – 680 – is so numerous that joinder of all members thereof is impracticable;

b.   There are questions of law or fact common to the Maryland Class, including but not limited to the question of whether Defendant failed properly to pay Tipped Employees by failing to satisfy the notice requirements of the tip credit provisions in federal and state law;

c.   Mr. Graham's claims are typical of the claims of the class he seeks to represent because his claims arise from the same factual and legal circumstances that form the bases of the Maryland Class Members' claims – namely, Defendant's alleged failure to provide its Tipped Employees in Maryland with notice of the requirements of the tip credit provisions in federal and state law during the period between February 19, 2016 and October 31, 2017;

d.   Mr. Graham and Class Counsel have and will fairly and adequately represent the interests of the class because Mr. Graham's interests are not at odds with those of the Maryland Class Members and because Class Counsel are qualified, experienced, and competent (*see* ECF Nos. 136-1; 136-8);

e.   The questions of law or fact common to the class predominate over any factual or legal variations

among Maryland Class Members, because the alleged
tip credit notices at issue were form notices; and

f.  Class adjudication of Maryland Class Members' claims
is superior to individual adjudication because it
will conserve judicial resources and is more
efficient for Maryland Class Members, whose claims
are relatively small and who may not be in a position
to enforce their rights through a lengthy and costly
suit;

5.  Incorporating the reasoning from its earlier memorandum
opinion conditionally certifying an identical collective for
litigation purposes, (ECF No. 62, at 20-27), the court
preliminarily finds that the FLSA Collective meets the
prerequisites for a collective action under 29 U.S.C. § 216(b)
because the FLSA Collective Members are similarly situated by
virtue of Defendant's alleged failure to satisfy the notice
requirements of the tip credit provisions in federal and state law
during the period between February 19, 2016 and October 31, 2017;

6.  Plaintiff Christopher Graham BE, and the same hereby IS,
APPOINTED to serve as the representative of both the Maryland Class
and the FLSA Collective;

7.  The law firms of Connolly Wells & Gray, LLP and Lynch
Carpenter LLP, BE, and the same hereby ARE, APPOINTED to serve as

Class Counsel for the Maryland Class, pursuant to Fed.R.Civ.P. 23(g) and for the FLSA Collective;

8.   RG/2 Claims Administration LLC BE, and the same hereby IS, APPOINTED to serve as the Settlement Administrator for the Settlement Agreement;

9.   The notice protocols described in Sections 4.5 and 4.7 of the Settlement Agreement are approved pursuant to Fed.R.Civ.P. 23(c)(2)(B) and the parties are directed strictly to follow the agreed-upon protocols; the court finds that the notice protocols constitute valid, due, and sufficient notice to the Settlement Class Members;

10.   The Notice attached to the Settlement Agreement as Exhibit A is also approved pursuant to Fed.R.Civ.P. 23(c)(2)(B) with the following changes:

> a.   The parties shall delete the following text from the end of the first sentence in the answer to Question 14: ", in Courtroom___" Between the first and second sentences, the parties shall insert the following text: "The specific courtroom will be noted at www.mdd.uscourts.gov/calendar/calendar.asp.";
>
> b.   The parties shall delete on page 4 the following text in the last sentence of the third paragraph (preceding the bold estimates) preceding the

estimated recovery for an individual that fails to become a member of the FLSA Collective: "at least";

    c.   The parties shall delete on page 4 the following text at the beginning of the bold estimated amount that the recipient will recover if he or she DOES NOT submit a Claim Form: "At least";

    d.   The parties shall bold all the text in the paragraph at the top of page 6 which begins as follows: "For those who have not previously submitted a Consent to Sue Form . . . ";

11.   The parties are directed to submit a revised Notice incorporating the above-listed corrections within seven (7) days of the date of this Order;

12.   Settlement Class Members who wish to opt into the FLSA Collective must follow the procedures described in Questions 8, 9 and 10 of the Notice;

13.   Settlement Class Members who wish to object to the Settlement Agreement must follow the procedures described in Section 4.8 of the Settlement Agreement and Question 11 of the Notice, and Settlement Class Members who wish to exclude themselves from the Maryland Class must follow the procedures described in Section 4.9 of the Agreement and Question 12 of the Notice;

14.   Pursuant to Fed.R.Civ.P. 23(e), a Final Fairness Hearing addressing final approval of the Settlement Agreement shall be

held at the United States District Courthouse, 6500 Cherrywood Lane, Greenbelt, Maryland 20770 at 11:00 a.m. on December 2, 18, 2022. The specific courtroom will be noted at www.mdd.uscourts.gov/calendar/calendar.asp. In the event that renewed incidence of COVID-19 limits or prevents in-person proceedings in the courthouse, the hearing may be held virtually via zoomgov.com. Appropriate notices will be noted on the docket and the court's calendar;

15. At least 14 days prior to the Final Fairness Hearing, Class Counsel shall file all papers in support of (a) final approval of the Settlement Agreement as fair, reasonable, and adequate within the meaning of Fed.R.Civ.P. 23(e); (b) final approval of the Settlement Agreement as a reasonable and fair compromise of a *bona fide* dispute under the FLSA; (c) final certification of the Maryland Class; (d) final certification of the FLSA Collective; (e) attorneys' fees and expenses requested by Class Counsel; (f) costs and expenses requested by the Settlement Administrator; (g) the incentive fee requested on behalf of Mr. Graham; and (h) approval the proposed *cy pres* recipient;

16. All proceedings in this action are hereby stayed pending the Final Fairness Hearing; and

17.   The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties.


                                    _____/S/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge