DocuSign Envelope ID: 3F7758C5-01B4-40EA-AAD4-E11399EA8ECB

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHRISTOPHER GRAHAM, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FAMOUS DAVE'S OF AMERICA, INC.; and DOE DEFENDANTS 1-10.<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No.: 19-cv-000486-DKC |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE AGREEMENT

This Joint Stipulation of Settlement and Release Agreement (the "*Settlement Agreement*"),[1] is entered into by and between Plaintiff Christopher Graham ("*Plaintiff*" or "Graham"), on behalf of himself and all other individuals he seeks to represent, and Defendant Famous Dave's of America, Inc. (referred to as the "*Named Defendant*").

## RECITALS

WHEREAS, *Plaintiff* commenced litigation captioned *Graham v. Famous Dave's of America, Inc.*, Civil Action No. 19-000486 in the United States District Court for the District of Maryland (the "*Action*") asserting various wage and hour claims against the *Named Defendant* under Maryland state law and the Fair Labor Standards Act ("*FLSA*");

WHEREAS, the *Named Defendant* has vigorously contested *Plaintiff's* claims from the outset, including *Plaintiff's* assertions that the *Action* may be maintainable as a class and/or collective action;

WHEREAS, the *Parties* have engaged in significant discovery practice, including taking the deposition of *Plaintiff* and the corporate designee of the *Named Defendant*;

WHEREAS, *Plaintiff* was granted conditional certification of the *FLSA* collective class and class certification of the Maryland state class regarding the *Named Defendant's* alleged failure to comply with the tip credit notification requirements under the *FLSA* and Maryland state law;

WHEREAS, *Plaintiff's* motion for partial summary judgment as to certain legal issues including the *Named Defendant's* failure to comply with the tip credit notification requirements under the *FLSA* and Maryland state law was denied;

---

[1] Italicized words are defined herein.

WHEREAS, the *Named Defendant* continues to deny all liability with respect to any and all claims alleged in the *Action* and has asserted numerous defenses;

WHEREAS, the *Named Defendant* maintains that it is presently, and at all relevant times have been, in compliance with the tip credit notification requirements under both the *FLSA* and Maryland state law;

WHEREAS, the *Parties* participated in a mediation with Retired Chief Judge Legg of the District of Maryland ("*Mediator*") – an experienced judicial officer who is recognized in mediating wage and hour claims and other complex class actions;

WHEREAS, prior to and during the mediation, the *Parties* spent significant time ferreting out each of their respective positions, as well as the possibility of settlement;

WHEREAS, the *Parties* reached an agreement in principle for a settlement in this *Action* only with the assistance of the *Mediator* and, even then, required further additional conversations amongst the *Parties*; and

WHEREAS, the *Parties* desire to promptly and fully resolve and settle with finality the *Action* without further litigation;

NOW, THEREFORE, the *Parties*, in consideration of the promises, covenants, and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

## 1.    **BACKGROUND**

Plaintiff Christopher Graham worked as a server at a restaurant operated by the *Named Defendant* doing business as Famous Dave's of America, Inc. ("Famous Dave's") in Waldorf, Maryland. Mr. Graham received part of his compensation in tips, and Famous Dave's utilized a "tip credit" to satisfy its federal and state minimum wage obligations in paying *Plaintiff* and other *Tipped Employees*. Mr. Graham claims the *Named Defendant, inter alia*: (i) failed to satisfy the notice requirements of the tip credit provisions in federal and state law; and (ii) failed to ensure *Tipped Employees* earned the mandated minimum wage when taking the tip credit. The *Named Defendant* vigorously denies each allegation and maintains that their restaurants' employees, including Mr. Graham, were properly notified of the tip credit provisions, and properly paid at all times.

On February 19, 2019, on the basis of those alleged facts, *Plaintiff* sued the *Named Defendant* in the *Action*. On his own behalf, and on behalf of a putative class and putative collective, Mr. Graham asserted claims under the *FLSA*, Maryland Wage and Hour Law ("*MWHL*"), Maryland Wage Payment and Collection Law ("*MWPCL*"), and Maryland common law. *Plaintiff* sought recovery of alleged unpaid wages, alleged unpaid or misappropriated gratuities, liquidated damages, and attorneys' fees and costs, as well as injunctive relief. Thereafter, on April 1, 2019, the *Named Defendant* filed an answer to the *Complaint*.

On September 16, 2019, *Plaintiff* moved for certification of the Maryland state claims pursuant to Fed. R. Civ. P. 23 and conditional certification of the federal claim pursuant to Section 216(b) of the *FLSA*. That motion was denied in part and granted in part. In addition, on September 19, 2019,

*Plaintiff* moved for partial summary judgment. In that motion, *Plaintiff* asserted, *inter alia,* that the *Named Defendant* failed to comply with the tip credit notification requirements under state and federal law. On October 7, 2019, the *Named Defendant* responded to *Plaintiff's* motion for partial summary judgment. On September 23, 2020, the motion for partial summary judgment was denied. In that same decision, however, the *Court* granted conditional certification for *Tipped Employees* in Maryland from September 16, 2016 through October 31, 2017 and class certification for *Tipped Employees* in Maryland between February 19, 2016 and October 31, 2017.

Consequently, the *Parties* engaged in dissemination of notice pursuant to the *Court's* decision regarding certification. Thereafter, *Defendant's Counsel* notified *Plaintiff's Counsel* that the notice was incomplete as there were additional *Tipped Employees* who were not previously included in the dissemination of notice. The *Parties* then began to discuss how to address this issue, including whether mediation was appropriate. On May 12, 2021, the *Parties* appeared before the *Mediator* and participated in an all-day mediation. While that mediation was unsuccessful, the *Mediator* continued to remain in contact with the *Parties.* Approximately one week after the mediation, the *Mediator* announced that the *Parties* had reached an accord.

Based upon their independent analysis, and recognizing the risks of continued litigation, counsel for *Plaintiff* believes that the settlement with *Named Defendant* for the consideration of and on the terms set forth in this *Settlement Agreement* is fair, reasonable, and is in the best interest of *Plaintiff* and *Settlement Class* members, in light of all known facts and circumstances, including the risk of delay and defenses asserted by the *Named Defendant*. Although the *Named Defendant* denies liability, it likewise agrees that settlement is in the *Parties'* best interests. For those reasons, and because an effective release is contingent on *Court* approval, the *Parties* submit their *Settlement Agreement* to this *Court* for its review.

## 2.    **<u>DEFINITIONS</u>**

2.1    ***Action.*** The legal action captioned *Graham v. Famous Dave's of America, Inc.*, Civil Action No. 1:19-cv-00486-DKC, in the United States District Court for the District of Maryland.

2.2    ***Bar Date.*** The date by which a *Class* member must submit any of the following to the *Claims Administrator*: (i) an objection; (ii) a *Request for Exclusion* from the *MD Class;* (iii) a *Claim Form;* and/or (iv) a declaration contesting the validity of the *Claims Administrator's* calculations regarding that individual *Class* member's *Estimated Settlement Payment*. The *Parties* agree that the *Bar Date* shall be at least forty-five (45) days after the mailing of the *Notice Packet.*

2.3    ***Claim Form.*** The form substantially in the form attached hereto as Exhibit B that shall be mailed with the *Notice Packet* for *Tipped Employees* to complete before becoming *FLSA Collective Members*. Where appropriate, the *Claim Form* shall include the form or language to substitute for Department of Treasury Internal Revenue Service Form W-9, Request for Taxpayer Identification Number and Certification.

2.4    ***Claims Administrator.*** For purposes of effectuating the administration of the *Settlement*, the *Claims Administrator* shall be RG2 Claims Administration LLC, the same entity who disseminated notice following the Court's ruling regarding class/collective certification.

**2.5**     *Class Counsel.* Connolly Wells & Gray, LLP and Lynch Carpenter LLP.

**2.6**     *Class Members' Total Damages Amount.* "Class Members' Total Damages Amount" shall have the meaning set forth in Section 4.6 (A)(3).

**2.7**     *Class Notice.* The notice substantially in the form of Exhibit A to be directed to *Settlement Class* members. The purpose of the *Class Notice* is to inform members of the *Classes* about the resolution of the *Action* and the material terms of this *Settlement Agreement.*

**2.8**     *Class Period.* February 19, 2016 through October 31, 2017.

**2.9**     *Classes / Class Members.* Members of both the *MD Class* and *FLSA Collective.*

**2.10**    *Complaint.* The complaint filed in this *Action* on or around February 19, 2019.

**2.11**    *Consent to Sue Form.* "Consent to Sue Form" shall mean any Consent Form to Join a Collective Action Pursuant to 29 U.S.C. § 216(b) filed in this Action on or before March 12, 2021.

**2.12**    *Court.* The United States District Court for the District of Maryland.

**2.13**    *Cy Pres Distribution.* Any and all funds that, pursuant to the terms of this *Settlement*, require distribution to a *cy pres* recipient(s) pursuant to Section 4.12 of this *Settlement Agreement.*

**2.14**    *Defendant's Counsel.* Smithey Law Group, LLC.

**2.15**    *Effective Date.* The first day after the *Settlement* becomes *Final.*

**2.16**    *Estimated Settlement Payment.* "Estimated Settlement Payment" will have the meaning set forth in Section 4.6.

