IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| CHRISTOPHER GRAHAM, on behalf of himself and all others similarly situated | : |
| | : |
| v. | : Civil Action No. DKC 19-0486 |
| | : |
| FAMOUS DAVE'S OF AMERICA, INC., and Doe Defendants 1-10 | : |

**MEMORANDUM OPINION**

Presently pending in this Fair Labor Standards Act ("FLSA") collective and state wage law class action is Plaintiff Christopher Graham's Unopposed Motion for Final Approval of Class and Collective Action Settlement and Mr. Graham's Motion for Attorneys' Fees and Expenses and for a Plaintiff's Service Payment. (ECF Nos. 145, 146). The court held a Fairness Hearing on December 2, 2022. (ECF No. 147). For the following reasons, both motions will be granted.

**I.   Background**

Mr. Graham, on behalf of himself and those similarly situated, filed this suit on February 19, 2019, against his former employer, Defendant Famous Dave's of America, Inc. ("Famous Dave's"), alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Maryland Wage and Hour Law, Md.Code, Lab. & Empl. § 3-401 *et seq.*, the Maryland Wage Payment

and Collection Law, Md.Code, Lab & Empl. § 3-501 *et seq.*, and Maryland common law. (ECF No. 1). A detailed factual background is set out in a prior opinion. *See Graham v. Famous Dave's of Am., Inc.*, No. 19-cv-0486-DKC, 2020 WL 5653231, at *1-2 (D.Md. Sept. 23, 2020); (ECF No. 62, at 2-6). In short, Mr. Graham claimed that Famous Dave's, a national restaurant chain, failed to provide proper notice to its tipped employees, as required under federal and state laws, prior to paying them an hourly wage less than the minimum wage and claiming a "tip credit" on the difference. He also claimed that Famous Dave's failed to compensate its tipped employees for hours worked in excess of forty hours per week, improperly claimed a tip credit for hours worked performing non-tipped tasks, and engaged in other unlawful practices related to paying its tipped employees. (ECF No. 1).

The parties engaged in some initial discovery, including deposing Mr. Graham and Famous Dave's corporate designee. (ECF No. 145-1 at 22). Mr. Graham also filed a motion for partial summary judgment, which Famous Dave's opposed and the court denied. (ECF Nos. 34, 44, 62). The court granted Mr. Graham's motion for conditional certification of a collective action as to the FLSA claims and for certification of a class as to the state wage law claims for all Famous Dave's tipped employees in Maryland between February 19, 2016, and October 31, 2017. (ECF No. 62, at 27, 36; ECF Nos. 80, at 1; 80-1). However, the court only certified the

collective action and class as they relate to Mr. Graham's claim that the requirements to use a tip credit were not met, resulting in tipped employees being paid below minimum wage; the court determined that Mr. Graham failed to show that any of the additional claims alleged a common plan or policy as to the other potential plaintiffs.  (ECF No. 62, at 15-27, 35-36).

In January 2021, notice was issued to tipped employees at Famous Dave's restaurants in Maryland during the relevant time period, and they were given sixty days to opt-in and consent to the FLSA part of the case, pursuant to Section 216(b) of the FLSA. *See* 29 U.S.C. § 216(b).  (ECF Nos. 80, 80-1).  Twenty-five people affirmatively opted-in, while four opted-out of the case entirely. (ECF Nos. 81, 83-95, 99).

Around that time, the parties began engaging in settlement negotiations, and the case was stayed on March 19, 2021, to facilitate full negotiations.  (ECF No. 100-101).  The parties participated in a settlement mediation on May 12, 2021, with additional phone conferences over subsequent months.  The parties reached an agreement (the "Agreement"), and Mr. Graham moved unopposed for preliminary approval of the settlement on February 25, 2022.  (ECF No. 128).  The Agreement proposed a settlement class with two sub-classes: the FLSA Collective,[1] which includes

---

[1] In prior versions of the Agreement, the parties referred to the FLSA collective as the "FLSA Class."  They now refer to it as

all tipped employees[2] who affirmatively opt-in, and the Maryland Class, which includes all tipped employees who do not opt-out, including FLSA Collective members.  (ECF No. 128-3 at ¶ 2.20, 2.26, 2.43).

The court denied that motion without prejudice on April 11, 2022, citing Mr. Graham's failure to provide sufficient information to allow the court to assess whether the Agreement could be approved, including an estimate of the proposed class members' potential recovery, a precise estimate of the total number of potential class members, and estimates of the proposed class counsel's and claims administrator's costs and expenses.  (ECF No. 130, at 9, 11-12).  The court also expressed concern "about the differing recoveries between those Class Members who opt-in to the FLSA Sub-Class and those who [do not]."  (ECF No. 130, at 9).

---

the "FLSA Collective."  The court adopts the term "FLSA Collective" throughout this opinion for consistency.

