IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER GRAHAM, on behalf   :
of himself and all others
similarly situated             :

    v.                       :  Civil Action No. DKC 19-486

                          :

FAMOUS DAVES OF AMERICA, INC.,
and Doe Defendants 1-10     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is a motion filed by Plaintiff Christopher Graham ("Plaintiff") to require the claims administrator (the "Claims Administrator") to make a *pro rata* distribution of the remaining settlement amount to those class members who cashed their initial settlement checks, with any remaining unclaimed funds to be subject to the *cy pres* distribution. (ECF No. 152). In addition, the motion seeks allowance of any additional fees and costs to the Claims Administrator as well as the outstanding amount due for the prior distribution (up to $5,070), and a supplemental award of fees to class counsel ("Class Counsel") of one-third of this "remaining Settlement Amount." (*Id.*). For the following reasons, the motion will be granted in part (as to the supplemental *pro rata* distribution and the fees and costs of the claims administrator) but denied as to any supplemental fee award to Class Counsel.

I.    **Background**

The history of the case and the approval of the settlement are set forth in prior opinions and will not be repeated here. (*See, e.g.*, ECF Nos. 62, at 2-6; 150, at 1-10).  Plaintiff reports that, after the distribution approved earlier, there remains $61,605.89 in unclaimed funds.  (ECF No. 152-1, at 2).  Class Counsel believe that this amount is substantial and larger than contemplated, and that a second *pro rata* distribution to those class members who cashed their initial settlement checks is appropriate instead of an immediate disbursement to the *cy pres* recipient.  (*Id.* at 2-3).  According to the motion, 504 individuals cashed their checks, and an additional *pro rata* distribution to that group would not provide a windfall to them inasmuch as class members received less than 100% of their unpaid wages.  (*Id.* at 3-4).  Furthermore, a supplemental distribution would further the principle that *cy pres* awards be limited to those scenarios where it is not feasible to make further distributions to class members. (*Id.* at 4-5).  The motion contemplates that $36,000.60 would be distributed to class members who cashed their initial checks, $5,070 would be devoted to fees and expenses of the claims administrator, and $20,535.29 would be awarded to counsel.  (*Id.* at 3).

## II.  Analysis

### A. Second Distribution

The motion suggests limiting the second distribution to those individuals who cashed their initial checks in order to minimize administrative costs and maximize the amount that a class member will receive (as opposed to creating more unclaimed funds).  (ECF No. 152-1, at 4-5).  The initial settlement contemplated that any unclaimed funds be awarded to the *cy pres* recipient, so diverting these funds to the class members who cashed the initial checks will not adversely affect those class members who did not cash the initial checks.  Because those non-responding class members did not cash their initial checks, it is likely they would ignore any supplemental distribution as well.  Accordingly, the court will approve a second *pro rata* distribution to those class members who cashed their initial checks.

### B. Claims Administrator Fees and Expenses

Moreover, it is entirely appropriate to authorize the claims administrator to cover its own costs and fees both for the supplemental distribution and those that remain outstanding from the initial distribution, up to $5,070.

### C. Class Counsel Attorney's Fees

In the settlement agreement approved by the court after notice to class members, Class Counsel were permitted to make an application to the court for an award of attorneys' fees "in an

3

amount not to exceed one-third of the settlement amount." (ECF No. 140-1 para. 4.14(A), at 22). The notice provided that attorneys' fees would not be greater than $331,666.67. (ECF No. 140-1, at 33). Ultimately, the court awarded $331,666.67 in attorneys' fees. (ECF Nos. 150; 151). Now, Class Counsel wants more from the settlement amount, contending that it has done more work. (ECF No. 152-1, at 6). There is no room, however, for the court to approve any more in attorneys' fees. The approval of the class and collective action settlement was premised on the maximum attorneys' fee award that has already been granted.

Class Counsel resist this conclusion by citing to several trial court decisions, none of which fully support their position.

In *Goldenberg v. Marriott PLP Corp.*, 33 F.Supp.2d 434 (D.Md. 1998), Judge Messitte dealt with a request for payment of supplemental fees from the interest accrued on the settlement fund for work performed during administration and distribution of the fund. He did not grant the request in full. Rather, he awarded a portion of the interest in line with the initial fee award. *Id.* at 442. In getting to that result, he made the following observations:

1. A court retains jurisdiction over matters relating to the implementation, enforcement, and performance of the settlement pursuant to both the final judgment and the stipulation of settlement. *Id.* at 440.