**2.17**    *Estimated FLSA Settlement Payment.* "Estimated FLSA Settlement Payment" shall have the meaning set forth in Section 4.6 (A)(6).

**2.18**    *Estimated Individual Damages Amount.* "Estimated Individual Damages Amount" shall have the meaning set forth in Section 4.6 (A)(2).

**2.19**    *Estimated MD Settlement Payment*. "Estimated MD Settlement Payment" shall have the meaning set forth in Section 4.6 (A)(6).

**2.20**    *Estimated Net Settlement Amount.* "Estimated Net Settlement Amount" shall have the meaning set forth in Section 4.6 (A)(1).

**2.21**    *Estimated Settlement Payment.* "Estimated Settlement Payment" shall have the meaning set forth in Section 4.6 (A)(5).

**2.22**    *Expiration Period.* 180 days after the mailing of the *Settlement Payment* to the *Class Members.*

**2.23 Final.** With respect to any judicial ruling or order, an order that is final for purposes of 28 U.S.C. § 1291, and (a) for which the time has expired to file an appeal, motion for reconsideration or clarification, motion for re-argument, motion for rehearing, petition for a writ of certiorari or other writ ("*Review Proceeding*") with respect to such judicial ruling or order with no such *Review Proceeding* having been filed; or (b) if a *Review Proceeding* has been filed with respect to such judicial ruling or order, (i) the judicial ruling or order has been affirmed without material modification and with no further right of review, or (ii) such *Review Proceeding* has been denied or dismissed with no further right of review.

**2.24 Final Approval Hearing.** The hearing scheduled by the *Court* to decide whether to approve the *Settlement* as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23. Such a hearing will only constitute a *Final Approval Hearing* if it is scheduled between 75 and 90 days after entry of the *Preliminary Approval Order*, so as to provide adequate time for *Class Notice* to be disseminated.

**2.25 Final Approval Order.** The document substantially in the form attached hereto as Exhibit E, which will be submitted to the *Court* by the *Parties* to seek: (1) approval of this *Settlement Agreement* on the terms provided herein (or as the same may be modified by subsequent mutual agreement of the *Parties* subject to approval of the *Court*), adjudging such terms to be adequate, fair and reasonable, and in the best interests of *Plaintiff* and *Class* members; (2) approval of *Class Counsel's* application for an award of their fees, costs and expenses; (3) approval of *Class Counsel's* application for a *Service Payment* to *Plaintiff*; and (4) dismissal of the *Action* with prejudice.

**2.26 Final Effective Date.** The date on which the *Settlement* becomes *Final*, and all *Settlement Conditions* have either been satisfied or waived in accordance with this *Settlement Agreement*.

**2.27 FLSA Collective / FLSA Collective Members.** All *Tipped Employees* who affirmatively opt-in to this *Action* pursuant to Section 216(b) of the FLSA by submitting a *Claim Form* to the *Claims Administrator* prior to the *Bar Date*. Included in the *FLSA Collective* is all individuals who have previously filed a *Consent to Sue Form* in this *Action*. In accordance with the terms of this *Settlement Agreement*, only *FLSA Collective Members* will release their FLSA claims.

**2.28 FLSA Settlement Payment.** Payment issued to *FLSA Collective Members* in the amount of their individual *Settlement Payment* representing their federal wage claims as calculated in Section 4.6 (B).

**2.29 Individual Damage Amount.** "Individual Damage Amount" shall have the meaning set forth in Section 4.6 (B)(2).

**2.30 Liquidated Damages Settlement Check.** The check issued to a *Settlement Class Member* by the *Claims Administrator* which represent that individual's recovery of their liquidated damages in accordance with the terms of this *Settlement Agreement*.

**2.31 Litigation.** The legal action captioned *Graham v. Famous Dave's of America, Inc.*, Civil Action No. 1:19-cv-00486-DKC in the United States District Court for the District of Maryland. The terms *Litigation* and *Action* shall be used interchangeably herein.

**2.32** ***MD Class / MD Class Members.*** All former and current *Tipped Employees* of the *Named Defendant* who worked in the State of Maryland at any time during the *Class Period* at any one or more of the *Named Defendant's* restaurants operating under the brand "Famous Dave's" who has not filed a *Request for Exclusion* prior to the *Bar Date.* All members of the *FLSA Collective* are members of the MD Class.

**2.33** ***MD Settlement Payment.*** Payment issued to *MD Class* members in the amount of their individual *Settlement Payment* representing their state wage claims as calculated in Section 4.6 (B).

**2.34** ***Named Defendant.*** Famous Dave's of America, Inc. The *Named Defendant* shall also be referred to as *Famous Dave's.*

**2.35** ***Net Settlement Amount.*** "Net Settlement Amount" shall have the meaning set forth in Section 4.6 (B)(1).

**2.36** ***Notice Packet.*** The (i) *Class Notice* mailed to *Settlement Class* members in accordance with this *Settlement Agreement*; (ii) *Estimated Settlement Payment* for the individual *Settlement Class* member to whom the *Class Notice* was mailed, including an estimate of the *Settlement Payment* with and without submitting a *Claim Form*; and (iii) *Claim Form.*

**2.37** ***Notice Period.*** The period of time from the date the *Claims Administrator* mails the *Notice Packet* through the *Bar Date.*

**2.38** ***Parties.*** *Plaintiff* and *Named Defendant* and, in the singular, "Parties" refers to any of them, as the context makes apparent.

**2.39** ***Plaintiff.*** The named plaintiff in this *Action*, Christopher Graham.

**2.40** ***Plaintiff's Counsel.*** Connolly Wells & Gray, LLP, Lynch Carpenter LLP, and The Law Offices of E. David Hoskins, LLC.

**2.41** ***Preliminary Approval Order.*** The document substantially in the form attached hereto as Exhibit D, which will be submitted to the *Court* by the *Parties* to seek (a) preliminary approval of this *Settlement Agreement*; (b) dissemination of *Class Notice*; (c) approval of the proposed form of *Class Notice*; (d) appointment of Christopher Graham as class representative and the law firms Connolly Wells & Gray, LLP and Lynch Carpenter LLP as *Class Counsel*; and (e) a finding that the proposed manner of serving the *Class Notice* to the members of the *Settlement Class* is the best notice practicable under the circumstances.

**2.42** ***Released Persons.*** *Named Defendant* and its past, present, and future members, parents, affiliates, subsidiaries, divisions, predecessors, successors, partners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of Famous Dave's of America, Inc.'s past, present, and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, divisions, units, branches and any other persons or entities acting on *Named Defendant's* behalf.

**2.43** ***Releasing Persons.*** Every member of the *Settlement Class* and his or her respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interests, attorneys, and assigns.

**2.44** ***Request for Exclusion.*** The document substantially in the form attached hereto as Exhibit C wherein a *Tipped Employee* who worked for *Named Defendant* during the *Class Period* and would otherwise be a member of the *MD Class* requests to be excluded from the terms of this *Settlement*. It is stipulated and agreed by the *Parties* that any individual who files a *Request for Exclusion* by the *Bar Date* shall not receive any benefit under this *Settlement Agreement* nor be bound by the *Settlement Agreement's* terms and conditions, including any releases contained herein. It is further stipulated and agreed that any individual who filed a request for exclusion prior to March 19, 2021, shall not receive any *Notice Packet* and is considered excluded from this *Action.*

**2.45** ***Restaurant.*** The restaurant establishment operated by *Named Defendant.* and doing business as "Famous Dave's" in the State of Maryland.

**2.46** ***Review Proceeding.*** "Review Proceeding" will have the meaning set forth in Section 2.16.

**2.47** ***Service Payment.*** The amount to be approved by the *Court* for payment to Plaintiff Christopher Graham in recognition for his efforts in assisting in the prosecution of this *Action* on behalf of the *Settlement Class*. The *Parties* stipulate and agree that *Plaintiff* shall not seek a *Service Payment* in excess of $5,000.00 in this *Action*.

**2.48** ***Settlement.*** The resolution of the *Action* pursuant to the agreement of the *Parties* on the terms and conditions as set forth in this *Settlement Agreement.*

**2.49** ***Settlement Amount.*** The $995,000.00 payment that *Named Defendant* will pay to settle the *Action* as described in this *Settlement Agreement*, inclusive of *Class Counsel's* fees, expenses, and costs, the *Service Payment*, and the *Claims Administrator's* fees and expenses. The *Settlement Amount* may remain in *Named Defendant's* general funds until required to be provided to the *Claims Administrator* for distribution pursuant to Section 4. Except as set forth in this *Settlement Agreement*, *Named Defendant* shall not be called upon or required to contribute additional monies above the *Settlement Amount* under any circumstances whatsoever. Under no circumstances whatsoever shall any portion of the *Settlement Amount* revert to *Defendant* except as set forth in Section 7.3(B)(2)*.*

**2.50** ***Settlement Agreement.*** This *Settlement Agreement*, including any modifications or amendments adopted pursuant to Section 8.14.