[2] The Agreement defines "tipped employees" as:

> Any individual employed by [Famous Dave's] [from February 19, 2016, through October 31, 2017,] at any one or more of the [Famous Dave's] Restaurants [in Maryland] where [Famous Dave's] allegedly did not pay that individual the full minimum wage as they claimed or attempted to claim a "tip credit" for that employee pursuant to Section 203(m) of the FLSA and Maryland state wage and hour laws.  Such employees include bartenders, servers, or hosts.

(ECF No. 128-3 at ¶ 2.46).

4

Plaintiff had "not attempted to show why the size of the incentive or compensation [to FLSA Collective Members was] reasonable and adequate" nor "provided any estimate of what the ultimate gap is likely to be." (ECF No. 130, at 13-14). Additionally, the court noted statements in the Agreement and proposed notice that could mislead a class member about whether he or she could still obtain recovery without completing a claim form. (ECF No. 130, at 16). The court provided instructions to assist the parties in addressing those three issues as well as other smaller issues. (ECF No. 130, at 18-19).

Mr. Graham submitted a second unopposed motion for preliminary approval on July 27, 2022, that contained additional information and provided a revised Agreement and proposed notice. (ECF No. 136). The court issued a letter order on August 1, requiring correction of issues that remained unaddressed. (ECF No. 137).

Mr. Graham supplemented his second motion on August 17, 2022. (ECF No. 140). The court granted the motion on August 22, 2022, concluding that, "[o]verall, the size of the recovery to the class is fair, reasonable, and adequate in light of the strength of the case against Defendant, the risks of litigation, and the parties' representation that Defendant, at least at the time the Agreement was initially reached, faced significant financial stresses." (ECF No. 141, at 15; 142). The court also conditionally certified

the class, for the purposes of settlement only, as both a class action (the Maryland Class) and as a collective action (the FLSA Collective); appointed Mr. Graham as class representative for both the Maryland Class and the FLSA Collective; appointed Connolly Wells & Gray, LLP and Lynch Carpenter LLP as class counsel for both the Maryland Class and the FLSA Collective; appointed RG/2 Claims Administration LLC as claims administrator; approved the notice protocols, subject to certain corrections; and scheduled a Final Fairness Hearing.  (ECF No. 142).

The preliminarily approved version of the Agreement called for a Settlement Fund of $995,000.00 to be used first to cover attorneys' fees and costs, settlement administration costs, and a service payment to Mr. Graham, before the remaining amount—the Net Settlement Fund—is distributed to class members.  (ECF No. 140-1 at ¶ 2.49, 4.6(B)(1)).  Members of the Maryland Class waive their Maryland state law claims, and members of the FLSA Collective waive their state and federal law claims.  (ECF No. 140-1 at ¶ 5).

The method for distributing the Net Settlement Fund under the Agreement is complicated.  To determine each class member's payment, the claims administrator must first calculate an "Individual Damage Amount" equal to the total tip credits against the applicable Maryland minimum wage taken by Famous Dave's for a tipped employee over the relevant period.  The "Individual Damage Amount" for all class members is then added together to calculate

6

a "Total Damages Amount."  The Net Settlement Fund is divided by the Total Damages Amount to get a fraction.  That fraction is then multiplied by each Individual Damage Amount to determine each "Class Member's Settlement Payment."  Each Class Member's Settlement Payment is divided as follows: (1) twenty percent (20%) FLSA Settlement Payment, (2) forty percent (40%) Maryland Settlement Payment, and (3) forty percent (40%) liquidated damages and interest.[3]  Members of only the Maryland Class do not receive an FLSA Settlement Payment, and those payments are redistributed proportionally to FLSA Collective members.  (ECF No. 140-1 at ¶ 4.6(B)).

Mr. Graham also provided the additional information requested by the court: He indicated that he would request no more than a $5,000 service payment and that class counsel would request no more than $331,666.67 in attorneys' fees (one-third of the Settlement Fund); he estimated litigation expenses to be $13,307.78 and claims administrator expenses to be $16,768.00; and he estimated the total unpaid wages for all potential members of the Settlement Class to be $1,363,692.77.  (ECF No. 136-9, at 10, 14, 15).  Therefore, the estimated Net Settlement Fund, which the court calculated as $628,257.55, would provide a 46.1% recovery to

---

[3] This distribution is modified from that in the first version of the Agreement, which divided each Individual Settlement Payment into three equal payments.  (ECF No. 128-3).

the Settlement Class as a whole, and members who do not opt-in to the FLSA Collective would receive 36.9% of their individual unpaid wages (not accounting for any wage garnishment, child support, or tax deductions).

Although the court granted the motion for preliminary approval of the Agreement, it continued to express concern about the potential for an unfair gap in the recoveries of those class members who opt-in to the FLSA Collective sub-class and those who do not.  Recognizing that this number would be unknown until the number of opt-in members was finalized, the court concluded that there was a range of possible gaps in recovery that would result in a fair and reasonable outcome, such that preliminary approval was warranted.  (ECF No. 141, at 17).  The court explained,

> If, for example, members who opt-in recover 50% and members who do not opt-in recover 37%, the court would grant final approval (assuming no valid objections are raised by Settlement Class Members).  If, however, members who opt-in recover 100% (or 230%) of their individual unpaid wages and members who do not opt-in recover 37% of their unpaid wages, the court may find the Agreement unfair and unreasonable.