2.  That authority comes with the duty to act as a fiduciary to the members of the class, particularly with relation to any attorneys' fees.  *Id.*

3.  Even if a supplemental award might be justified, there "remains the problem of notice to the class.  Notice of the potential extent of attorneys' fee awards is deemed essential because it allows class members to determine the possible influence of the fees on the settlement and to make informed decisions about their right to challenge the fee award."  *Id.* at 441.

4.  Notification about possible additional fee requests for post-judgment services "is neither unusual nor especially difficult to accomplish."  *Id.*  At times those amounts can be included in the initial fee request, or the matter can be reserved expressly.  *Id.*

He concluded that the lack of notice to the class as well as the reasonably straightforward course of fund administration could justify denying the supplemental fee request altogether.  *Id.* Instead, as noted above, he decided to award a portion of the accrued interest rather than to consider requiring additional notice to be sent.  While this decision is available electronically, the earlier rulings in this old case are not and Judge Messitte's oral opinion approving the settlement and its terms are not available.  (The court file is in archives.)  Thus, we cannot know whether the initial fee award was at—or below—the

maximum amount forecast in the settlement or notice to the class. In this case, the fee award was at the maximum, there was no reservation of an option to seek additional fees later, and there is no increase in the settlement fund from interest. *Goldenberg* does not support any award of fees. Rather, it does the opposite. *See In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-cv-5238-RMW, 2004 WL 7333002, at *6 (E.D.N.Y. Dec. 8, 2004) ("Thus, contrary to Lead Counsel's claim, the *Goldenberg* court did not grant class counsel's request for an award of supplemental fees. Rather, the court held that, because class counsel had not provided notice of its supplemental fee request to the class, they were entitled only 11.3% of the interest income earned on the settlement fund—*i.e.*, the proportion of the interest income that their first fee award bore to the basic fund.").

Nor do the other cases support the fee request. In *Cassese v. Washington Mut., Inc.*, 27 F.Supp.3d 335, 339 (E.D.N.Y. 2014), the court noted that, "even if [counsel] received the entirety of the residual settlement funds, not considering the additional postcard notice, the total fee award would be approximately $2.45 Million (1.7 Million plus $750,000), which amounts to 18.8% of the Gross Settlement proceeds, a sum less than the 30% permitted by the Settlement Agreement." *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230-CCR, 2018 WL 11532628 (D.Vt. Dec. 18, 2018), is hardly analogous, and is very difficult to follow. As the *Allen*

court remarked: "this class action was contentious well beyond the average class action antitrust suit, to the extent such a creature exists." *Id.* at *1.  It involved multiple proposed settlement agreements, at least one appeal, and numerous sub-classes with their own counsel. *See id.* at *1-3.

For not requiring additional notice, Counsel cite *Spark v. MBNA Corp.*, 289 F.Supp.2d 510, 515 n.9 (D.Del. 2003).  Amazingly, the entire footnote provides reason for denying the award here unless additional notice is provided:

> A new class notice is not required to be sent, as it is only necessary when class members' rights would be materially and negatively affected compared to the rights they had under the original notice. *In re BankAmerica Corp. Sec. Litig.*, 227 F.Supp.2d 1103, 1107 (E.D.Mo. 2002).  The original notice in this case stated that class counsel would receive $1,285,200 in fees, when in fact they received $590,000. Even when adding the fee award for the cost of defending the appeal, class counsel will receive significantly less than the fee award set forth in the original notice.  Therefore, a new notice need not be sent, as the class members' rights are not being materially and negatively affected compared with their rights under the original notice.

*Id.*  The court will deny any additional fees to counsel, rather than consider additional notice to the class.  The amount in unclaimed funds is not so large as to justify spending more on notice and delaying any further distribution while awaiting objections.  Class Counsel have already received one-third of the

settlement fund and that will have to suffice for their work in this case, past and future.

    A separate order will be entered.

                                  /s/
                            DEBORAH K. CHASANOW
                            United States District Judge