**2.51** ***Settlement Check.*** The check issued to each *Settlement Class Member* representing that individual's *Settlement Payment* and identifying the portion, where applicable, of the check representing the *FLSA Settlement Payment, MD Settlement Payment*, and liquidated damages.

**2.52** ***Settlement Class.*** Members of the *FLSA Collective* and the *MD Class*, collectively.

**2.53** ***Settlement Class Members' Total Damages Amount.*** "Settlement Class Members' Total Damages Amount" shall have the meaning set forth in Section 4.6 (B)(3).

**2.54** ***Settlement Conditions.*** Each of the conditions and obligations set forth in Section 3 of this *Settlement Agreement* that must either be satisfied or waived in writing by the Party entitled to the benefit of the condition or obligation.

**2.55** ***Settlement Payment.*** The payment which a *Settlement Class Member* will receive pursuant to the *Settlement Agreement.*

**2.56** ***Tipped Employees.*** Any individual employed by *Named Defendant* during the *Class Period* at any one or more of the *Named Defendant's Restaurants* in the State of Maryland where *Named Defendant* allegedly did not pay that individual the full minimum wage as it claimed or attempted to claim a "tip credit" for that employee pursuant to Section 203(m) of the *FLSA* and Maryland state wage and hour laws. Such employees include bartenders, servers, or hosts.

**2.57** ***Total Hours.*** "Total Hours" shall mean the total number of *Work Hours* during the *Class Period.* According to the representations made prior to the mediation by *the Named Defendant* and information provided, during the *Class Period*, *Tipped Employees* worked up to 341,396.56 *Work Hours.*

**2.58** ***Work Hour.*** Any hour worked by a *Tipped Employee* for *Named Defendant* during the Class Period at any *Restaurant* for which *Named Defendant* claimed a tip credit pursuant to Section 203(m) of the FLSA.

## 3. <u>SETTLEMENT CONDITIONS</u>

The Parties stipulate and agree that each of the *Settlement Conditions* set forth in this Section is a material term. Except as otherwise provided in this *Settlement Agreement*, the *Parties* will use their best efforts to cause each of the following *Settlement Conditions* to occur and will support approval of the *Settlement* before the *Court.*

**3.1** **Preliminary Approval of Settlement Agreement by the *Court.*** On or before August 17, 2022, the *Parties* will submit this *Settlement Agreement* (including all exhibits) to the *Court* for preliminary approval and will jointly request entry of the *Preliminary Approval Order.*

**3.2** **Certification by the *Claims Administrator* of the *Total Hours* for the *Tipped Employees.*** Pursuant to Section 4.5, the *Claims Administrator* shall either (i) certify that no adjustment to the *Settlement Amount* is necessary or (ii) advise *Plaintiff's Counsel* and *Defendant's Counsel* that there is a deviation in the *Total Hours* in excess of five percent (5%). Such a certification shall occur at least ten (10) business days before the *Final Approval Hearing.* Said certification can be accomplished through notifying *Class Counsel* and *Defendant's Counsel.* In the event there is a deviation in excess of five percent (5%), either party may invoke the procedures of Section 7.1(A).

**3.3** **Entry of *Final Approval Order* by the *Court.*** The *Parties* will jointly request that the *Court* schedule a *Final Approval Hearing* within 90 calendar days after entry of the *Preliminary Approval Order.* At the *Final Approval Hearing*, the *Parties* will jointly move for entry of the *Final Approval Order.*

**3.4** **_Defendant_ Paying the _Settlement Amount_.** In conformity with Section 4.11, _Named Defendant_ will deposit the _Settlement Amount_ into an account established and maintained by the _Claims Administrator_. Should the _Settlement_ not become _Final_, the _Settlement Amount_, less any deductions, shall be returned to _Named Defendant_ as set forth in Section 7.3(B)(2).

**3.5** **_Final Approval Order_ Becoming _Final_.** If the _Court_ denies approval of any material term of the _Settlement_, whether initially or if a _Review Proceeding_ has been instituted, then after the conclusion of any _Review Proceeding_, any _Party_ may terminate the _Settlement Agreement_ under Section 7. If the _Court_ does not enter the _Final Approval Order_ or if the _Final Approval Order_ does not become _Final_, then any _Party_ may terminate this _Settlement Agreement_ pursuant to Section 7.

**4.** **<u>TERMS OF SETTLEMENT</u>**

**4.1** **_Settlement Amount_.** _Named Defendant_ will pay the _Settlement Amount_, which includes _Class Counsel's_ fees, expenses, and costs as awarded by the _Court_, any _Service Payment_, and the _Claims Administrator's_ fees and expenses under the _Settlement Agreement_. Also being paid from the _Settlement Amount_ will be all _Settlement Class Members' Settlement Payments_. In return for the _Settlement Amount_, _Named Defendant_ will obtain (among other things) the releases described in Section 5.

**4.2** **Preliminary Approval.** The _Parties_ will use reasonable efforts to enable the _Plaintiff_ to file a motion ("Preliminary Approval Motion") with the _Court_ for the issuance of the _Preliminary Approval Order_, which, among other things, will: (a) preliminarily approve this _Settlement Agreement_; (b) direct the time and manner of the _Notice Packet_ to be served upon the _Classes_; (c) find that the proposed form of _Class Notice_ fairly and adequately (i) describes the terms and effect of this _Settlement Agreement_, (ii) provides notice to the _Class_ of the time and place of the _Final Approval Hearing_, and (iii) describes how the recipients of the _Class Notice_ may object to the _Settlement_; and (d) find that the proposed manner of serving the _Class Notice_ to the members of the _Classes_ is the best notice practicable under the circumstances.

**4.3** **Cooperation.** The _Parties_ will, in good faith, take reasonable steps to (a) secure expeditious entry of the _Preliminary Approval Order_ by the _Court_; (b) seek a date for the _Final Approval Hearing_ between 75 and 90 calendar days after entry of the _Preliminary Approval Order_; and (c) seek entry of the _Final Approval Order_.

**4.4** **Retention of _Claims Administrator_.** The _Claims Administrator_ will be responsible for the claims-administration process and distribution to _Class Members_ as provided herein. _Named Defendant_ will cooperate with the _Claims Administrator_ and assist it in any reasonable way possible in administering this _Settlement Agreement_. _Claims Administrator_ fees are to be paid out of the _Settlement Amount_. The _Claims Administrator_ will provide _Class Counsel_ and _Defendant's Counsel_ with a final bill of its fees no later than ten (10) days before the _Final Approval Hearing_.

**4.5** **Class Information.** Within ten (10) calendar days after the _Court_ enters a _Preliminary Approval Order_, _Named Defendant_ will provide the _Claims Administrator_ with a list, in electronic form, containing the following information for _Plaintiff_ and for each _Tipped Employee_: name, last known address, last known telephone number(s), last known email

address(es), Social Security Number, hourly rate of pay paid by *Named Defendant* (the "cash wage" paid pursuant to Section 203(m)), number of hours recorded in *Named Defendant's* timekeeping system, the dates employed by *Named Defendant* at any time during the *Class Period*, and Earnings Statements reflecting such hours. The *Named Defendant* shall also provide the *Claims Administrator* with any current wage garnishments, child support payments, or tax liens, if any, as set forth in *Named Defendant*'s records for each *Tipped Employee* (if applicable). At the same time, *Named Defendant* will also provide *Class Counsel* with a list, in electronic form, containing the following information for each *Tipped Employee* during the *Class Period*: name, last known address, and dates employed by *Named Defendant* (this provision may be satisfied by delivering to *Class Counsel* a copy of the information to the *Claims Administrator* set forth in this Section). The Parties stipulate and agree that the data files named "HS Time Card Detail - MD locations - 2-19-16 thru 10-31-17" and "Active Roster with Dates" produced to *Class Counsel* prior to the execution of this *Settlement Agreement* satisfies the electronic list requirements of this Section. The *Parties* stipulate and agree that they will each cooperate and use their best efforts to provide the *Claims Administrator* any information the *Claims Administrator* reasonably requests in order to facilitate its duties and obligations set forth in this *Settlement Agreement*.

    (A) **Total Hours**. Prior to the mediation, *Named Defendant* provided information which indicated that during the *Class Period*, *Tipped Employees* worked up to 341,396.56 *Work Hours*. During the course of administering this *Settlement*, in the event the *Claims Administrator* determines that the amount of actual hours *Named Defendant* claimed a "tip credit" for deviates upward by more than five percent (5%) from *Named Defendant's* representation, following a reasonable opportunity by *Named Defendant* to refute the claimed deviation, *Plaintiff* may elect to terminate this *Settlement Agreement* subject to and in accordance with Section 7.1(A).

**4.6**     **Calculation of *Settlement Payments* for *Plaintiff* and *Class Members*.**

(A)     ***Estimated Settlement Payment.*** The *Notice Packet* will contain an *Estimated Settlement Payment* for the individual member of the *Classes* to whom it was mailed. The *Claims Administrator* will calculate the *Estimated Settlement Payment* in accordance with the following steps:

    (1)     The *Claims Administrator* will deduct from the *Settlement Amount* (i) the anticipated amount of attorneys' fees to be requested (1/3 of the *Settlement Amount*), plus estimated expenses and costs of *Plaintiff's Counsel*, (ii) the maximum *Service Payment* sought for the Plaintiff, and (iii) the estimated fees and expenses of the *Claims Administrator*. The resulting number will be referred to as the "*Estimated Net Settlement Amount*."