(*Id.*).  The court added that a legal issue would arise if there were duplicate recoveries of FLSA unpaid wages and Maryland law unpaid wages, though it noted that this could only occur if FLSA Collective members recover more than their unpaid wages, which seemed unlikely.  (*Id.* at 18 n.6).

8

Mr. Graham filed an unopposed motion for final approval of the Agreement and final certification of the settlement classes, as well as an unopposed motion for attorneys' fees, expenses, and a plaintiff's service payment on November 11, 2022. (ECF No. 145, 146). Mr. Graham represents that an additional 148 individuals have opted-in to the FLSA Collective, resulting in a total of 173 members in that sub-class. (ECF No. 145-1 at 19). The estimated claims administrator expenses increased slightly to $18,722.00, which brings the estimated Net Settlement Fund down to $626,303.55, or 45.9% of their potential recovery. (ECF No. 145-3). Given the updated numbers, the claims administrator has calculated the estimated recovery of the FLSA Collective as approximately 63% of their Individual Damages Amount. The estimated recovery of the Maryland Class remains approximately 37% of their Individual Damages Amount. (ECF No. 145-1 at 21, 145-3).

The final fairness hearing was held on December 2, 2022, at 11:00 a.m. (ECF No. 147). No one appeared at the hearing to lodge any objections to a final approval of the Agreement. At the hearing, the court inquired about the attorneys' fees request, and class counsel responded to the court's inquiries. Class counsel also provided additional information about the estimated payments to the class members under the Agreement: the smallest payment would be $0.91 (to a tipped employee who worked 1.1 hours during the class period); the largest payment would be $8,944.98 (to a

tipped employee who worked over 2,957 hours during the class period); the average payment in the FLSA Collective would be $1,745.12; the median payment in the FLSA Collective would be $960.37; the average payment in the Maryland Class would be $645.81; and the median payment in the Maryland Class would be $277.70.

## II. Analysis

After carefully considering the terms of the Agreement, the unopposed motion for final approval, the supplemental materials in support thereof, and the statements of counsel for both parties at the final fairness hearing held on December 2, 2022, the court now addresses whether the Maryland Class and the FLSA Collective should receive final certification; whether the Agreement is fair, reasonable, and adequate; whether the Agreement represents a fair compromise of a *bona fide* FLSA dispute; and whether class counsel's request for attorneys' fees and expenses, as well as a plaintiff's service payment for Mr. Graham, should be granted. Each of these questions will be addressed in turn.

### A. Final Certification of the Collective and Class

Because the proposed Agreement seeks to resolve a case that raises both class action claims under Maryland state law and collective action claims under the FLSA, two separate standards are implicated by Mr. Graham's request for final class certification.

10

### 1. Certification of the Class

For a class action to be certified pursuant to Rule 23, the class must meet each of the four prerequisites identified in Rule 23(a) and fit within one of the three categories identified in Rule 23(b). Fed.R.Civ.P. 23. District courts must pay "undiluted, even heightened, attention" to these requirements when certifying a class for the purpose of settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Grice v. PNC Mortg. Corp. of Am.*, No. 97-cv-3084-PJM, 1998 WL 350581, at *2 (D.Md. May 21, 1998) ("Despite the parties' agreement, class certification must be carefully scrutinized.").

### a.  Rule 23(a) Prerequisites

Under Rule 23(a), a group of plaintiffs may sue in a class action if

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The Maryland Class meets those prerequisites.

First, the Maryland Class contains 679 members—notice of the settlement was sent to 680 people, and only one filed a request for exclusion. (ECF No. 143-3 at 2, 4). This number well exceeds that which has been required for numerosity in other cases, and

joinder would certainly be impracticable.  *See Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F.Supp. 1404, 1408 (D.Md. 1984), *aff'd in part and rev'd in part*, 815 F.2d 975 (4th Cir. 1987) ("A class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical.").

Second, there are questions of law and fact common to all members of the class, most notably whether the notice of intent to claim a tip credit issued by Famous Dave's to its tipped employees in Maryland complied with wage laws.  Further, that question is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Third, Mr. Graham's claims are typical of the claims of the class.  Mr. Graham was a tipped employee at a Famous Dave's restaurant in Maryland during the relevant time period, like all other members of the Maryland Class.  Although certain facts regarding the nature of Mr. Graham's employment may not be identical to those of every member of the class, "[f]actual differences will not necessarily render a claim atypical if the representative's claim arises from the same . . . practice or course of conduct that gives rise to the claims of the class[] and is based on the same legal theory." *Smith v. B & O R.R. Co.*, 473 F.Supp. 572, 581 (D.Md. 1979).  Because Mr. Graham alleges that he

and all other tipped employees in the class were subject to the same unlawful practice of claiming a tip credit without proper notice, the typicality requirement is met.