    (2)     For each *Class Member*, the *Claims Administrator* will multiply the difference between the full Maryland state minimum wage in effect at the time the individual worked and the hourly rate actually paid by *Named Defendant* to that *Settlement Class Member* (the tip credit claimed) by the number of hours worked during the *Class Period* by that individual at the tipped wage rate. For example, if *Named Defendant* took a tip credit of $4.62 per hour, and that

employee worked 100 hours during the *Class Period*, that individual *Tipped Employee* would be owed $462.00. This number will be referred to as the "*Estimated Individual Damages Amount*."

(3) The *Estimated Individual Damages Amounts* for all *Tipped Employees* will then be added together by the *Claims Administrator* to determine the "*Class Members' Total Damages Amount.*"

(4) The *Estimated Net Settlement Amount* will then be divided by the *Class Members' Total Damages Amount*.

(5) The *Claims Administrator* will then multiply the resulting fractional amount by a *Class Member's Estimated Individual Damages Amount* to determine that *Class Member's* "*Estimated Settlement Payment*."

(6) The *Claims Administrator* will partition each *Class Member's Estimated Settlement Payment* into three potential payments to the *Class Member*: (a) the *Estimated FLSA Settlement Payment* representing twenty percent (20%) of the *Class Member's Estimated Settlement Payment*; (b) the *Estimated MD Settlement Payment* representing forty percent (40%) of the *Class Member's Estimated Settlement Payment*; and (c) the liquidated damages and interest payment representing forty percent (40%) of the *Class Member's Estimated Settlement Payment*.

(7) Thus, for a *Tipped Employee* to receive 100% of their *Estimated Settlement Payment*, (less applicable deductions set forth in this *Settlement Agreement*), an individual must opt-in to the *FLSA Collective* and not opt-out of the *MD Class*. Based on the individual's submission (or lack thereof) by the *Bar Date*, it shall be deemed the *Tipped Employee's* sole discretion whether they elect to receive only their *MD Settlement Payment* or both their *MD Settlement Payment* and their *FLSA Settlement Payment*.

(8) Should an individual not wish to fully participate in the *Settlement*, they may elect to receive only their *MD Settlement Payment* by not returning a *Claim Form*. In such circumstances, as provided in Section 4.6(B), the *FLSA Settlement P*ayment not claimed will be redistributed to the individuals who are *FLSA Collective Members* on a proportional basis. Stated another way, if an individual elects not to receive their *FLSA Settlement Payment* by not submitting a *Claim Form*, the monies allocated to their *FLSA Settlement Payment* will be redistributed to members of the *FLSA Collective* on a proportional basis (e.g., if there were unclaimed *FLSA Settlement Payments* and an individual who did submit a *Claim Form* had damages that represented 1/1000 of the total funds claimed, they would be entitled to 1/1000 of the unclaimed *FLSA Settlement Payments*).

(9) The *Claims Administrator* shall use its best efforts to redistribute unclaimed funds on a proportional basis outlined above. However, to the extent necessary,

it is permitted to use estimates and round amounts to the nearest penny provided such efforts are done for the entire tranche at issue.

(10) The *Claims Administrator* will provide the *Estimated Settlement Payment* both with and without the *Estimated FLSA Settlement Payment* for each *Class Member.*

(11) Upon receipt of the *Notice Packet,* any *Class Member* who wishes to challenge the calculation of his or her *Estimated Settlement Payment* must submit a written, signed declaration to the *Claims Administrator* for receipt by the *Claims Administrator* on or before the *Bar Date*. The *Claims Administrator* will resolve the challenge and make a final and binding determination without hearing or right of appeal.

(12) In performing the *Estimated Settlement Payment* set forth above, the *Claims Administrator* may use, to the extent feasible, the *Class Information* described in Section 4.5 and the information provided by *Named Defendant* in anticipation of the mediation. In performing the calculations set forth in the *Estimated Settlement Payment,* the *Claims Administrator* is permitted to use assumptions and estimates in the event there is incomplete or conflicting data provided.

(B) **Settlement Payment.** Only *Settlement Class Members* will receive money in connection with this *Settlement*. Once the *Settlement* becomes *Final*, the *Claims Administrator* will calculate *Settlement Payments* for *Settlement Class Members* in the following steps:

(1) The *Claims Administrator* will deduct from the *Settlement Amount* the following amounts as awarded or permitted by the *Court*: (i) *Class Counsel's* attorneys' fees, costs and expenses, (ii) the *Service Payment*, if any, to the *Plaintiff*, and (iii) the fees and expenses of the *Claims Administrator*. The resulting number will be referred to as the "*Net Settlement Amount*."

(2) For each *Settlement Class Member*, the *Claims Administrator* will multiply the difference between the full Maryland state minimum wage in effect at the time the individual worked and the hourly rate actually paid by *Named Defendant* to that *Settlement Class Member* (the tip credit claimed) by the number of hours worked during the *Class Period* by that individual at the tipped wage rate. This number will be referred to as the "*Individual Damage Amount*." For example, if *Named Defendant* took a tip credit of $4.62 per hour, and that employee worked 100 hours during the *Class Period* where the $4.62 tip credit was taken, that individual's *Individual Damage Amount* would be $462.00.

(3) The *Individual Damage Amount* for all *Settlement Class Members* will then be added together by the *Claims Administrator* to determine the "*Settlement Class Members' Total Damages Amount*."

(4)    The *Net Settlement Amount* will be divided by the *Settlement Class Members' Total Damages Amount*.

(5)    The resulting fractional amount will then be multiplied by an *Individual Damage Amount* to determine that *Class Member's Settlement Payment*.

(6)    The *Claims Administrator* will partition each *Class Member's Settlement Payment* into three potential payments to the *Class Member*: (a) the *FLSA Settlement Payment* representing twenty percent (20%) of the *Class Member's Settlement Payment*; (b) the *MD Settlement Payment* representing forty percent (40%) of the *Class Member's Settlement Payment*; and (c) the liquidated damages and interest payment representing forty percent (40%) of the *Class Member's Settlement Payment*. Any payments shall indicate and include deductions for wage garnishments, child support payments, or tax liens, if any, as set forth in *Named Defendant*'s records (if applicable). To the extent a *Settlement Class Member* is subject to any form of wage garnishment, child support or tax lien, such amount shall be deducted from the amount of the *Settlement Payment* attributable as wages by the *Claims Administrator* and remitted to the appropriate party holding the garnishment.

(7)    Thus, for a *Tipped Employee* to receive 100% of their *Settlement Payment* (less applicable deductions set forth in this *Settlement Agreement*), an individual must opt-in to the *FLSA Collective* and not opt-out of the *MD Class*. Based on the individual's submission (or lack thereof) by the *Bar Date*, it shall be deemed the *Tipped Employee's* sole discretion whether they elect to receive only their *MD Settlement Payment* or both their *FLSA Settlement Payment* and their *MD Settlement Payment*.

(8)    In such circumstances where individuals elected not receive 100% of their *Estimated Settlement Payment* by not submitting a *Claim Form* and becoming a member of the *FLSA Collective*, the *FLSA Collective Payment* not claimed will be redistributed to individuals who are *FLSA Collective Members* on a proportional basis. Stated another way, if an individual elects not to receive their *Estimated FLSA Settlement Payment* by not submitting a *Claim Form*, the monies allocated to their *FLSA Settlement Payment* will be redistributed to members of the *FLSA Collective* on a proportional basis (e.g., if there were unclaimed *FLSA Settlement Payments* and an individual who did submit a *Claim Form* had damages that represented 1/1000 of the total funds claimed, they would be entitled to 1/1000 of the unclaimed *FLSA Settlement Payments*).

(9)    The *Claims Administrator* shall use its best efforts to redistribute unclaimed funds on a proportional basis outlined above. However, to the extent necessary, it is permitted to use estimates and round amounts to the nearest penny provided such efforts are done for the entire tranche at issue.

(10)    *Plaintiff* and individuals who have previously submitted *Consent to Sue Forms* in this *Action* will not be required to submit *Claim Forms* to receive their *FLSA*

*Settlement Payment.* Nevertheless, they may, but are not required to, submit the *Claim Form*, including the dispute form contained therein

(11)     *MD Class Members* that do not submit a *Claim Form* will not be eligible for an *FLSA Settlement Payment*. The *FLSA Settlement Payment* for these individuals will be added together and redistributed to the *FLSA Collective* on a proportional basis predicated on the fractional multiplier calculated in §§ 4.6(B)(8). In the event that all of the *FLSA Collective Members* reach their recovery cap, the excess *FLSA Settlement Payments* will be allocated to individuals who are only members of the *MD Class* on a proportional basis (e.g., if an *MD Class Member* had damages that represented 1/1000 of the total funds claimed, they would be entitled to 1/1000 of the funds subject to the cap).