Finally, Mr. Graham and class counsel are adequate class representatives. "Representation is adequate if: (1) the named plaintiff's interests are not opposed to those of other class members, and (2) the plaintiff's attorneys are qualified, experienced, and capable." *Singleton v. Domino's Pizza, LLC*, 976 F.Supp.2d 665, 676 (D.Md. 2013). Mr. Graham's interests are aligned with those of the class members—they all seek to hold Famous Dave's accountable for alleged wage theft and to recover any unpaid wages to which they may be entitled. Additionally, class counsel are qualified, experienced, and capable, as evidenced by their previous experience achieving settlements of multiple other class suits brought on behalf of tipped employees. (ECF No. 145-2, at 2-3).

Thus, all four of the Rule 23(a) prerequisites are met.

### b. Rule 23(b) Categories

Having met all of the Rule 23(a) prerequisites, the class must also meet the requirements of at least one of the three Rule 23(b) categories, and the Maryland Class does that. The most applicable category for this case is that in Rule 23(b)(3), which covers cases where (1) "questions of law or fact common to class members predominate over any questions affecting only individual

members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).  The relevant factors to consider are (1) "the class members' interests in individually controlling the prosecution or defense of separate actions," (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members," and (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum."  *Id.*; *see also Amchem Prods., Inc.*, 521 U.S. at 620 (noting that district courts need not consider the fourth factor, described in Fed.R.Civ.P. 23(b)(3)(D) as "the likely difficulties in managing a class action," when deciding whether to certify a class for settlement purposes only).

As previously discussed, there are questions of law and fact common to the class members, many of which are central issues of the case—namely, whether Famous Dave's tip credit practices and notification policy violated wage laws.  There is also no indication that any other class members are pursuing separate litigation of their claims.  Finally, concentrating the litigation of these claims is desirable because it will allow the plaintiffs, some of which stand to recover only small amounts, to recover without having to bear the onerous cost of bringing their own individual suits.

Because the requirements of both Rule 23(a) and Rule 23(b)(3) are met, the court will grant final certification of the Maryland Class.

### 2. Certification of the Collective

Collective actions may be brought against employers for violations of the FLSA "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Courts generally engage in a two-step process in deciding whether to certify a collective action under FLSA. *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682, 686 (D.Md. 2010). First, at the "notice stage," courts preliminarily determine "whether the plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to the putative class members would be appropriate." *Id.* (internal quotation marks omitted) (quoting *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D.Md. 2000)). Here, the court found that the members of the FLSA Collective "are similarly situated by virtue of Defendant's alleged failure to satisfy the notice requirements of the tip credit provisions in federal and state law during the period between February 19, 2016[,] and October 31, 2017," and it granted conditional certification of the collective action related to that issue. (ECF No. 142).

The second stage, which usually occurs following discovery but must occur in any event before approving a collective action settlement, is a "more stringent inquiry" into whether the plaintiffs are similarly situated prior to final certification of the collective action. *Edelen v. Am. Residential Servs., LLC*, No. 11-cv-2744-DKC, 2013 WL 3816986, at *4 (D.Md. July 22, 2013); *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D.Md. 2007). Relevant factors to consider in making this determination include "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Rawls*, 244 F.R.D. at 300.

Here, the factual and employment settings of the individual plaintiffs are similar, rather than disparate. The members of the FLSA Collective are all "tipped employees," meaning that they were all employed by Famous Dave's during the relevant time period and were allegedly not paid full minimum wage due to Famous Dave's claiming a tip credit. (ECF No. 143-1, at ¶ 2.56). Although they may have worked at different restaurant locations in Maryland and may have been employed in different tipped service positions, they were allegedly subject to the same wage practices, including claiming of a tip credit.

Famous Dave's has denied the allegations and maintains that its employees were always paid properly, but it has not raised any individualized defenses to the claims of any member of the FLSA Collective. (ECF No. 143-1 at 3). Additionally, the risk of complications from individualized defenses is not as much of a concern when a collective action is certified for settlement purposes. *See Edelen*, 2013 WL 3816986, at *4. Finally, fairness and procedural considerations counsel in favor of certifying this collective action to allow for a mass resolution of the plaintiffs' claims such that hundreds of individual lawsuits asserting almost identical FLSA claims are unnecessary for the plaintiffs to obtain relief. Therefore, the plaintiffs are similarly situated, and final certification of the collective action pursuant to § 216(b) is warranted.

### B. Final Approval of the Agreement

Having determined that final certification of both the FLSA Collective and the Maryland Class is warranted, the terms of the Agreement itself must be addressed. Here again, because of the hybrid nature of this case, two standards are implicated by Mr. Graham's motion for final approval: (1) the "fair, reasonable, and adequate" standard applied to Rule 23 settlements and (2) the "fair and reasonable resolution of a *bona fide* dispute" standard applied to FLSA settlements.