(12)     To avoid a windfall to any individual *Settlement Class Member*, no *Settlement Class Member's* individual settlement payment will be higher than five times that individual's *Estimated Settlement Payment*. Should any *Class Member's* settlement payment be higher than five times his or her *Estimated Settlement Payment*, such amount will be reduced until such individual's recovery is reduced to the five times cap and with such reduction subject to redistribution to the other *Class Members* predicated on the fractional multiplier calculated in § 4.6(B)(11).

(13)     In performing the *Settlement Payment* set forth above, the *Claims Administrator* may use, to the extent feasible, the *Class Information* described in Section 4.5 and the information provided by *Named Defendant* in anticipation of the mediation. In performing the calculations set forth in the *Settlement Payment,* the *Claims Administrator* is permitted to use assumptions and estimates in the event there is incomplete or conflicting data provided.

(C)     For purposes of performing the calculations set forth above, the *Claims Administrator* will rely on the hours recorded in *Named Defendant's* timekeeping system when determining the total *Work Hours* for *Class Members*. Further, the *Claims Administrator* will also rely on tip credit claimed, as recorded in *Named Defendant's* timekeeping system, when performing the calculations set forth above.

(D)     *Plaintiff*, *Plaintiff's Counsel*, *Named Defendant*, and *Named Defendant's Counsel* will have no responsibility for, or liability arising from, the *Claims Administrator's* calculations of the distribution of the *Settlement Amount* including, without limitation, the calculation of an individual *Class Member's Settlement Payment*.

(E)     Plaintiff and the individuals who have opted-in to this *Action* prior to the reaching of this settlement will automatically become members of the *FLSA Collective* and shall not have to submit a *Claim Form* in order to receive an *FLSA Settlement Payment*. *Plaintiff's Settlement Payment* will be calculated in accordance with the formula set forth above. *Plaintiff's* and the opted-in individuals' *Settlement Payments* will be calculated in accordance with the formula set forth above.

DocuSign Envelope ID: 3F7758C5-01B4-40EA-AAD4-E11399EA8ECB

(F)      Ten (10) days before the *Final Approval Hearing*, the *Claims Administrator* will certify jointly to *Class Counsel* and *Named Defendant's Counsel* a list of all *Settlement Class Members*, indicating for each the total *Settlement Payment* due to that individual pursuant to this *Settlement Agreement*. The *Claims Administrator* will also indicate whether any challenges to a *Class Member's Settlement Payment* have been received and, if so, the status of that challenge.

**4.7**      **Class Notice.**

(A)      The *Claims Administrator* will disseminate the *Class Notice* by the following means: mail and email. The *Claims Administrator* will mail the *Notice Packet* via First Class Mail to each *Class Member* within fourteen (14) calendar days after the *Class Administrator* receives the class list and the data required to perform the preliminary calculations. The *Claims Administrator* will (among other things) provide estimated settlement payment amounts in the *Class Notice*, inform *Class Members* that only individuals submitting a timely *Claim Form* to the *Claims Administrator* (who had not previously submitted a *Consent to Sue Form*) will receive any money under this *Settlement* attributable to their FLSA claim, and include a prepaid, business reply envelope with the mailing (to facilitate return of *Claim Forms*).

(B)      Before mailing, the *Claims Administrator* will attempt to confirm the accuracy of the addresses of each member of the *Classes* through the United States Post Office's National Change of Address ("NCOA") database. If a *Notice Packet* is returned as undeliverable, the *Claims Administrator* will perform one skip trace and resend by First Class United States Mail the *Court*-approved *Class Notice* once only to those members of the *Settlement Class* for whom it obtains more recent addresses.

(C)      Within three (3) days after the *Claims Administrator* effectuates mailing of the *Notice Packet*, the *Claims Administrator* will also send an email to any *Class Member* for which *Named Defendant* provided that *Class Member's* last known email address which will include the *Class Notice* text as the body of the email and include the links to the website created by the *Claims Administrator* and a portal that will allow *Class Members* to fill out and submit their claim online. The email shall also include a statement that the full *Notice Packet* has been mailed to the individual's last known address.

(D)      Fifteen (15) days before the *Bar Date*, the *Claims Administrator* shall either text or mail a reminder post card, whichever is more efficient, to any *Class Member* who has not yet submitted a *Claim Form*.

(E)      The *Claims Administrator* will mail a *Court*-approved *Class Notice* to any *Class Member* who contacts the *Claims Administrator* during the time period between the initial mailing of the *Class Notice* and the *Bar Date* and requests that a *Class Notice* be re-mailed. During the *Notice Period*, no other communications will be sent by either *Party* to *Class Members*. *Class Counsel* may nevertheless communicate with *Plaintiff* and respond to inquiries they receive from *Class Members* during the *Notice Period*. The *Named Defendant* may nevertheless communicate with any *Class Member* who is a current employee in response to inquiries regarding any matter,

excluding the *Action,* the *Settlement*, or this *Settlement Agreement*. For any inquiry regarding the *Action,* the *Settlement,* and/or the *Settlement Agreement*, *Named Defendant* shall advise that *Class Member* to contact *Class Counsel.*

(F)  Upon mailing of the *Notice Packet,* the *Claims Administrator* shall establish a settlement website (or a link on their existing website) to assist in providing *Class Members* with information regarding the *Settlement*. Such website may include (i) the *Complaint*; (ii) the *Settlement Agreement*; (iii) a copy of the *Class Notice*; (iv) any orders entered by the *Court* regarding the *Settlement*; and (v) a list of frequently asked questions and their corresponding answers that is mutually agreed upon by the *Parties*. Such website will be taken down within ten (10) days of the *Settlement* becoming *Final.*

(G)  The *Claims Administrator* will provide to *Named Defendant's Counsel* and *Class Counsel* at least once every two (2) weeks, a report concerning (i) the number of individuals who have submitted valid claim forms and (ii) any objections raised by *Settlement Class Members*. Further, fourteen (14) days before the *Final Approval Hearing,* the *Claims Administrator* will provide *Named Defendant's Counsel* and *Class Counsel* with a cumulative report detailing the foregoing.

**4.8**  **Objections.** Only *Class Members* may object to the Settlement. To object to the *Settlement,* the individual must send a written objection to the *Claims Administrator* no later than the *Bar Date*. The objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection. Members of the *Classes* who wish to object and be represented by counsel will do so at their own expense. No *Class Member* will have any claim to any part of the *Settlement Amount* based, in whole or in part, on their retention of outside counsel. Should the *Claims Administrator* receive any objection, it will promptly notify *Defendant's Counsel* and *Class Counsel* and will provide each with the contact information for the objecting *Class Member.*

**4.9**  **Opt-Out/Request for Exclusion.**

(A)  For a *Class Member* to exclude himself or herself from the Settlement ("opting-out"), he or she must write and submit a *Request for Exclusion. The Parties* stipulate and agree that the following shall also constitute a valid *Request for Exclusion:* if a *MD Class* member writes the *Claims Administrator* a letter that states: "I request to be excluded from the settlement in *Graham v. Famous Dave's of America, Inc.*, Case No. 1:19-cv-00486-DKC (D. Md.). I affirm that I was employed by Defendant in Maryland as a Tipped Employee on one or more days between February 19, 2016 and October 31, 2017." The *MD Class* member who wishes to opt-out must also include his or her full name, address, and telephone number. *MD Class* members may not exclude themselves by telephone, fax, or email.

(B)  All *Requests for Exclusion* must be submitted by the *Bar Date.*

(C)  The date of submission is deemed to be the earlier of (i) the date the form is deposited in the U.S. Mail, postage pre-paid, as evidenced by the postmark; or (ii) the date the form is received by the *Claims Administrator.*

(D) Any *Class Member* who submits a timely and valid *Request for Exclusion* will not: (i) be bound by any orders or judgments entered in this *Litigation*; (ii) be entitled to benefits or relief under this *Settlement Agreement*; (iii) gain any rights by virtue of this *Settlement Agreement*; (iv) be bound by any releases contained in this *Settlement Agreement*; or (v) be entitled to object to the *Settlement* or appeal from any order of this *Court*.

(E) Upon receipt of a *Request for Exclusion*, the *Claims Administrator* will notify *Class Counsel* and *Named Defendant's Counsel* and will provide *Class Counsel* with such individual's last known telephone number.

(F) If a fully completed and properly executed *Request for Exclusion* is not received by the *Claims Administrator* from a *Class Member* by the *Bar Date*, then that *Class Member* will be deemed to have forever waived his or her right to opt-out of the *Settlement Class*.

(G) If a *Class Member* submits both a timely *Claim Form* and a timely *Request for Exclusion*, the *Claims Administrator* will promptly notify and send copies of the *Claim Form* and the *Request for Exclusion* to both *Class Counsel* and *Named Defendant's Counsel* and will provide *Class Counsel* with such individual's last known telephone number. The *Claims Administrator* will attempt to contact that individual to ascertain her or his intent. If those efforts are unsuccessful, whichever document was mailed later will govern, and if both documents were mailed simultaneously, or the sequence of mailings cannot be determined, then the *Claim Form* will govern.