### 1. Fairness, Reasonableness, and Adequacy under Rule 23

Rule 23 provides that the claims of a certified class can only be settled with the court's approval.  Fed.R.Civ.P. 23(e).  Specifically, the court must conduct a hearing and make a "finding that it is fair, reasonable, and adequate" prior to approving a settlement agreement that binds the class.  *Id.* at Fed.R.Civ.P. 23(e)(2).  Having conducted a hearing, (*see* ECF No. 147), the court now makes its finding.  In doing so, the court's "primary concern . . . is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations."  *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).

### a.  Fairness and Reasonableness

Courts consider the following factors when evaluating the fairness and reasonableness of a proposed settlement agreement: "(1) the presence or absence of collusion among the parties; (2) the posture of the case at the time settlement is proposed; (3) the extent of discovery that has been conducted; and (4) the circumstances surrounding the negotiations and the experience of counsel."  *Singleton*, 976 F.Supp.2d at 678; *see also In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159.  The purpose of this inquiry is to protect against the danger that counsel might agree to settle for an inadequate amount to secure a fee.  *See In re Mid-Atl. Toyota Antitrust Litig.*, 564 F.Supp. 1379, 1383 (D.Md. 1983).

18

Overall, the fairness factors weigh in favor of final approval in this case.   The parties engaged in lengthy settlement negotiations, mediated by a retired judge over a period of several months.   The mediator's participation supports a conclusion that there was no inappropriate collusion among the parties, and there have been no indications to the contrary.   The parties engaged in some motions practice, including Mr. Graham's motion for partial summary judgment on the issue of whether Famous Dave's "properly inform[ed] its Tipped Employees of all of the provisions of the" wage laws and motion for certification of the class and conditional certification of the collective, each of which were vigorously litigated.   (*See* ECF Nos. 26, 34, 37, 44, 48, 52, 63).   Mr. Graham also represents that the parties had engaged in some preliminary discovery, including the deposition of Mr. Graham and Famous Dave's' corporate designee.   (ECF No. 145-1, at 15).   These facts support a conclusion that the parties had sufficient information about their claims and defenses at the time they began exploring the possibility of settlement.   Finally, as has been noted, class counsel were qualified, experienced, and competent.

### b.  Adequacy

When determining the adequacy of a settlement agreement, courts consider "(1) the relative strength of the plaintiff's case on the merits and probability of success at trial; (2) the anticipated duration and expense of additional litigation; (3) the

solvency of the defendants and the likelihood of recovery on a litigated judgment; and (4) the degree of opposition to the settlement." *Singleton*, 976 F.Supp.2d at 679.  The purpose of this inquiry is to "weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement." *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F.Supp. at 1384.

On balance, the adequacy factors weigh in favor of final approval of the Agreement.  The strength and probability of success of the plaintiffs' case is unclear—Mr. Graham's motion for partial summary judgment was denied because of the existence of material disputes of fact, and Famous Dave's maintains that it did not violate any laws.  And litigation of this dispute absent settlement could prove to be long and expensive, with the anticipated next steps in this case—e.g., additional discovery and dispositive motions—likely to require the parties' attorneys to expend substantial time and resources.  Additionally, the parties represent that the impact of the Covid-19 pandemic on the restaurant industry has jeopardized Famous Dave's' ability to pay a sum greater than the one it has agreed to pay.

In granting preliminary approval of the Agreement, the court expressed concerns about the potential disparity in the recoveries of the Maryland Class and the FLSA Collective.  Now that the size of the FLSA Collective is clear, the court can evaluate whether the estimated recoveries of the respective groups—63% for the FLSA

Collective and 37% for people only in the Maryland Class—are fair and adequate under the circumstances.  The court concludes that they are.  The larger recovery for the FLSA Collective served as an incentive for people to opt-in and compensates those who did so for releasing their federal claims in addition to state claims. Because any additional value of the plaintiffs' FLSA claims beyond their Maryland law claims is doubtful, those trade-offs would not justify a much larger discrepancy, but this difference is acceptable.  *See Graham v. Famous Dave's of America, Inc.*, No. 19-cv-0486-DKC, 2022 WL 3586492, at *6 (Aug. 22, 2022); (ECF No. 141 at 17-18).  Additionally, as class counsel have noted, the fact that the average and median estimated payments to the FLSA Collective are significantly higher than those to members of only the Maryland Class, even taking into account the addition of 20%, reflects that many of the class members with the largest claims—those who had worked the most hours during the class period—opted-in to the FLSA Collective.

In any event, given the uncertainty, risk, and cost of proceeding with additional litigation at this stage, the Agreement provides a substantial benefit to class members who did not opt-in to the FLSA Collective—one that is in line with the recovery in other wage-and-hour law cases.  *See, e.g.*, *Rivera v. Dixson*, No. 14-cv-2901-TDC, 2015 WL 427031, at *3 (D.Md. Jan. 30, 2015) (approving settlement where plaintiff recovered 66% of potential

21

recovery under FLSA and 44% of potential recovery under Maryland law); *Riveros v. WWK Construction, Inc.*, 15-cv-193-PJM, 2015 WL 5897749, at *3 (D.Md. Oct. 5, 2015) (approving settlement where plaintiff recovered 42% of claimed unpaid wages).