**4.10    Final Approval.**

(A) *Plaintiff* will file a motion seeking final approval of the *Settlement* ("Final Approval Motion") with the *Court*. In the Final Approval Motion, *Plaintiff* will request that the *Court* determine, at or after the *Final Approval Hearing* (a) whether to enter the *Final Approval Order*, granting final approval of the *Settlement*, dismissing the *Action* with prejudice and entering judgment pursuant to Federal Rule of Civil Procedure 54(b); (b) whether the distribution of the *Settlement Amount* set forth in this *Settlement Agreement* should be approved or modified; (c) the amount of legal fees and expenses to be awarded to *Class Counsel* as contemplated by Section of this *Settlement Agreement*; and (d) the amount of *Service Payment*, if any, to be awarded to the *Plaintiff*.

(B) The *Final Approval Motion* will ask the *Court* to (a) approve this *Settlement Agreement*; and (b) approve and enforce the Released Claims as set forth in Section 5 of this Agreement.

(C) At the *Final Approval Hearing*, *Plaintiff* and *Named Defendant* will request that the *Court* rule on any Objections to the *Settlement* by any *Class Members* and find that the *Settlement* is fair, reasonable, and adequate, and enter the *Final Approval Order*.

17

DocuSign Envelope ID: 3F7758C5-01B4-40EA-AAD4-E11399EA8ECB

(D)     The *Parties* agree to support entry of the *Final Approval Order*, including supporting the *Settlement* through any *Review Proceeding*. *Named Defendant* will not take any position with respect to *Class Counsel's* fee, cost, and expense request or *Plaintiff's Service Payment*, so long as disposition of those matters is substantially in accordance with the provisions of this *Settlement Agreement*. The *Parties* otherwise covenant and agree to reasonably cooperate with one another and to take all actions reasonably necessary to effectuate the *Settlement Agreement* and to obtain a *Final Approval Order*.

**4.11    Distribution of *Settlement Payments* to *Settlement Class Members*.**

(A)     Within five (5) days of entry of the *Final Approval Order*, *Named Defendant* will provide the *Claims Administrator* with the *Settlement Amount*.

(B)     Within fifteen (15) calendar days after the *Final Effective Date*, the *Claims Administrator* will mail the *Settlement Payments* to the *Class Members'* last known addresses.

(C)     For those individuals that submitted valid *Claim Forms,* the *Parties* agree that each *Settlement Payment* will be issued to each *Class Member* in a single check that will be allocated into three payments (to the maximum extent possible as set forth in Section 4.6(B)). Each check sent to a *Class Member* will clearly identify on the check stub the amounts that are attributable to: (i) the *FLSA Settlement Payment*; (ii) the *MD Settlement Payment*; and (iii) liquidated damages/other relief.

    (1)     The parts allocated to claims for alleged unpaid wages and other alleged wage-related damages will be subject to all required employee-paid payroll taxes and deductions (*e.g.*, federal income taxes, state income taxes, employee's share of FICA taxes, and other state-specific statutory deductions) and other required deductions set forth within *Named Defendant's* payroll records (*e.g.*, garnishments, tax liens, child support).

    (2)     The part allocated to alleged liquidated damages and other relief will be characterized as non-wage income to the recipient and shall not be subject to any withholdings. The *Claims Administrator* will report the wage parts to each *Class Member* on an IRS Form W-2 and the non-wage part on an IRS Form 1099.

    (3)     The *Claims Administrator* will be responsible for issuing the *Settlement Check*, less required withholdings and deductions, to each *Class Member* and mailing the *Settlement Checks*, W-2s and 1099s to the *Settlement Class Members*.

(D)     For those individuals that did not submit valid *Claim Forms,* the *Parties* agree that such individual will only receive two equal payments (with the amount that would comprise their third payment, representing their FLSA claims, being redistributed to those individuals who submitted *Claim Forms*). The payments will be comprised of (i) one-half allocated to the claims asserted in the *Action* for alleged unpaid wages and other alleged wage-related claims under Maryland wage and hour laws, and (ii)

one-half allocated to the claims asserted in the *Action* for alleged liquidated damages, penalties, interest, and other relief. The check sent to a *MD Class Member* will clearly identify on the check stub the amounts attributable to (i) the *MD Settlement Payment* (ii) liquidated damages/other relief.

(1)    The parts allocated to claims for alleged unpaid wages and other alleged wage-related damages will be subject to all required employee-paid payroll taxes and deductions (*e.g.*, federal income taxes, state income taxes, employee's share of FICA taxes, and other state-specific statutory deductions) and other required deductions set forth within *Named Defendant's* payroll records (*e.g.*, garnishments, tax liens, child support).

(2)    The part allocated to alleged liquidated damages and other relief will be characterized as non-wage income to the recipient and shall not be subject to any withholdings. The *Claims Administrator* will report the wage parts to each *Class Member* on an IRS Form W-2 and the non-wage part on an IRS Form 1099.

(3)    The *Claims Administrator* will be responsible for issuing the settlement checks, less required withholdings and deductions, to each *Class Member* and mailing the *Settlement Checks*, W-2s and 1099s to the *Settlement Class Members*.

(E)    The back of each check distributed to *Class Members* will state that "the check must be cashed within one-hundred eighty days (180) days" or it will become void."

(1)    If any *Settlement Check* is not negotiated in the one-hundred eighty (180) day period, that *Settlement Check* will be voided, and the *Claims Administrator* will place a stop-payment on the check. *Class Members* with such voided checks will have irrevocably waived any right in or claim to a *Settlement Payment*, but the *Settlement Agreement* and all releases relating to their Released Claims will nevertheless be binding upon them. Any unclaimed funds resulting from such voided Settlement Checks shall be part of the *Cy Pres Distribution*.

(F)    Neither *Named Defendant*, *Named Defendant's Counsel*, *Plaintiff's Counsel*, *Plaintiff*, nor the *Claims Administrator* will have any liability for lost or stolen checks, for forged signatures on checks, or for unauthorized negotiation of any checks funded by any portion of the *Settlement Amount*.

(G)    Without limiting the foregoing, if a *Class Member* notifies the *Claims Administrator* that he or she believes that his or her *Settlement Check* has been lost or stolen, the *Claims Administrator* will immediately notify counsel for the *Parties* and stop payment on any such check.

(1)    If the *Settlement Check* in question has not been negotiated before the stop payment order, the *Claims Administrator* will issue a replacement check, from which the fees, if any, associated with the stop payment order will first be deducted. The *Class Member* will have an additional thirty (30) calendar days to negotiate the re- issued check from the date of re-mailing.

    (2)    If any *Settlement Check* is not negotiated in that period of time, that *Settlement Check* will be voided. The funds from said *Settlement Check* will be considered part of the *Cy Pres Distribution*.

(H)    In addition to the *Settlement Amount*, *Named Defendant* will be responsible for any and all applicable employer tax contributions associated with wage payments, including but not limited to *Named Defendant's* share of the FICA and FUTA taxes, with respect to the amounts treated as wages. The *Claims Administrator* will calculate the employer share of taxes and provide *Named Defendant* with the total employer tax contributions. *Named Defendant* will deposit with the *Claims Administrator* the calculated employer tax contributions before the mailing of the *Settlement Payments* to *Class Members*.

(I)    Neither *Plaintiff*, *Named Defendant*, *Plaintiff's Counsel*, nor *Named Defendant's Counsel* has provided nor will provide any *Settlement Class* member with any advice regarding the tax consequences of this *Settlement Agreement*.

(J)    The packet containing the *Settlement Payments* shall advise the *Settlement Class* member that their *Settlement Payments* will include any deductions for any wage garnishments, tax liens, and/or child support payments and that the *Settlement Class* member is solely responsible for such payments if applicable. However, neither *Plaintiff*, *Named Defendant*, *Plaintiff's Counsel*, *Named Defendant's Counsel,* nor the *Claims Administrator* either individually or collectively has any responsibility whatsoever for such payments/garnishments.

**4.12**    ***Cy Pres Distribution.*** If any portion of the *Settlement Amount* becomes, by operation of this *Settlement Agreement*, subject to a *Cy Pres Distribution*, the *Claims Administrator* shall distribute said funds to the recipient approved by the *Court* and set forth in the *Final Approval Order*. The *Parties* have selected, subject to the Court's approval, Maryland Legal Services as the *cy pres* recipient. Maryland Legal Services' mission statement can be found at: https://www.mlsc.org/about-us/what-we-do/. In making this selection, the Parties used their best efforts to agree upon an organization that provides/facilitates, among other things, legal aid to low-income citizens of the State of Maryland.

A)    With respect to any *Cy Pres Distribution,* the *Claims Administrator* shall:

    (1)    Use its best efforts to ensure there is only one *Cy Pres Distribution*, if at all;

    (2)    Determine the total amount of funds subject to a potential *Cy Pres Distribution*;

    (3)    Any unclaimed funds that are subject to a *Cy Pres Distribution* shall be provided to the *cy pres* recipient identified by the *Court* in its *Final Approval Order* and the *Parties* will notify the *Court* if a distribution is made pursuant to this paragraph.

B) Notwithstanding the fact that there may be a *Cy Pres Distribution, Settlement Class Members* with voided checks whose funds become part of the *Cy Pres Distribution* will have irrevocably waived any right in or claim to a *Settlement Payment,* but the *Settlement Agreement* and all releases relating to their *Released Claims* will nevertheless be binding upon them.