Finally, there has been little opposition to the Agreement. Consistent with the Preliminary Approval Order and the terms of the Agreement, the claims administrator mailed individualized notice forms to the 680 class members that informed each class member of the basis for this lawsuit, the definitions of the Maryland Class and FLSA Collective, the procedure for and consequences of opting-in to the FLSA Collective, the key terms of the Agreement, the member's estimated individual recovery if he or she opted-in and if he or she did not, the requested attorneys' fees and costs and plaintiff's service payment, the process for objecting to or requesting exclusion from the Agreement, and when and where the final fairness hearing was set to take place. (ECF No. 143-2). Only one of the 680 members of the settlement class opted-out of the settlement, and no one appeared at the final fairness hearing to lodge any objections. For the foregoing reasons, the Agreement will be approved as fair, reasonable, and adequate under Rule 23.

### 2. Fair and Reasonable Settlement of a *Bona Fide* Dispute

In recognition of the unequal bargaining power between employers and employees, the FLSA is only subject to waiver by

settlement if approved by a district court. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945); *Duprey v. Scotts Co. LLC*, 30 F.Supp.3d 404, 407 (D.Md. 2014). A district court may only approve an FLSA settlement if it reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Duprey*, 30 F.Supp.3d at 407; *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

The Fourth Circuit has not expressed an opinion on the factors to be considered in approving FLSA settlements, but district courts in this circuit have generally applied the factors set out by the United States Court of Appeals for the Eleventh Circuit in *Lynn's Food Stores*. *See, e.g.*, *Duprey*, 30 F.Supp.3d at 408; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *8-16 (E.D.Va. Sept. 28, 2009); *Saman v. LBDP, Inc.*, No. 12-cv-1083-DKC, 2013 WL 2949047, at *3 (D.Md. June 13, 2013). Under that framework, courts first consider whether there is a *bona fide* dispute as to a defendant's liability under the FLSA and then consider whether the settlement is a fair and reasonable compromise of that dispute. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *Duprey*, 30 F.Supp.3d at 408.

As shown by the pleadings, the motion for partial summary judgment and response thereto, and the Agreement itself, there is a *bona fide* dispute as to Famous Dave's liability under the FLSA.

Most notably, the parties disagree as to whether Famous Dave's provided adequate notice of its use of a tip credit, as required by the FLSA.

In assessing the fairness and reasonableness of the compromise of that dispute, courts in this circuit have analogized to the same "fairness factors generally considered for court approval of class action settlements under Federal Rule of Civil Procedure 23(e)," including the extent of discovery that has taken place, the stage of the proceedings, the absence of fraud or collusion, the experience of counsel, the probability of plaintiffs' success on the merits, and the amount of their potential recovery. *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10-11 (E.D.Va. Sept. 28, 2009); *see also Hackett v. ADF Rest. Invs.*, 259 F.Supp.3d 360, 365 (D.Md. 2016). As previously discussed, those factors establish the fairness and reasonableness of the Agreement. Therefore, the Agreement will be approved as a fair and reasonable resolution of a *bona fide* dispute.

### C. Attorneys' Fees and Expenses

Rule 23 permits a court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h). The FLSA also allows a prevailing plaintiff to recover attorneys' fees and costs. *See* 29 U.S.C. § 216(b). Mr. Graham has moved for an attorneys' fee award of

24

$331,666.67, which represents one-third of the Settlement Fund, as contemplated by the Agreement.  (ECF No. 146; ECF No. 140-1 at ¶ 4.6(A)(1)).  Mr. Graham also seeks reimbursement of litigation expenses in the amount of $13,307.78 and payment of administrative expenses to the claims administrator in the amount of $18,722.00.

In determining whether an attorney's fee award is reasonable, courts generally take two approaches: (1) the "percentage of recovery" or "percentage of the fund" method; or (2) the "lodestar" method.  *Singleton v. Domino's Pizza, LLC*, 976 F.Supp.2d 665, 681 (D.Md. 2013).  Although this circuit has not decided which approach to adopt, the "current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases."  *Id.* (quoting *Goldenberg v. Marriott PLP Corp.*, 33 F.Supp.2d 434, 438 (D.Md. 1998)).  In this case, the court will employ the percentage of the fund method and, as other courts have done, cross-check it with the lodestar method.  *See Singleton*, 976 F.Supp.2d at 681.

### 1. Percentage of the Fund Method

Under the percentage of the fund method, the court awards attorneys' fees as a percentage of the common fund used to pay class members.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *see also Singleton*, 976 F.Supp.2d at 681.  This circuit has not yet identified factors to consider when using this method, but district courts in this circuit have analyzed the following seven

factors: "(1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy." *Singleton*, 976 F.Supp.2d at 682. The factors "need not be applied in a formulaic way," and no one factor is necessarily dispositive. *See id.* (quoting *In re AT & T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006). Many of these factors have been discussed previously in this opinion, but they will be addressed again briefly as relevant here.