**4.13    Fees and Expenses Borne By *Named Defendant.* ***Named Defendant* will bear sole responsibility for *Named Defendant's Counsel's* fees, expenses, and costs. Further, *Named Defendant* will bear sole responsibility for all fees and costs associated with their performance of terms under this *Settlement Agreement.* In addition, *Named Defendant* will bear sole responsibility for the payment of the employer's portion of payroll taxes regarding the part of the *Settlement Payments* attributable to wages. Further, should this *Settlement* not become *Final* for any reason, *Named Defendant* will bear all responsibility for any fees or expenses incurred by the *Claims Administrator*. Should this *Settlement* become *Final*, under no circumstances whatsoever shall any portion of the *Settlement Amount* revert to the *Named Defendant.*

**4.14    *Class Counsel's* Fees, Expenses, and Costs.**

(A) *Class Counsel* may make an application to the *Court* for an award of *Plaintiff's Counsel's* fees in an amount not to exceed one-third of the *Settlement Amount*, plus reasonable expenses and costs as awarded by the *Court*. Such application will be filed in connection with the *Parties' Final Approval Motion.*

(B) If the *Court* rules that any amount requested by *Class Counsel* for attorneys' fees, expenses, or costs is excessive and reduces the same, only the reduced amount will be deemed to be *Class Counsel's* fees, expenses, and costs for purposes of this *Settlement Agreement.* Any amounts not awarded by the Court shall be redistributed to the *Net Settlement Amount.*

(C) Upon the *Final Effective Date*, the *Claims Administrator* will wire transfer the amount representing *Class Counsel's* attorneys' fees, expenses, and costs approved by the *Court* to *Class Counsel.*

(D) Before any payment of any amount designated as *Class Counsel's* fees, expenses, and costs, *Class Counsel* will provide the *Claims Administrator* with all information necessary to effectuate such payments (*e.g.,* a fully executed IRS Form W-9). *Class Counsel* will be issued an IRS Form 1099 for their award of *Class Counsel's* fees and costs. *Class Counsel* will be solely responsible for how the amount is to be allocated amongst the firms comprising *Plaintiff's Counsel* and *Named Defendant* will have no responsibility whatsoever for this allocation. *Class Counsel* shall be solely responsible for the tax consequences of any fees and costs paid to *Class Counsel* pursuant to this *Settlement Agreement.*

(E) Should the *Settlement* not become *Final, Class Counsel* will, within five (5) days of receiving such request, promptly return all sums distributed as attorneys' fees and expenses to *Named Defendant.*

(F) Payment of *Class Counsel's* fees, expenses, and costs as set forth in this *Settlement Agreement* and the *Court's Final Approval Order* will constitute full and final satisfaction of any and all obligations by *Named Defendant* to pay any person, attorney or law firm (including but not limited to *Class Counsel*) for attorneys' fees, expenses, or costs incurred on behalf of the *Class* and will relieve the *Released Persons* of any other claims or liability to any person for any attorneys' fees, expenses, and costs to which any person may claim to be entitled on behalf of the *Classes* for this *Action*. *Named Defendant* will have no additional liability to *Plaintiff's Counsel* for fees, expenses, and costs, including without limitation, administrative costs, expert fees and costs, or attorneys' fees and costs.

**4.15    *Service Payment.***

(A) *Class Counsel* may also make an application to the *Court* for a one-time *Service Payment* award to *Plaintiff*, in recognition of the work and services Mr. Graham contributed to the case including, but not limited to, meetings with *Plaintiff's Counsel*, assumption of risks, serving as a class representative, and related activities (including assisting with discovery, sitting for his deposition, and helping counsel prepare for the mediation). The *Service Payment* will not exceed Five Thousand dollars ($5,000.00). The final amount of the *Service Payment* will be determined by the *Court*. Any amounts not awarded by the Court as a *Service Payment* shall be redistributed to the *Net Settlement Amount*.

(B) The *Claims Administrator* will make the *Service Payment* to *Plaintiff* in the amount approved by the *Court* within the same time period for distributing *Settlement Payment* amounts to the *Settlement Class Members*.

(C) The *Service Payment* will be treated as non-wage income, and the *Claims Administrator* will issue a Form 1099 to *Plaintiff* reflecting the value of the payment.

**5.    RELEASE OF CLAIMS; ASSIGNMENT.**

**5.1    Release of Claims.**

(A) Effective as of the *Final Effective Date*, the *Releasing Persons* will be deemed to conclusively, absolutely, unconditionally, irrevocably, forever and fully release, discharge, and hold harmless the *Named Defendant* and release and the *Released Persons*, from any and all claims, counterclaims, crossclaims, complaints, charges, demands, actions, causes of action, judgments, debts, expenses, losses, liabilities, and obligations, including attorneys' fees, expenses and costs, arising from or related to the claims asserted in this *Action*, including but not limited to the following (collectively "*Released Claims*"):

(1) *MD Class Members* release *Released Persons* from any and all Maryland wage-related claims from February 19, 2016 through October 31, 2017, including but not limited to any claims pursuant to the *MWHL* and *MWPCL* that such class member has, had, might have or might have had against any of the *Released Persons* that in any way related to any of the facts or claims

that were alleged or that could have been alleged in the *Action* or by reason of the negotiations leading to this *Settlement*, even if presently unknown or un-asserted (the "*MD Released Claims*").

(2)    *FLSA Collective Members* release *Released Persons* from any and all federal wage-related claims from February 19, 2016 through October 31, 2017*, that in any way related to any of the facts or claims that were alleged or that could have been alleged in the *Action* or by reason of the negotiations leading to this *Settlement*, even if presently unknown or un-asserted (the "*FLSA Released Claims*").

(3)    *Plaintiff* releases all claims asserted in the *Action*, including all claims asserted by *Plaintiff* on an individual basis.

**5.2**    All members of the *Classes* will be bound by the terms and conditions of this *Settlement Agreement*, the *Final Approval Order*, the judgment, and the releases set forth herein.

**5.3**    ***Named Defendant's Releases.*** Upon the *Final Effective Date*, *Named Defendant* will conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge *Plaintiff*, *Plaintiff's Counsel*, and *Settlement Class Members* ("*Named Defendant's Released Persons*") from any and all claims, counterclaims, crossclaims, complaints, charges, demands, actions, causes of action, judgments, debts, expenses, losses, liabilities, and obligations, including attorneys' fees, expenses and costs, arising from or related to the prosecution and/or resolution of the *Action* ("*Named Defendant's Released Claims*").

**5.4**    **Scope of Releases.** The release and discharge set forth in Section 5 will not include the release or discharge of any rights or duties of the *Parties* arising out of this *Settlement Agreement*, including the express warranties and covenants contained herein.

**5.5**    **No Assignment.** *Plaintiff* represents and warrants that he has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim, or any part thereof or interest therein, including, but not limited to, any interest in the *Action*, or any related action.

**6.**    <u>**NON-ADMISSION OF LIABILITY.**</u>

**6.1**    By entering into this *Settlement Agreement*, *Named Defendant* in no way admits any violation of law or any liability whatsoever.

**6.2**    Likewise, by entering into this *Settlement Agreement*, *Named Defendant* in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement. Settlement of the *Action*, negotiation and execution of this *Settlement Agreement*, and all acts performed or documents executed pursuant to or in furtherance of this *Settlement Agreement* or the *Settlement* (a) are not evidence of any wrongdoing or liability on the part of *Named Defendant* or of the truth of any of the factual allegations in the *Complaint* filed in the *Action*; (b) are not an admission or evidence of fault or omission on the part of *Named Defendant* in any civil, criminal, administrative or arbitral proceeding; and (c) are not an admission or evidence of the appropriateness of these or similar claims for class certification

or administration or collective action treatment other than for purposes of administering this *Settlement Agreement*.

**7.**     <u>**TERMINATION.**</u>

**7.1**     **Grounds for Settlement Termination.** Any *Party* may terminate the *Settlement Agreement* if the *Court* declines to enter the *Final Approval Order* or judgment in the form submitted by the *Parties*, or if a Court of Appeals reverses the entry of a *Final Approval Order* or judgment. Additionally, the following events are also grounds for termination:

   (A)     *Plaintiff* may terminate this *Settlement Agreement* should the *Claims Administrator* determine that there is a material deviation in the *Total Hours* pursuant to Section 4.5(A). However, before exercising this right, the following shall occur:

      (i)     *Plaintiff's Counsel* shall notify the *Named Defendant* of this material deviation within three (3) days of being notified of this material deviation;

      (ii)     The *Named Defendant*, within ten (10) business days of being so notified, shall either: 1) accept the termination in which case the termination shall become effective; or 2) augment the *Settlement Amount* on a dollar for dollar basis to bring the deviation to the five percent (5%) threshold. Should the *Named Defendant's* payment of the augmented *Settlement Amount* require a revision to the *Court's Final Approval Hearing,* the *Parties* will work cooperatively to obtain a new date from the *Court.*

   (B)     Either *Party* may terminate this *Settlement Agreement* should a material condition set forth in Section 3 not be met or waived by the other *Party*.