Class counsel achieved a substantial value on behalf of the class at $995,000.00. Given the uncertainty of plaintiffs' recovery should the parties proceed with litigation, the estimated total value of the plaintiffs' claims as $1,363.692.77, and Famous Dave's purported inability to pay a sum larger than the agreed-upon amount, this is a positive result for the class. As noted previously, the class counsel are competent and qualified litigators with experience in cases similar to this one, and they took this case on a contingency basis, thus risking nonpayment. (ECF No. 146-1 at 18). Although "the likelihood of settlement and the initiation of settlement negotiations relatively early in the litigation process greatly reduce[s] the risk of nonpayment experienced by class counsel," *id.* at 684, a risk of nonpayment

was nevertheless present.  Additionally, no member of the class has objected specifically to the fee request.

Attorneys' fees awarded under the percentage of the fund method "are generally between twenty-five (25) percent and thirty (30) percent of the fund."  *Id.* (citing *Annotated Manual for Complex Litigation (Fourth)* § 14.121 (2022)).  Although one third is somewhat higher than that range, it is in line with fees awarded in other FLSA cases in this circuit. *See, e.g.*, *Starr v. Credible Behav. Health, Inc.,* No. 20-cv-2986-PJM, 2021 WL 2141542, at *5 (D.Md. May 26, 2021) (granting preliminary approval of an award of attorneys' fees of one-third of the settlement fund in hybrid FLSA and Maryland law case, noting that "[a] request for one-third of a settlement fund is common in this circuit and generally considered reasonable"); *Hoffman v. First Student, Inc.*, No. 06-cv-1882-WDQ, 2010 WL 1176641, at *3 (D.Md. Mar. 23, 2010) (approving fee award of one-third of the damages award in hybrid FLSA and Maryland labor law case); *Wegner v. Carahsoft Tech. Corp.*, No. 20-cv-00305-PJM, 2022 WL 316653, at *5 (D.Md. Feb. 1, 2022) (approving one-third fee award in FLSA case); *see also Hatzey v. Divurgent, LLC*, No. 18-cv-191, 2018 WL 5624300, at *1, 5 (E.D.Va. Oct. 9, 2018)(same); *Ford v. Cardinal Innovations Healthcare Sols.*, No. 20-cv-736, 2022 WL 558376, at *4-5 (M.D.N.C. Jan. 21, 2022)(same).

Further, this litigation was relatively complex and difficult. "In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement, and the amount and nature of discovery." *Singleton*, 976 F.Supp.2d at 686 (quoting *Jones v. Dominion Res. Servs., Inc.*, 601 F.Supp.2d 756, 761 (S.D.W.Va. 2009)). Additionally, "courts consider whether negotiations were hard fought, complex, or arduous." *Id.* (internal quotation marks omitted). This case has gone on for four years, and though there was not much discovery, the parties engaged in a hard-fought motions practice prior to settlement negotiations. Further, the negotiations themselves took several months, and a final agreement was only achieved after multiple conferences with a mediator as well as subsequent revision efforts required by the court. This court has remarked on the complexity of cases like this, noting in particular the "intricacies associated with class and collective action practice" and "the knowledge, labor, and time required to initiate an FLSA case and to achieve a class-wide settlement agreement of this nature." *Edelen v. Am. Residential Servs., LLC*, No. 11-cv-2744-DKC, 2013 WL 3816986, at *14 (D.Md. July 22, 2013). In short, class counsel accomplished no small feat in getting the case to this point.

Finally, the court is mindful that "public policy generally favors attorneys' fees that will induce attorneys to act and protect individuals who may not be able to act for themselves but also will not create an incentive to bring unmeritorious actions." *Jones*, 601 F.Supp.2d at 765.   In light of the aforementioned considerations, this fee award strikes the appropriate balance.

### 2. Lodestar Method

Under the lodestar method, a court determines a "lodestar figure" by multiplying the number of hours expended by a reasonable hourly rate, and it may then adjust that figure based on factors such as the benefit obtained for the class, the complexity of the case, and the quality of representation. *Singleton*, 976 F.Supp.2d at 688.   Here, class counsel represents that they and their staff expended a total of 799 hours on this case.   (ECF No. 145-2, at 3).   Using the guidelines promulgated by this court in Appendix B to the Local Rules, they calculated the lodestar figure for each of the attorneys and paralegals that worked on this case, based on their respective levels of experience, and added them together to get a lodestar figure of over $350,000.[4]

---

[4] Class counsel calculated the lodestar figure for each attorney using the highest rate recommended by the guidelines for each experience bracket, regardless of each attorney's position within that bracket.   However, because the guidelines have not been updated since 2014, a modest upward adjustment in that form is not unwarranted.