   (C)     *Plaintiff* may terminate this *Settlement Agreement* should the *Named Defendant* file for bankruptcy prior to the *Final Effective Date.*

   (D)     *Named Defendant* may terminate this *Settlement Agreement* if more than fifteen percent (15%) of the *MD Class Members* opt-out of this *Settlement* by filing timely *Requests for Exclusion.*

**7.2**     **Procedures for Termination.** To terminate this *Settlement Agreement* as specified above, the terminating *Party* will give written notice to the other *Party* no later than fourteen (14) calendar days after the terminating *Party* learns that the applicable ground for termination has been satisfied.

**7.3**     **Effect of Termination.**

   (A)     Should this *Settlement Agreement* be terminated pursuant to Section 7, this *Settlement Agreement* will not be offered, received, or construed as an admission of any kind as to liability, damages, whether any class or collective is certifiable, or in any other matter by any *Party*. Neither the *Settlement Agreement*, any motions filed, settlement proposals exchanged by the *Parties*, nor Orders entered pursuant to the *Settlement Agreement*, will constitute an admission, finding or evidence that any requirement for

representative litigation or certification as a class or collective action has been satisfied in this *Action* or any other action, except as otherwise set forth in prior *Court* orders and/or for the limited settlement purposes pursuant to the terms of the *Settlement Agreement*.

(B) If this *Settlement Agreement* is canceled, rescinded, terminated, voided, or nullified, or the settlement of the *Action* is barred by operation of law, is invalidated, is not approved or otherwise is ordered not to be carried out by any *Court*,

    (1) The *Settlement Agreement* will have no force or effect, and no *Party* will be bound by any of its terms with respect to the terminating *Parties*;

    (2) *Named Defendant* will have no obligation to make any payments to *Plaintiff*, any *Class Member*, or *Class Counsel*, except that *Named Defendant* will be responsible for paying the *Claims Administrator* for services rendered up to the date the *Claims Administrator* is notified that the *Settlement* has been terminated and all other monies remaining from the *Settlement Amount* shall revert to *Named Defendant*; and

    (3) The *Parties* will work cooperatively to obtain a new scheduling order from the *Court*.

## 8. <u>MISCELLANEOUS.</u>

### 8.1 Parties' Authority.

(A) The signatories hereby represent that they are fully authorized to enter into this *Settlement Agreement* and bind the *Parties* hereto to the terms and conditions hereof.

(B) The entity or individual signing this *Settlement Agreement* on behalf of *Named Defendant* represents and warrants that they have authority to sign on behalf of *Named Defendant* and, accordingly binds *Named Defendant* to this *Settlement Agreement*.

(C) The *Class Notice* will advise all members of the *Settlement Class* of the binding nature of the release, and that the release will have the same force and effect upon members of the *Settlement Class* as if the *Settlement Agreement* were executed by each member of the *Settlement Class*.

### 8.2 Advice of Counsel. In entering into this *Settlement Agreement*, each *Party* represents and warrants that they have relied upon the advice of its attorneys, that it has completely read the terms of this *Settlement Agreement*, and that the terms of this *Settlement* have been explained to it by its attorneys. Each *Party* further represents and warrants that it fully understands and voluntarily accepts the terms of the *Settlement*.

### 8.3 Admissibility. This *Settlement Agreement* will be inadmissible as evidence in any proceeding, except as necessary to approve, interpret, or enforce this *Settlement Agreement*.

**8.4    Severability.** If any court with original or appellate jurisdiction over this *Action* issues a *Final* determination that any part of this *Settlement Agreement* is not enforceable, the *Parties* may (but will not be required to) jointly agree in writing to modify this *Settlement Agreement* to conform with such determination.

**8.5    Notices.** Any notice, demand, or other communication under this *Settlement Agreement* (other than the *Class Notice* or other notices given at the direction of the *Court*) will be in writing and will be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid) or delivered by reputable express overnight courier, with a copy by email.

IF TO *PLAINTIFF* OR THE *SETTLEMENT CLASS*:
CONNOLLY WELLS & GRAY, LLP
Gerald D. Wells, III
Email: gwells@cwglaw.com
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Telephone: (610) 822-3702

IF TO *DEFENDANT*:
SMITHEY LAW GROUP, LLC
Joyce E. Smithey
Levi S. Zaslow
Email: joyce.smithey@smitheylaw.com; Levi.Zaslow@smitheylaw.com
706 Giddings Avenue, Suite 200
Annapolis, MD 21401
Telephone: (410) 919-2990

**8.6    Cooperation between the *Parties*; Further Acts.** The *Parties* will cooperate fully with each other and will use their best efforts to obtain the *Court's* approval of this *Settlement Agreement* and all of its terms. Each of the *Parties*, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this *Settlement Agreement*.

**8.7    Entire Agreement.** This *Settlement Agreement* constitutes the entire agreement between the *Parties* with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the *Parties* will be deemed merged into this *Settlement Agreement*.

**8.8    Binding Effect.** This *Settlement Agreement* will be binding upon the *Parties* and, with respect to *Settlement Class* members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**8.9    Arm's Length Transaction; Materiality of Terms.** The *Parties* have negotiated all the terms and conditions of this *Settlement Agreement* at arm's length. All terms and conditions of this *Settlement Agreement* in the exact form set forth in this *Settlement Agreement* are material to this *Settlement Agreement* and have been relied upon by the *Parties* in entering into this *Settlement Agreement*.

**8.10**  **Captions.** The captions or headings of the sections and paragraphs of this *Settlement Agreement* have been inserted for convenience of reference only and will have no effect upon the construction or interpretation of any part of this *Settlement Agreement*.

**8.11**  **Construction.** The determination of the terms and conditions of this *Settlement Agreement* has been by mutual agreement of the *Parties*. Each party participated jointly in the drafting of this *Settlement Agreement*, and therefore the terms and conditions of this *Settlement Agreement* are not intended to be, and will not be, construed against any party by virtue of draftsmanship.

**8.12**  **Governing Law.** This *Settlement Agreement* will in all respects be interpreted, enforced and governed by and under the laws of the State of Maryland, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law will govern.

**8.13**  **Continuing Jurisdiction.** The *Court* will retain jurisdiction over the interpretation and implementation of this *Settlement Agreement* as well as any and all matters arising out of, or related to, the interpretation or implementation of this *Settlement Agreement* and of the settlement contemplated thereby. The *Court* will not have jurisdiction to modify the terms of the *Settlement Agreement* or to increase the *Named Defendant's* payment obligations hereunder without the *Parties'* agreement.

**8.14**  **Waivers, Modifications, Amendments to be in Writing.** No waiver, modification or amendment of the terms of this *Settlement Agreement*, whether purportedly made before or after the *Court's* approval of this *Settlement Agreement*, will be valid or binding unless in writing, signed by or on behalf of all *Parties* and then only to the extent set forth in such written waiver, modification or amendment, subject to any required *Court* approval. Any failure by any *Party* to insist upon the strict performance by the other party of any of the provisions of this *Settlement Agreement* will not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this *Settlement Agreement*, and such party, notwithstanding such failure, will have the right thereafter to insist upon the specific performance of any and all of the provisions of this *Settlement Agreement*.

**8.15**  **When Agreement Becomes Effective; Counterparts.** This *Settlement Agreement* will become effective upon its execution. The *Parties* may execute this *Settlement Agreement* in counterparts, and execution in counterparts will have the same force and effect as if *Plaintiff* and the *Named Defendant* had signed the same instrument. Electronic copy, fax, or pdf signatures will be deemed sufficient.

**8.16**  **Confidentiality.** *Plaintiff* agrees that he will not publicize the negotiations with respect to the *Settlement Agreement.* Nothing in this *Settlement Agreement* shall prohibit *Plaintiff* from disclosing to members of his immediate family and tax advisors information concerning payments made to him. Further, nothing in this *Settlement Agreement* will prohibit or restrict such disclosure as is required by law or as may be necessary for the prosecution of claims relating to the performance or enforcement of this *Settlement Agreement.* In addition, nothing shall prohibit or restrict *Plaintiff* from responding to any inquiry about this *Settlement* or its underlying facts and circumstances.

DocuSign Envelope ID: 3F7758C5-01B4-40EA-AAD4-E11399EA8ECB

**8.17    No Press Statements.** *Plaintiff* and the *Named Defendant* agree not to make or publish any statements to the press or to the media regarding the substance or negotiation of this *Settlement Agreement* and agree not to make or publish any statements to the press or to the media that disparage any of the *Parties*. Counsel for the *Parties* may release a joint statement regarding this *Settlement Agreement* in a form agreed to by counsel. For the avoidance of doubt, the terms of this section shall not prohibit any of the *Parties*, or their counsel, jointly or unilaterally making any statements necessary to obtain the *Court's* approval of this agreement. In addition, the *Parties* mutually agree and covenant not to make any public statement that disparages any of the other *Parties*.

**[Remainder of Page Intentionally Left Blank]**

DocuSign Envelope ID: 3F7758C5-01B4-40EA-AAD4-E11399EA8ECB

Dated:_____

FOR DEFENDANT

By: _Eric Lefebvre_____
    DocuSigned by:
    61D8BFE4165A46B...

Printed Name:_Eric Lefebvre_____

Title:_Authorized Signatory_____

Dated:_____

_____
Christopher Graham