At the fairness hearing, the court inquired about the tasks performed by the different attorneys.  Attorney Gerald Wells of the class counsel firm, Connolly Wells & Gray, LLP, represented to the court that he was the principal attorney in this case, specifically at the depositions and in the negotiations; his partner, Robert Gray, was the lead attorney with respect to the damage calculations and assisted with discovery responses; his partner, Stephen Connolly, drafted the motion for final approval and assisted in responding to class member inquiries when Mr. Wells was unavailable; the attorneys at the other class counsel firm, Lynch Carpenter LLP, with Elizabeth Pollock-Avery as the lead attorney for the firm in this case, were primarily responsible for client communications, participated in the depositions and negotiations, and drafted some of the briefing for the motion for partial summary judgment; and David Hoskins was local counsel.[5] Mr. Wells also represented that the hours he included in the

---

[5] The language in the Agreement and notice provided to the class could create some confusion as to whether the requested attorneys' fees include fees for Mr. Hoskins—the Agreement defines "Plaintiff's Counsel" as including Mr. Hoskins and the two class counsel firms, but the notice only states that "Class Counsel, as defined in the Settlement Agreement [as Connolly Wells & Gray, LLP and Lynch Carpenter LLP], will request an award of fees[.]" (ECF Nos. 143-1, 2).  However, the Agreement says that "Class Counsel may make an application to the Court for an award of Plaintiff's Counsel's fees in an amount not to exceed one-third of the Settlement Amount[,]" (ECF No. 143-1 at ¶ 4.14(A)), so despite the lack of clarity, the class was notified that class counsel would be seeking fees on behalf of Mr. Hoskins as well as the two class counsel firms.

lodestar calculation for his own work were substantially reduced (from over 470 hours to 323.6) to avoid including time for duplicative efforts.

Class counsel notes that their requested fee award of $331,666.67 is below that lodestar figure.  For the reasons previously discussed, there is no reason for a substantial downward departure from this figure.  Based on class counsel's explanations at the fairness hearing, the court is satisfied that the lodestar figure appropriately represents the time spent on a four-year, relatively complex class action lawsuit, exclusive of duplicative or unnecessary hours.  Therefore, the lodestar method confirms that the one-third fee award is reasonable.

### 3. Litigation and Administrative Expenses

Counsel seeks reimbursement for the following litigation expenses: (1) filing fee and court costs ($700.00); (2) FLSA notice mailing ($4,841.00); (3) transcripts ($2,820.98); (4) copying, printing, and postage ($149.80); (5) mediation fees ($2,675.00); and (6) travel and meals ($2,121.00).  (ECF No. 145-2, at 14).  District courts have discretion to determine the costs that will be taxed in FLSA cases, including "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services."  *Edelen*, 2013 WL 3816986, at *15 (quoting *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)).  "Examples of costs that have been

charged include necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." *Edelen*, 2013 WL 3816986, at *15. Here, the expenses requested appear reasonable and typical; they will be approved.

Counsel also seeks approval of payment to the claims administrator from the Settlement Fund of an estimated $18,722.00 to cover the cost of processing and mailing settlement payments to the class members. (ECF No. 145-3, at 6). This appears reasonable and consistent with other claims administration fees in similar cases; it will be approved. *See, e.g.*, *Singleton*, 976 F.Supp.2d at 690 (citing cases and approving a claims administration fee of $89,208.63).

**D. Plaintiff's Service Payment**

Finally, the court considers the reasonableness of a $5,000 service payment to Mr. Graham. This kind of payment, also known as an incentive payment, is often awarded in Rule 23 class actions. *See id.* In determining whether an incentive payment is warranted, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, the Agreement provides that Mr. Graham may apply for a service payment no greater than $5,000, which he has done.  Counsel argue that this amount is warranted because Mr. Graham

> was engaged throughout the litigation process and provided invaluable assistance to Class Counsel, including providing information during pre-suit interviews, assisting with the drafting of the complaint by providing key details surrounding the employment policies of Defendant, assisting in the review of key material provided by Defendant[], responding to Defendant's discovery requests, preparing and sitting for a deposition, and making himself available during the mediation[.]

(ECF No. 146-1, at 25).  Counsel adds that, as this court has previously recognized, named plaintiffs in cases such as this assume a risk of possible "challenges in [their] current or future job prospects as a result of [their] participation in [the] lawsuit."  *Edelen*, 2013 WL 3816986, at *16.

Considering Mr. Graham's role in the success of this lawsuit and the risk he assumed, a $5,000 incentive payment is appropriate in this case and in line with incentive payments awarded in other cases.  *See, e.g.*, *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 469 (D.Md. 2014) (approving $5,000 incentive payment to each named plaintiff); *Starr v. Credible Behav. Health, Inc.*, No. 20-cv-2986-PJM, 2021 WL 2141542, at *6 (D.Md. May 26, 2021) (approving $7,000 incentive payment to two named plaintiffs and $1,000 payment to the third); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D.Md. 2014) (approving $10,000 incentive payment).

## III. Conclusion

For the foregoing reasons, the motion for final approval and the motion for attorneys' fees, expenses, and a plaintiff's service payment will be granted.  A separate order will follow.

 

 

                                                            /s/

                                            DEBORAH K. CHASANOW
                                            United States District Judge